1 | Christopher J. Seusing (Pro Hac Vice Admission Pending)
2 | cseusing@wshblaw.com
  | **Wood, Smith, Henning & Berman LLP**
3 | 685 3rd Avenue, 18th Floor
  | New York, NY 10017
4 | Tel: 475-755-7050
5 |
6 | Jacob P. Wilson (State Bar No. 331448)
  | jwilson@wshblaw.com
7 | **Wood, Smith, Henning & Berman LLP**
8 | 10960 Wilshire Boulevard, 18th Floor,
  | Los Angeles, CA 90024
9 | Tel: 310-481-7702
10 |
11 | Attorneys for Defendants, Plex, Inc. and Plex GmbH

*(Left margin, vertical text: WOOD, SMITH, HENNING & BERMAN LLP, 501 WEST BROADWAY, SUITE 1200, SAN DIEGO, CALIFORNIA 92101, TELEPHONE 619.849.4900 ♦ FAX 619.849.4950)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD LEE, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**PLEX, INC. and PLEX GMBH,**<br><br>Defendants. | Case No. 5:24-cv-02386-PCP<br><br>**DEFENDANT PLEX, INC.'S AND PLEX GMBH'S NOTICE OF MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 10, 2024<br>Time 10:00 a.m.<br>Courtroom: 8<br>Honorable: P. Casey Pitts |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND PARTIES OF RECORD:**

**PLEASE TAKE NOTICE** that on October 10, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled Court, located at San Jose Courthouse, Courtroom 8 – 4th Floor, 280 South 1st Street, San Jose, CA 95113 Defendants, Plex, Inc. and Plex GmbH (collectively, "Plex") will, and hereby does, move this Court for an order dismissing Plaintiff, Richard Lee's, Class Action Complaint pursuant to Fed.R.Civ.P. 12(b)(2) for failing to plead facts sufficient to exert personal jurisdiction over Plex GmbH, and pursuant to Fed.R.Civ.P. 12(b)(6) for failing to plead facts sufficient to support his causes of action against Plex. Alternatively, Plex will, and hereby does move this Court for an order striking Plaintiff's class allegations pursuant Fed.R.Civ.P. 12(f) for failure to meet the requirements of Fed.R.Civ.P. 23(a) and (b). Alternatively, Plex will, and hereby does move this Court for an order compelling arbitration on an individual basis pursuant to Fed.R.Civ.P. 12(b)(3) and 9 U.S.C. § 4. Alternatively, Plex will, and hereby does move this Court for an order transferring venue to the United States District Court for the District of Delaware pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404. Plex further requests all other relief as this Court deems just and equitable.

The motion is made based on the attached memorandum of points and authorities, the Declarations of Angelo Spenillo and Ricardo Castro and accompanying exhibits, the record in this action, and such other argument and evidence as may be presented at the time of hearing.

DATED:  July 29, 2024                    WOOD, SMITH, HENNING & BERMAN LLP


By:    _/s/ Jacob P. Wilson_
       JACOB P. WILSON
       CHRISTOPHER J. SEUSING
       (*Pro Hac Vice Admission Pending*)
       Attorneys for Defendants, PLEX, INC., AND
       PLEX GMBH

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF RELEVANT FACTS ........................................................ 2

III.     PLAINTIFF AND PLEX ENTERED INTO A FULLY ENFORCEABLE AND BINDING MODIFIED CLICKWRAP AGREEMENT ....................................... 4

     A.     The Northern District of California has previously ruled that Plex's Modified Clickwrap Agreement is fully enforceable and binding ........................... 5

         1.     Plaintiff received reasonably conspicuous notice of the Modified Clickwrap Agreement ...................................... 6

         2.     Plaintiff exhibited an unambiguous manifestation of assent to the terms and conditions of the Modified Clickwrap Agreement ..................... 7

IV.     THE TERMS OF SERVICE IN PLACE WHEN PLAINTIFF FIRST REGISTERED FOR A PLEX ACCOUNT IS CONTROLLING AND GOVERNS THIS COURT'S ANALYSIS ..................................................................................... 7

V.     THE COURT SHOULD DISMISS THIS ACTION AS TO PLEX GMBH PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) BECAUSE IT IS A FOREIGN ENTITY, DOES NOT HAVE MINIMUM CONTACTS IN THE UNITED STATES OR CALIFORNIA, AND PERSONAL JURISDICTION DOES NOT EXIST ............................................................. 9

     A.     Plaintiff fails the alter-ego test because Plex Inc. and Plex GmbH have separate personalities ............................................................ 11

     B.     Plaintiff fails the alter-ego test because failure to disregard the separate identities of Plex Inc. and Plex GmbH would not result in injustice or fraud ........ 13

VI.     THIS COURT SHOULD DISMISS THIS ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) BECAUSE PLAINTIFF CONSENTED TO PLEX COLLECTING, STORING, AND SHARING PLAINTIFF'S PERSONAL INFORMATION WITH THIRD PARTIES, INCLUDING FACEBOOK/META. ............................................................. 14

     A.     The Modified Clickwrap Agreement entered into with Plaintiff satisfies the requirements under the VPPA for permissible disclosure ............................ 15

         1.     The first prong is satisfied because Plaintiff entered into an enforceable and binding Modified Clickwrap Agreement and therefore Consented to Plex's Privacy Policy ............................ 15

         2.     The second prong is satisfied because Plaintiff never withdrew consent ..................................................... 18

         3.     The third prong is satisfied because within the Privacy Policy Plex provided Plaintiff instructions in a clear and conspicuous manner on how to withdraw Consent. ....................... 18

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

B.      The Modified Clickwrap Agreement entered into with Plaintiff satisfies the requirements under California Civil Code § 1799.3 for permissible disclosure ........................................................................................................20

VII.    THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f) BECAUSE PLAINTIFF IS UNABLE TO MEET THE REQUIREMENTS OF RULE 23 ..................21

VIII.   THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) BECAUSE THE CLASS ACTION WAIVER IN THE MODIFIED CLICKWRAP AGREEMENT IS ENFORCEABLE ........................................................................................................24

IX.     THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3) BECAUSE THE ARBITRATION PROVISION IN THE MODIFIED CLICKWRAP AGREEMENT IS ENFORCEABLE ........................................................................................................26

        A.      The Arbitration Agreement within the Clickwrap Agreement is Governed by the Federal Arbitration Act...........................................................................26

        B.      The Arbitration Agreement is valid and encompasses Plaintiff's claims giving rise to this suit ..........................................................................................29

        C.      Given that the Modified Clickwrap Agreement contains an Arbitration Agreement, this action should be dismissed. ...........................................................31

        D.      Alternatively, if this action is not dismissed, it should be stayed in its entirety...................................................................................................................32

X.      ALTERNATIVELY, IF THIS COURT DETERMINES THAT THE AMENDED TERMS OF SERVICE ARE CONTROLLING, THE COURT SHOULD TRANSFER THIS MATTER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3) BECAUSE THE FORUM SELECTION CLAUSE IS ENFORCEABLE...............................................................................................33

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

## TABLE OF AUTHORITIES

**CASES**

PAGE

*AdTrader, Inc. v. Google LLC*,
No. 17-CV-07082-BLF, 2020 WL 1922579 (N.D. Cal. Mar. 24, 2020) ............................. 25

*Ahlstrom v. DHI Mortg. Co. GP, Inc.*,
No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) ........................... 26,27

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ................................................................................. 28,29

*Alpine View Co. v. Atlas Copco AB*,
205 F.3d 208 (5th Cir.2000) ....................................................................... 11

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................. 25

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................................. 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 12

*Atlantic Marine Const. Co. v. U.S. Dist. Court*,
571 U.S. 49 (2013) .................................................................................. 34

*AT & T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ............................................................................... 25,31

*Baker v. Wehinger*,
No. CV 18-05800 SJO (EX),2018 WL 6443086 (C.D. Cal. Oct. 9, 2018) ........................ 9

*Bennett v. Isagenix Int'l, LLC*,
No. CV-23-01061-PHX-DGC, 2023 WL 4562605 (D. Ariz. July 17, 2023) ...................... 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)................................................................... *passim*

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17CV04570LAKKHP, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)......................... 15

*Biggs v. Midland Credit Mgmt., Inc.*,
No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018) ...................... 26

*Bold Ltd. v. Rocket Resume, Inc.*,
No. 22-CV-01045-BLF, 2023 WL 4157626 (N.D. Cal. June 22, 2023).............................. 5

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Britt v. ContextLogic, Inc.,*
No. 3:20-CV-04333-WHA, 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) ........................... 5

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006) ........................................................................................... 29

*Castaldi v. Signature Retail Servs., Inc.,*
No. 15-CV-00737-JSC, 2016 WL 7042991 (N.D. Cal. Jan. 20, 2016) .............................. 32,33

*Circuit City Stores, Inc. v. Adams,*
532 U.S. 105 (2001) ........................................................................................... 28

*Citizens Bank v. Alafabco, Inc.,*
539 U.S. 52 (2003) ............................................................................................ 28

*City & Cnty. of San Francisco v. Purdue Pharma L.P.,*
491 F. Supp. 3d 610 (N.D. Cal. 2020) ....................................................................... 11

*Corbett v. Hayward Dodge, Inc.,*
119 Cal. App. 4th 915, 14 Cal. Rptr. 3d 741 (2004) ....................................................... 15

*Corcoran v. CVS Health Corp.,*
169 F. Supp. 3d 970 (N.D. Cal. 2016) ....................................................................... 13

*Cornet v. Twitter, Inc.,* No. 3:22-CV-06857-JD,
2023 WL 3029236 (N.D. Cal. Apr. 19, 2023) ............................................................... 34

*Cruz v. Cingular Wireless, LLC,*
648 F.3d 1205 (11th Cir. 2011) ............................................................................... 26

*Daewoo Elecs. Am. Inc. v. Opta Corp.,*
875 F.3d 1241  (9th Cir. 2017) ............................................................................... 11

*Data Disc, Inc. v. Systems Technology Associates, Inc.,*
557 F.2d 1280, 1286 (9th Cir. 1977) ......................................................................... 9

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ........................................................................................... 29

*DeLuca v. Royal Caribbean Cruises, Ltd.,*
244 F. Supp. 3d 1342 (S.D. Fla. 2017) ...................................................................... 26

*Dhaliwal v. Ace Hardware Corp.,*
2023 WL 255471 (E.D. Cal. Mar. 17, 2023) ................................................................ 27

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Dittenhafer v. Citigroup,*
No. C 10–1779 PJH, 2010 WL 3063127 (N.D.Cal. Aug.2, 2010).......................................... 32

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) ..................................................................................................... 12

*Dohrmann v. Intuit, Inc.,*
823 Fed. App'x 482 (9th Cir. 2020) ............................................................................................ 5

*Dole Food Co. v. Patrickson,*
538 U.S. 468 (2003) ................................................................................................................... 13

*Dylan 140 LLC v. Figueroa,*
No. 19 Civ. 2897 (LAK) (DF), 2019 WL 12339639 (S.D.N.Y. Nov. 8, 2019) ..................... 32

*Epic Systems Corp. v. Lewis,*
138 S. Ct. 1612 (2018) .............................................................................................................. 26

*Farrow v. Fujitsu Am., Inc.,*
37 F. Supp. 3d 1115 (N.D. Cal. 2014) ...................................................................................... 32

*Fontaine v. Resurgent Capital Services, Inc.*
540 F. Supp. 3d 353, 362 (W.D.N.Y. May 19, 2021) .............................................................. 26

*Gerritsen v. Warner Bros. Entm't Inc.,*
116 F. Supp. 3d 1104 (C.D. Cal. 2015) .................................................................................... 13

*Gofron v. Picsel Techs., Inc.,*
804 F. Supp. 2d 1030 (N.D. Cal. 2011) ...................................................................................... 9

*Gulf Oil Corp. v. Copp Paving Co.,*
419 U.S. 186 (1974) ................................................................................................................... 29

*Hamilton v. Uber Techs., Inc.,*
No. 22CV6917PGGOTW, 2023 WL 5769500 (S.D.N.Y. Sept. 7, 2023) .............................. 30

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,*
328 F.3d 1122 (9th Cir.2003) .................................................................................................... 12

*Hernandez ex rel. Telles-Hernandez v. United States,*
665 F. Supp. 2d 1064 (N.D. Cal. 2009) .................................................................................... 30

*Hopkins & Carley, ALC v. Thomson Elite,*
No. 10-CV-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) .................................. 32

*Hovis v. Homeaglow, Inc.,*
No. 323CV00045BTMWVG, 2023 WL 5003583 (S.D. Cal. Aug. 4, 2023) ........................... 27

*Iman Ghazizadeh v. Coursera, Inc.,*
No. 23-CV-05646-EJD, 2024 WL 3091968 (N.D. Cal. June 20, 2024) .............................. 5

*In re Bittrex, Inc.,*
No. 23-10598 (BLS), 2024 WL 2347311 (Bankr. D. Del. May 22, 2024) ......................... 31

*In re California Gasoline Spot Mkt. Antitrust Litig.,*
No. 20-CV-03131-JSC, 2021 WL 4461199  (N.D. Cal. Sept. 29, 2021) ........................... 12

*In re Gilead Scis. Sec. Litig.,*
536 F.3d 1049 (9th Cir. 2008) ...................................................................................... 12

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945) ...................................................................................................... 10

*In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.,*
735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012)  ................. 10,11

*Jackson v. Amazon.com, Inc.,*
559 F. Supp. 3d 1132 (S.D. Cal. 2021), *aff'd*, 65 F.4th 1093 (9th Cir. 2023)..................... 8

*Kamm v. California City Dev. Co.,*
509 F.2d 205 (9th Cir. 1975) ......................................................................................... 22

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
394 F.3d 1143 (9th Cir. 2004) ....................................................................................... 12

*Kilgore v. KeyBank, Nat. Ass'n,*
673 F.3d 947 (9th Cir. 2012) ......................................................................................... 26

*Kuehne + Nagel Inc. v. Hughes,*
No. 21 CIV. 8470 (KPF), 2022 WL 2274353 (S.D.N.Y. June 23, 2022) ........................... 32

*Larry Pearl v. Coinbase Global, Inc.,*
No. 22-CV-03561-MMC, 2024 WL 3416505 (N.D. Cal. July 15, 2024)............................ 22

*Lee v. Ticketmaster,*
817 Fed. App'x 393 (9th Cir. 2020)................................................................................... 5

*Lewis v. UBS Fin. Servs. Inc.,*
818 F. Supp. 2d 1161 (N.D. Cal. 2011) ........................................................................... 25

*Lyon v. United States Immigr. & Customs Enf't,*
300 F.R.D. 628 (N.D. Cal. 2014), modified sub nom.
*Lyon v. U.S. Immigr. & Customs Enf't,* 308 F.R.D. 203 (N.D. Cal. 2015) ........................ 24

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ............................................................ 21

*McIntosh v. Royal Caribbean Cruises, Ltd.*,
No. 17-CV-23575, 2018 WL 1732177 (S.D. Fla. Apr. 10, 2018) ...................... 26

*McPherson v. Bloomingdale's, LLC*,
No. 23CV1084JMAARL, 2023 WL 8527462 (E.D.N.Y. Dec. 8, 2023) .............. 32

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ......................................................................... 5,31

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........................................................................ 31

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........................................................................ 15

*Moody v. Charming Shoppes of Delaware, Inc.*,
2008 WL 2128955 (N.D. Cal. May 20, 2008) .................................................. 13

*Mortensen v. Bresnan Communications, LLC*,
722 F.3d 1151 (9th Cir. 2013) ........................................................................ 30

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............................................................................................ 29

*Moyer v. Chegg, Inc.*,
No. 22-CV-09123-JSW, 2023 WL 4771181 (N.D. Cal. July 25, 2023) .............. 5

*Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.*,
No. C 12-05586 CW, 2013 WL 245594 (N.D. Cal. Jan. 22, 2013) .................... 10

*NetApp, Inc. v. Nimble Storage, Inc.*,
2015 WL 400251, at *7 (N.D. Cal. Jan. 29, 2015) ........................................... 13

*Ngethpharat v. State Farm Mut. Ins. Co.*,
339 F.R.D. 154 (W.D. Wash. 2021) ................................................................. 25

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........................................................................ 31

*Nguyen v. OKCoin USA Inc.*,
No. 22-CV-06022-KAW, 2023 WL 2095926 (N.D. Cal. Feb. 17, 2023) ............. 8

*Norcia v. Samsung Telecommunications Am., LLC*,
845 F.3d 1279 (9th Cir.), *cert. denied*, 138 S. Ct. 203 (2017) ........................ 30

*Oberstein v. Live Nation Ent., Inc.,*
60 F.4th 505 (9th Cir. 2023).................................................................................. 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
31 F.4th 651 (9th Cir).......................................................................................... 24

*Oracle Am., Inc. v. Appleby,*
No. 16-CV-02090-JST, 2016 WL 5339799 (N.D. Cal. Sept. 22, 2016) ............. 14

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999) ............................................................................................. 23

*Peter v. DoorDash, Inc.,*
445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................................................... 5

*Pickman v. Am. Exp. Co.,*
No. C 11-05326 WHA, 2012 WL 1357636 (N.D. Cal. Apr. 17, 2012) ............... 14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
388 U.S. 395 (1967) ............................................................................................. 28

*Poulos v. Caesars World, Inc.,*
379 F.3d 654 (9th Cir. 2004)................................................................................ 25

*Quamina v. JustAnswer LLC,*
No. 22-CV-06051-JD, 2024 WL 950157 (N.D. Cal. Mar. 5, 2024) ..................... 5

*Quinalty v. FocusIT LLC,*
No. CV-23-00207-PHX-JJT, 2024 WL 342454 (D. Ariz. Jan. 30, 2024) ........... 22

*Ranza v. Nike, Inc.,*
793 F.3d 1059 (9th Cir. 2015) ...................................................................... *passim*

*Rano v. Sipa Press, Inc.,*
987 F.2d 580 (9th Cir.1993)................................................................................. 10

*Rebecka Miller v. Plex, Inc.,*
Case No. 5:22-cv-5015-SVK (March 30, 2023) ........................................... *passim*

*Reynolds v. Binance Holdings Ltd.,*
481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................................. 13

*Rocha v. Urb. Outfitters, Inc.,*
No. 23-CV-00542-AMO, 2024 WL 393486 (N.D. Cal. Feb. 1, 2024) .............. 6,20

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Roman v. Spirit Airlines, Inc.,*
482 F. Supp. 3d 1304 (S.D. Fla. 2020), *aff'd,*
No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) ............................................ 26

*Rots v. Liberty Coca-Cola Beverages, LLC*,
No. 20-CV-10559, 2021 WL 3723092 (S.D.N.Y. Aug. 23, 2021) ...................................... 32

*Rubio v. Marriott Resorts Hosp. Corp.,*
No. 823CV00773FWSADS, 2023 WL 8153535 (C.D. Cal. Oct. 17, 2023) ...................... 27

*Sandoval v. Bank of Am.,*
94 Cal.App.4th 1378, 115 Cal.Rptr.2d 128 (2002) ............................................................ 30

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir.2004) ................................................................................................ 9

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ............................................................................................... 12

*Scott v. Breeland,*
792 F. 2d 925 (9th Cir. 1986) .............................................................................................. 9

*Sheppard v. Staffmark Inv., LLC,*
No. 20-CV-05443-BLF, 2021 WL 690260 (N.D. Cal. Feb. 23, 2021) ............................... 25

*Sher v. Johnson,*
911 F.2d 1357 (9th Cir.1990) .............................................................................................. 9

*Shearson/Am. Express, Inc. v. McMahon,*
482 U.S. 220 (1987) ............................................................................................................ 29

*Singh v. Payward, Inc.,*
No. 23-CV-01435-CRB, 2023 WL 5420943 (N.D. Cal. Aug. 22, 2023) ............................ 5

*Smith v. Simmons,*
638 F. Supp. 2d 1180 (E.D. Cal. 2009), *aff'd,* 409 F. App'x 88 (9th Cir. 2010) ................ 14

*Smith v. Spizzirri,*
601 U.S. 472 (2024) ............................................................................................................ 33

*SMS Signature Cars v. Connects Mktg. LLC*,
2012 WL 12893936 (C.D. Cal. Nov. 5, 2012) ................................................................... 9

*Sonora Diamond Mid–Century Ins. Co. v. Gardner,*
9 Cal.App.4th 1205, 11 Cal.Rptr.2d 918 (1992) ............................................................... 14

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ............................................................................................................ 29

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ........................................................................................................ 22

*Stover v. Experian Holdings, Inc.,*
978 F.3d 1082 (9th Cir. 2020) ........................................................................................ 8

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.,*
No. 17-CV-02191-SK, 2024 WL 2193311 (N.D. Cal. May 14, 2024) ...................... 11,12

*Thinkey Ink Info. Res., Inc. v. Sun Microsys., Inc.,*
368 F.3d 1053 (9th Cir. 2004) ........................................................................................ 32

*Tompkins v. 23andMe, Inc.,*
No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd,*
840 F.3d 1016 (9th Cir. 2016) ........................................................................................ 32

*Tourgeman v. Collins Fin. Servs., Inc.,*
No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ................ 25

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ........................................................................................................ 22

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442 (2016) ........................................................................................................ 22

*Underwriters Reinsurance Co. v. Ace American Ins. Co.,*
No. CV0208177CASJTLX, 2003 WL 24011931 (C.D.Cal. Feb.10, 2003) .................. 32

*United States v. Aguirre,*
No. 1:21-MJ-00094-SAB-1, 2023 WL 5155157 (E.D. Cal. Aug. 10, 2023) ................ 19

*United States v. Kubbo,*
17 F. App'x 543 (9th Cir. 2001) ...................................................................................... 19

*United States v. Manchester Farming Partnership,*
315 F.3d 1176 (9th Cir.2003) .......................................................................................... 14

*United States v. Pangang Grp. Co.,*
879 F. Supp. 2d 1052 (N.D. Cal. 2012) ...................................................................... 11,14

*United States v. Rosenthal,*
No. CR 02-00053 CRB, 2007 WL 2013524 (N.D. Cal. July 6, 2007) .......................... 14

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Villamar v. Clean Harbors Env't Servs. Inc.,*
No. 222CV03966MEMFJEMX, 2022 WL 4465549 (C.D. Cal. Sept. 23, 2022) ............... 27

*VirtualMagic Asia, Inc.,*
99 Cal.App.4th 228, 121 Cal.Rptr.2d 1 (2002) .................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................. 24

*Wang v. Life Ins. Co. of the Sw.,*
No. 19-CV-01150-YGR, 2019 WL 13201949 (N.D. Cal. Dec. 19, 2019) ......................... 30,34

*White v. Ring LLC*,
No. 22-cv-6909, 2023 WL 1097554 (C.D. Cal. Jan. 25, 2023) ........................... 31

*Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.,*
No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006). ................ 23

*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.,*
No. 5:20-CV-04184-EJD, 2020 WL 6290377 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom.*
*Yih v. Taiwan Semiconductor Mfg. Co., Ltd*, No. 20-17237, 2021 WL 378309
 (9th Cir. Aug. 26, 2021) ........................................ 13

*Zinser v. Accufix Research Institute, Inc.*,
253 F.3d 1180 (9th Cir.2001) ......................... 23

**OTHER AUTHORITY**

39 F.R.D. 69, 102 (1966) ........................... 24

4A Charles Alan Wright & Arthur R, Miller, Federal Practice and Procedure,
§ 1069.4 at 163–64, 74 (3d ed.2002)........................... 11

H.R. Rep. 112-312 (2011) ........................... 15

**STATUTES**

9 U.S.C. § 2 .......................... 28

9 U.S.C. § 3 .......................... 33

9 U.S.C. § 4 .......................................... *passim*

18 U.S.C. § 2710 .......................................... *passim*

28 U.S.C. § 1404 .......................................... *passim*

California Civil Code § 1799.3 ................................................................................. *passim*

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

1

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Richard Lee ("Plaintiff"), individually and as the personal representative of a putative class, filed his Class Action lawsuit on April 22, 2024. The Complaint alleges that Plex offers television, video, and movie services and it installed tracking pixels on its publicly facing website, which transmitted Plaintiff's and Class Members' viewing activities to third-party providers like Meta/Facebook without consent. *See* Complaint, at ¶¶1-2. The Nationwide Class is defined in the Complaint as "all persons in the United States who have a Facebook account and created a Plex account, or signed in to Plex, with a Google, Facebook, or Apple account and viewed videos on watch.plex.tv using the same browser they use to access their Facebook account until March 2, 2024." *See Id*., at ¶ 68. The California Class is defined in the Complaint as "all persons in the State of California who have a Facebook account and created a Plex account, or signed in to Plex, with a Google, Facebook, or Apple account and viewed videos on watch.plex.tv using the same browser they use to access their Facebook account until March 2, 2024." *See Id*., at ¶ 69. Plaintiff alleges causes of action for (1) violation of the Video Privacy Protection Act (18 U.S.C. § 2710, *et seq*) (the "VPPA") and (2) violation of California Civil Code § 1799.3.

Plex GmbH moves pursuant to Rule 12(b)(2) to dismiss each of Plaintiff's claims for failure to exert personal jurisdiction and Plex moves pursuant to Rule 12(b)(6) to dismiss each of Plaintiff's claims for failure to state a claim for which relief can be granted. Alternatively, Plex moves pursuant to the Federal Arbitration Act (9 U.S.C. § 4 *et seq*) (the "FAA") and Rule 12(b)(3) to compel arbitration on an individual basis pursuant to the valid and enforceable Modified Clickwrap Agreement (as defined below) agreed to by Plaintiff. Upon signing up for a Plex account and using the Plex Solution (as defined below), Plaintiff entered into a valid and enforceable agreement and accepted Plex's TOS (as defined below) and Privacy Policy (as defined below). Accordingly, Plex obtained Plaintiff's informed and written consent to the conduct alleged in the Complaint, thus explicitly barring his claims under the VPPA, California Civil Code § 1799.3, and applicable law. Furthermore, at the time Plaintiff allegedly registered for a Plex account, the TOS contained a valid

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1  and enforceable class action waiver and arbitration provision, all of which require the dismissal of

2  the instant action. Alternatively, Plex moves pursuant to 28 U.S.C. § 1404 and Rule 12(b)(3) to

3  transfer venue to the United States District Court for the District of Delaware pursuant to the valid

4  and enforceable Modified Clickwrap Agreement agreed to by Plaintiff. Furthermore, Plex's

5  Amended TOS (as defined below) includes a forum selection clause which, subject to its dispute

6  resolution provision,  requires all claims arising from the Plex Solution to be brought in the courts

7  presiding in the state of Delaware.

8  **II.      STATEMENT OF RELEVANT FACTS**

9        Plex provides its users with access to text, graphics, photos, sounds, audio and videos in the

10  form of news reports, videos, and music (collectively, the "Content") streamed over the internet to

11  its user's internet-connected devices (the "Device"). *See* Declaration of Ricardo Castro, at ¶ 5.

12        Plex's Terms of Service ("TOS") govern a user's access to and use of the Plex Solution,

13  which includes its website located at https://www.plex.tv/, (the "Website"), its video services, the

14  Content, Plex's software, mobile or web applications, or any related Plex services (collectively, "the

15  Plex Solution"). *Id*., at ¶ 6; Ex. A. Plex's privacy policy ("Privacy Policy") governs the method by

16  which Plex collects, uses, and shares user's personal information when a user uses the Plex Solution.

17  *Id*., at ¶ 7; Ex. B.

18        The Complaint alleges that "in or around April 2020, Plaintiff created a Plex Account." *See*

19  Complaint, at ¶ 63. To create a Plex account, Plex users, including Plaintiff, complete the

20  registration process on the Plex Userflow, which involves  manually and affirmatively clicking a

21  "Create an Account" button and therefore acknowledges and agrees he or she has accepted Plex's

22  TOS and Privacy Policy. *Id*., at ¶¶ 9-10. At the time of Plaintiff's alleged account creation in or

23  around April 2020, the account creation userflow was substantially the same as the screenshot

24  depicted below (the "Plex Userflow"):

25  / / /

26  / / /

27  / / /

28  / / /

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS,
OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE



*Id*., at ¶ 12, Ex. C. A user cannot advance to the next step and complete the Plex account registration process until the user affirmatively clicks the "Create an Account" button displayed immediately next to the message that expressly states "By creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the Terms of Service and have reviewed the Privacy Policy." *Id*., at ¶ 13. As shown in the above screenshot, the words "Terms of Service" and "Privacy Policy" are in bold, clearly indicating that they are active hyperlinks that the Plex user could click on to be directed to another webpage. *Id*., at ¶¶ 14, 15; Ex. C. By clicking on the "Terms of Service" hyperlink, an additional window immediately opens within the user's web browser containing the entire text of Plex's TOS. *Id*. By clicking on the "Privacy Policy" hyperlink, an additional window immediately opens within the user's web browser

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1    containing the entire text of Plex's Privacy Policy. *Id*.

2    Plaintiff encountered the TOS and Privacy Policy when he allegedly signed up to create an

3    account with Plex by using his email address, and the TOS and Privacy Policy were presented

4    directly below the "Create an Account" button. *Id*., at ¶¶ 17, 63; Ex. C.. Plaintiff had the opportunity

5    to review the TOS and Privacy Policy prior to clicking on the "Create an Account" button and

6    acknowledging, agreeing, and accepting the TOS and Privacy Policy, as shown in the above

7    screenshot. *Id*., at ¶ 18, Ex. C. Plaintiff manually clicked on the "Create an Account" button and

8    affirmatively acknowledged, agreed, and accepted the TOS and Privacy Policy to sign up for and

9    create his  Plex account. *Id*, at ¶¶ 18-19.

10    At the time Plaintiff initially entered into the Modified Clickwrap Agreement in April 2020,

11    Plex's TOS included (i) a mandatory arbitration agreement and (ii) class action waiver. *Id*., at ¶¶ 20-

12    21. Furthermore, beginning April 11, 2024, Plex's Amended TOS included a forum selection clause,

13    which, subject to its dispute resolution provision within same, requires all claims arising from the

14    Plex Solution to be brought in the courts presiding in the state of Delaware. *Id*., at ¶ 23. At all times

15    since Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020,

16    Plaintiff accepted Plex's Privacy Policy and provided informed, written consent for Plex to collect,

17    process, store, share, and/or sell his PI and PII with third-parties ("Consent"). *Id*., at ¶¶ 25-28, 30-

18    31. Furthermore, at no time relevant hereto did Plaintiff withdraw Consent or opt-out of Plex's

19    Privacy Policy. *Id*.

20    Notwithstanding the above, on April 22, 2024, Plaintiff filed in the United States District

21    Court for the Northern District of California, a class action complaint, individually and on behalf of

22    all others similarly situated, alleging violation of the VPPA and California Civil Code § 1799.3 with

23    respect to his use of the Plex Solution. *See* ECF No. 1. As further explained, *infra*, as Plaintiff

24    entered into a fully enforceable and binding Modified Clickwrap Agreement with Plex, this Court

25    should enter an order dismissing this action or in the alternative strike class allegations, compel

26    arbitration or transfer this action to the United States District Court for the District of Delaware.

27    **III.    PLAINTIFF AND PLEX ENTERED INTO A FULLY ENFORCEABLE AND
         BINDING MODIFIED CLICKWRAP AGREEMENT**

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**A.**     <u>**The Northern District of California has previously ruled that Plex's Modified Clickwrap Agreement is fully enforceable and binding**</u>

The Northern District of California and other District Courts sitting within the Ninth Circuit have continuously held that pursuant to California state contract law, a modified clickwrap agreement[1] is fully enforceable and binding.[2] Modified clickwrap agreements "notify the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advise the user that he or she is agreeing to the terms of service when registering or signing up." *Quamina,* 2024 WL 950157, at *4 (*quoting Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017)). A valid internet contract is formed if the user received "reasonably conspicuous notice" of the agreement and exhibited "an unambiguous manifestation of assent." *Id.* (*quoting Oberstein v. Live Nation Ent., Inc.,* 60 F.4th 505, 512 (9th Cir. 2023)). As explained, *infra*, the Northern District of California has previously held that Plex's Modified Clickwrap Agreement satisfies both of the aforementioned

---

[1] a "modified clickwrap agreement" is also commonly referred to as a "sign-in wrap agreement" and "signin wrap agreement"

[2] *See Iman Ghazizadeh v. Coursera, Inc.,* No. 23-CV-05646-EJD, 2024 WL 3091968, at *6 (N.D. Cal. June 20, 2024)*;Quamina v. JustAnswer LLC,* No. 22-CV-06051-JD, 2024 WL 950157, at *8 (N.D. Cal. Mar. 5, 2024)*; Singh v. Payward, Inc.,* No. 23-CV-01435-CRB, 2023 WL 5420943, at *9 (N.D. Cal. Aug. 22, 2023*; Moyer v. Chegg, Inc*., No. 22-CV-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023); *Bold Ltd. v. Rocket Resume, Inc*., No. 22-CV-01045-BLF, 2023 WL 4157626, at *4 (N.D. Cal. June 22, 2023); *Britt v. ContextLogic, Inc.,* No. 3:20-CV-04333-WHA, 2021 WL 1338553, at *5 (N.D. Cal. Apr. 9, 2021); *Lee v. Ticketmaster*, 817 Fed. App'x 393, 394-95 (9th Cir. 2020); *Dohrmann v. Intuit, Inc*., 823 Fed. App'x 482, 484-85 (9th Cir. 2020); *Peter v. DoorDash, Inc*., 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020)

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

elements and is a fully enforceable and binding legal contract. *See Rebecka Miller v. Plex, Inc.*, Case No. 5:22-cv-5015-SVK, ECF No. 32 (March 30, 2023) Exhibit E. Accordingly, this Court should follow its established precedent and rule same.

**1.**    Plaintiff received reasonably conspicuous notice of the Modified Clickwrap Agreement

As to the first *Berman* factor, to be conspicuous a notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."  *Rocha v. Urb. Outfitters, Inc.,* No. 23-CV-00542-AMO, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) (*quoting Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). "This may be done by using a contrasting font color…or through the use of all capital letters, both of which may 'alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage.'" *Id.* (*quoting Berman*, 30 F.4th 849,856).

In concluding that Plex's Modified Clickwrap Agreement satisfied the first *Berman* factor, this Court in *Miller* held, in part:

> Plex's Sign Up Page… is uncluttered and does not include distracting graphics…The critical notice language is wholly visible and appears in close proximity to the yellow-colored "Create an Account" button in dark gray font of the same size as the rest of the webpage's text other than the statement "Create your free account" that appears at the top of the webpage in a larger font…Further, the three buttons for Google, Facebook and Apple plainly provided options for how a user could sign up for Plex's services because each began with "Continue with" and then provided a method for doing so… Directly beneath these options is the word "or" and fields for a user to enter an email address and password along with an orange "Create an account" button…Under the yellow-colored "Create an account" button, users are clearly informed that "By creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the Terms of Service and have reviewed the Privacy Policy."…A user clicking on the hyperlink "Terms of Service" is directed to a copy of the TOS…A reasonable person would know that, by signing up, she would be agreeing to Plex's terms even if she used her Google account to sign up…Plex's Sign Up Page includes three hyperlinks, to its TOS, privacy policy, and sign-in page, where users who already have Plex accounts
>
> may log in…The hyperlinks are all bolded and in the same size font, which sufficiently indicates to users that they are clickable in this instance; a user need not "click on every word of the sentence in case one of them is actually a link."…As

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

1

2

such, the hyperlink to Plex's TOS was presented in a manner that gave Plaintiff adequate notice that the bolded phrase "Terms of Service" was a clickable link[.]

3

4

*Id.,* 5:22-cv-5015-SVK, ECF No. 32, pg. 16-20. Here, Plex has not implemented any changes to the

5

design of the Plex Userflow since this Court's decision in *Miller* on March 30, 2023. *See* Declaration

6

of Ricardo Castro, at ¶ 12.  Accordingly, the Court's analysis should remain the same, and this Court

7

should follow precedent and hold that Plaintiff received conspicuous notice of the terms and

8

conditions of the Modified Clickwrap Agreement, including the TOS and Privacy Policy.

9

>                    **2.**    Plaintiff exhibited an unambiguous manifestation of assent to the terms and
>                            conditions of the Modified Clickwrap Agreement

10

In concluding that Plex's Modified Clickwrap Agreement satisfied the second *Berman* factor,

11

this Court  in *Miller* held:

12

13

14

> Plaintiff was on inquiry notice of the arbitration agreement, and that Plaintiff manifested unambiguous assent to Plex's TOS when she signed up for Plex's services using her Google credentials.

15

*Id.,*  Case No. 5:22-cv-5015-SVK, ECF No. 32, pg. 21. Here, similar to the plaintiff in *Miller*,

16

Plaintiff concedes that "in or around April 2020, Plaintiff created a Plex account" and  therefore

17

manifested unambiguous assent to the terms and conditions of the Modified Clickwrap Agreement,

18

including the TOS and Privacy Policy. *See* Complaint, at ¶ 63; *see also* Declaration of Ricardo

19

Castro, at ¶¶ 10, 18.  Accordingly, the Court's analysis should remain the same, and this Court should

20

follow precedent and hold that Plaintiff exhibited an unambiguous manifestation of assent to the

21

terms and  conditions of the Modified Clickwrap Agreement, including the TOS and Privacy Policy.

22

As such, for the reasons explained, *supra*, pursuant to the contact laws of the State of California,

23

Plaintiff entered into an enforceable and binding Modified Clickwrap Agreement with Plex.

24

25

26

**IV.    THE TERMS OF SERVICE IN PLACE WHEN PLAINTIFF FIRST ALLEGEDLY
          REGISTERED FOR A PLEX ACCOUNT IS CONTROLLING AND GOVERNS
          THIS COURT'S ANALYSIS**

27

/ / /

28

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

At all times since Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020, each version of Plex's terms of service, including the TOS, included a change-of-terms provision, which provides that Plex "reserves the right to change terms and conditions of the TOS[.]" *See* Declaration of Ricardo Castro, at ¶ 33. Ex. B. Under California law, "in order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). The party enforcing the change-of-terms provision has the burden of proving each element of a valid assent, including mutual assent. *Id.* "Notice—actual, inquiry, or constructive—is the touchstone for assent to a contract, and the resulting enforceability of changed terms in an agreement." *Id.*

In *Nguyen v. OKCoin USA Inc.,* the parties disputed whether the September 2021 Terms of Service or the July 2022 Terms of Service applied. *Id.*, No. 22-CV-06022-KAW, 2023 WL 2095926, at *2 (N.D. Cal. Feb. 17, 2023). The September 2021 Terms of Service provided that defendant may "change or modify the terms and conditions contained in these Terms ... at any time and at its sole discretion." Further, the September 2021 Terms of Service stated: "Your non-termination or continued use of this Site or Service(s) after the effective date of any changes or modifications of these Terms will constitute your acceptance of such changes or modifications." Defendant subsequently modified the Terms of Service in July 2022, and plaintiffs stated that they used defendant's website thereafter. Plaintiffs argued that the July 2022 terms of service applied to the case, while defendant responded that the September 2021 Terms of Service still applied because defendant did not notify existing users by e-mail or other means about the July 2022 terms of service. Applying the *Stover* Test, the court in *Nguyen* agreed with the defendant and held that the September 2021 Terms of Service applied because defendant did not notify its existing users of the July 2022 Terms of Service. *See also Jackson v. Amazon.com, Inc.,* 559 F. Supp. 3d 1132, 1141 (S.D. Cal. 2021), *aff'd,* 65 F.4th 1093 (9th Cir. 2023); *Bennett v. Isagenix Int'l, LLC,* No. CV-23-01061-PHX-DGC, 2023 WL 4562605, at *3 (D. Ariz. July 17, 2023).

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

Here, Plex did not notify its existing users, including Plaintiff, of the April 11, 2024 update to its TOS (the "Amended TOS") by e-mail or other means. *See* Declaration of Ricardo Castro, at ¶ 34. Accordingly, consistent with *Stover* and *Nguyen,* the TOS is the controlling version in effect when Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020, which includes (i) a mandatory arbitration agreement and (ii) class action waiver. Additionally, the amended TOS is not controlling because Plaintiff defines both the Nationwide Class and California Subclass as those users who used the Plex Solution "up and until March 2, 2024", which is prior to the April 11, 2024 update. Therefore, the remainder of this Motion should be evaluated in accordance with the TOS rather than the Amended TOS.

## V.    THE COURT SHOULD DISMISS THIS ACTION AS TO PLEX GMBH PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) BECAUSE IT IS A FOREIGN ENTITY, DOES NOT HAVE MINIMUM CONTACTS IN THE UNITED STATES OR CALIFORNIA, AND PERSONAL JURISDICTION DOES NOT EXIST

Pursuant to Fed.R.Civ.P. 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction and "the plaintiff then bears the burden of demonstrating that the Court has jurisdiction." *Gofron v. Picsel Techs., Inc.,* 804 F. Supp. 2d 1030, 1035 (N.D. Cal. 2011) (*citing Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir.2004)). While uncontroverted allegations in the complaint must be taken as trust, "the court may not assume the truth of such allegations if they are contradicted by affidavit." *Id.* (*citing Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir.1977)). "If defendant submits evidence controverting the allegations, plaintiff may not rely on its pleadings, but must 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Baker v. Wehinger,* No. CV 18-05800 SJO (EX), 2018 WL 6443086, at *3 (C.D. Cal. Oct. 9, 2018) (*quoting SMS Signature Cars v. Connects Mktg. LLC*, 2012 WL 12893936, at *1 (C.D. Cal. Nov. 5, 2012) (*citing Scott v. Breeland*, 792 F. 2d 925, 927 (9th Cir. 1986))."There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process." *Id.* (*citing Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990)); *Data Disc, Inc.,* 557 F.2d 1280, 1286). "California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

standards merge into one analysis." *Id.* (*citing Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 (9th Cir.1993)). "Under that analysis, the exercise of jurisdiction over a non-resident defendant will violate due process unless the defendant has established such 'minimum contacts' with the forum state that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.,* No. C 12-05586 CW, 2013 WL 245594, at *2 (N.D. Cal. Jan. 22, 2013) (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  "The court's exercise of personal jurisdiction may be either general or specific." *Id.*

Here, Plaintiff concedes that "Plex GmbH is a Swiss corporation with its principal place of business at Wilhelmine-Gemberg-Weg 6 10179 Berlin, Germany." *See* Complaint, at ¶ 8; *see also* Declaration of Angelo Spenillo, at ¶ 7. Accordingly, the "alter-ego theory, and has been utilized by courts…to determine whether a court may exercise personal jurisdiction over a foreign parent corporation." *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.,* 735 F. Supp. 2d 277, 317 (W.D. Pa. 2010), *aff'd,* 683 F.3d 462 (3d Cir. 2012) *see also Ranza v. Nike, Inc.,* 793 F.3d 1059, 1073 (9th Cir. 2015) ("We hold the alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate.") Pursuant to the alter-ego theory:

> when a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent company is not automatically subject to jurisdiction in that state because of the presumption of corporate separateness. Thus, if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent and is not acting as merely one of its departments, personal jurisdiction over the parent corporation may not be acquired simply on the basis of the local activities of the subsidiary company.

*In re Enter. Rent-A-Car.,* 735 F. Supp. 2d 277, 317 (*quoting* 4A Charles Alan Wright & Arthur R, Miller, Federal Practice and Procedure, § 1069.4 at 163–64, 74 (3d ed.2002)); *see also Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 218 (5th Cir.2000) (As a general rule, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

1  sufficient to warrant the assertion of jurisdiction over the foreign parent.")

2      In the Ninth Circuit, the alter-ego test is met when "(1) that there is such a unity of interest

3  and ownership that the separate personalities of the two entities no longer exist and (2) that failure

4  to disregard their separate identities would result in injustice. The first prong of this test has

5  "alternately been stated as requiring a showing that the parent controls the subsidiary to such a

6  degree as to render the latter the mere instrumentality of the former." *United States v. Pangang Grp.*

7  *Co.,* 879 F. Supp. 2d 1052, 1066 (N.D. Cal. 2012) (citations omitted).

8      A.     **Plaintiff fails the alter-ego test because Plex Inc. and Plex GmbH have separate**
9             **personalities**

10     Courts consider the following factors when assessing the unity of interest prong of the *alter*

11 *ego* test:

12      (1) inadequate capitalization, (2) commingling of funds and other assets, (3)
        disregard of corporate formalities and failure to maintain an arm's length
13      relationship, (4) holding out by one entity that is liable to the debts of the other, (5)
        identical equitable ownership, (6) use of the same offices and employees, (7) lack of
14      segregation of corporate records, (8) manipulating assets between entities so as to

15      concentrate the assets in one and the liabilities in another, and (9) identical directors
16      and officers.

17 *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.,* No. 17-CV-02191-SK, 2024 WL 2193311,

18 at *12 (N.D. Cal. May 14, 2024) (*quoting City & Cnty. of San Francisco v. Purdue Pharma L.P.*,

19 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020) (*citing Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d

20 1241, 1250 (9th Cir. 2017)).

21     Here, Plaintiff alleges, in a conclusory fashion that personal jurisdiction exists as to Plex

22 GmbH because "Plex GmbH oversees and controls the operations of Plex, Inc., including the

23 delivery of the Plex streaming service in the United States" and "together with Plex GmbH,

24 Defendant Plex, Inc. offers the Plex streaming service throughout California and the United States."

25 *See Complaint*, at ¶¶ 7-8. First, Plaintiff's argument is unpersuasive because "**mere 'bare bones'**

26 **assertions of minimum contacts with the forum or legal conclusions unsupported by specific**

27 **factual allegations will not satisfy a plaintiff's pleading burden**." *Swartz v. KPMG LLP*, 476 F.3d

28 756, 766 (9th Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1  allegations or "formulaic recitation of the elements" of a claim are not entitled to the presumption

2  of truth); *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) ("Nor is the court

3  required to accept as true allegations that are ... unwarranted deductions of fact, or unreasonable

4  inferences."). Second, Plaintiff's conclusory allegations are false as Plex, Inc. is the sole owner of

5  the Plex Solution. *See* Declaration of Angelo Spenillo, at ¶ 21. Third, even assuming, *arguendo*,

6  Plaintiff's conclusory allegations are true (which they are not), Courts have continuously dismissed

7  this argument. *See Nike, Inc.,* 793 F.3d 1059, 1073 ("total ownership and shared management

8  personnel are alone insufficient to establish the requisite level of control.") (*citing Harris Rutsky &

9  Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir.2003)); *Katzir's Floor & Home

10  Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership

11  and control does not eviscerate the separate corporate identity that is the foundation of corporate

12  law."); *Sun Grp.,* 2024 WL 2193311, at *12 ("a parent corporation may be directly involved in the

13  activities of its 'subsidiaries without incurring liability so long as that involvement is 'consistent

14  with the parent's investor status.'") (*quoting Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir.

15  2001)); *In re California Gasoline Spot Mkt. Antitrust Litig.,* No. 20-CV-03131-JSC, 2021 WL

16  4461199, at *2 (N.D. Cal. Sept. 29, 2021) ("[A] parent corporation may be directly involved in

17  financing and macro-management of its subsidiaries ... without exposing itself to a charge that each

18  subsidiary is merely its alter ego.") (*quoting Nike, Inc.*, 793 F.3d 1059, 1074)); *Dole Food Co. v.

19  Patrickson,* 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil, however, is the

20  rare exception, applied in the case of fraud or certain other exceptional circumstances"). Even in the

21  context of shared websites between the foreign parent and the domestic subsidiary, this is not enough

22  to satisfy the alter-ego test. *See Reynolds v. Binance Holdings Ltd.,* 481 F. Supp. 3d 997, 1006 (N.D.

23  Cal. 2020) ("'When confronted with entities' shared websites in the alter ego context, courts have

24  held this does not reflect an 'abuse of the corporate form and existence of an alter ego relationship.'")

25  (*quoting Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1139 (C.D. Cal. 2015));

26  *NetApp, Inc. v. Nimble Storage, Inc*, 2015 WL 400251, at *7 (N.D. Cal. Jan. 29, 2015) ("In addition,

27  the allegation that [entities] share a website and email is an administrative ... function. Shared

28  administrative functions are not necessarily indicative of an alter ego relationship."); *Yih v. Taiwan

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Semiconductor Mfg. Co., Ltd.,* No. 5:20-CV-04184-EJD, 2020 WL 6290377, at \*7 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co., Ltd*, No. 20-17237, 2021 WL 3783096 (9th Cir. Aug. 26, 2021) ("Moreover, separate corporate entities presenting themselves 'as one online does not rise to the level of unity of interest required to show companies are alter egos.'") (*quoting Corcoran v. CVS Health Corp.,* 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016)); *Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at \*3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [company's] website ... simply do[es] not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"). Fourth, Plaintiff does not allege any of the remaining eight *Sun Grp.* factors exist, nor can he. *See* Declaration of Angelo Spenillo, at ¶¶ 9-21. Accordingly Plaintiff fails to satisfy the first factor of the alter-ego test.

### B. <u>Plaintiff fails the alter-ego test because failure to disregard the separate identities of Plex Inc. and Plex GmbH would not result in injustice or fraud</u>

In order to satisfy the second prong of the alter-ego test, plaintiff must show that the foreign entity was structured "in such a way that it was designed as to avoid subjecting it to liability within the United States." *Pangang Grp. Co.,* 879 F. Supp. 2d 1052, 1068 ; *see also Oracle Am., Inc. v. Appleby*, No. 16-CV-02090-JST, 2016 WL 5339799, at \*7 (N.D. Cal. Sept. 22, 2016) ("California courts generally require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding"). Furthermore, "California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable circumstances that warrants application of the alter ego doctrine." *Smith v. Simmons,* 638 F. Supp. 2d 1180, 1192 (E.D. Cal. 2009), *aff'd,* 409 F. App'x 88 (9th Cir. 2010) (*citing VirtualMagic Asia, Inc.,* 99 Cal.App.4th 228, 245, 121 Cal.Rptr.2d 1 (2002) ("Alter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and 'difficulty in enforcing a judgment or collecting a debt does not satisfy this standard'"); *Sonora Diamond Mid–Century Ins. Co. v. Gardner,* 9 Cal.App.4th 1205, 1213, 11 Cal.Rptr.2d 918 (1992) ("'Certainly, it is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an 'inequitable result'. In almost every instance where a plaintiff has attempted to invoke

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1  the doctrine he is an unsatisfied creditor[.]'").

2       Here, Plex GmbH was strategically incorporated in Switzerland for business purposes. *See*

3  Declaration of Angelo Spenillo, at ¶ 20. Plaintiff also entirely fails to allege evidence of bad faith

4  by Plex GmbH. While Plaintiff alleges throughout the Complaint, that Plex violated the VPPA and

5  California Civil Code § 1799.3, this does not satisfy the heightened pleading requirement. *See*

6

7   *United States v. Rosenthal,* No. CR 02-00053 CRB, 2007 WL 2013524, at *2 (N.D. Cal. July 6,

8  2007) ("'[B]ad faith' is not simply bad judgment or negligence, but rather it implies the conscious

9  doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind

10  affirmatively operating with furtive design or ill will.") (*quoting United States v. Manchester*

11  *Farming Partnership,* 315 F.3d 1176, 1182 (9th Cir.2003)); *Pickman v. Am. Exp. Co.,* No. C 11-

12  05326 WHA, 2012 WL 1357636, at *3 (N.D. Cal. Apr. 17, 2012) ("When considering whether 'the

13  action was not in good faith,' the court may consider 'evidence of an improper motive [which] may

14  be established by the circumstances.'" (*quoting Corbett v. Hayward Dodge, Inc.,* 119 Cal. App. 4th

15  915, 14 Cal. Rptr. 3d 741 (2004)). Accordingly, Plaintiff fails to satisfy both the first and second

16  factor of the alter-ego test, and therefore Plaintiff fails to establish personal jurisdiction over Plex

17  GmbH.

18  **VI.    THIS COURT SHOULD DISMISS THIS ACTION PURSUANT TO FEDERAL**
    **RULE OF CIVIL PROCEDURE 12(B)(6) BECAUSE PLAINTIFF CONSENTED TO**
19  **PLEX COLLECTING, STORING, AND SHARING PLAINTIFF'S PERSONAL**
    **INFORMATION WITH THIRD PARTIES, INCLUDING FACEBOOK/META.**
20

21       As an initial matter, as explained, *supra,*  Plaintiff gave Plex Consent for the conduct alleged

22  in the Complaint which is fatal as a matter of law to his claim for violations of the VPPA and

23  California Civil Code § 1799.3. *See* Declaration of Ricardo Castro, at ¶¶ 18, 2429. To state a claim

24  under 18 § 2710(b)(1)," a plaintiff must allege that (1) a defendant is a 'video tape service provider,'

25  (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any

26  person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section

27  1710(b)(2)." *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1066 (9th Cir. 2015). Pursuant to 18 U.S.C. §

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

2710(b)(2)(B)[3], a video tape service provider may disclose personally identifiable information concerning any consumer to any person with the informed, written consent (including through an electronic means using the internet) of the consumer that (i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer is given at the time the disclosure is sought or is given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election. *Id.*

California Civil Code § 1799.3 provides that "no person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual." *Id.* As discussed, *infra*, the Modified Clickwrap Agreement entered into with Plaintiff satisfies the requirements under the VPPA and California Civil Code § 1799.3 for permissible disclosure and thus bars Plaintiff's claims as a matter of law.

### A. The Modified Clickwrap Agreement entered into with Plaintiff satisfies the requirements under the VPPA for permissible disclosure

#### 1. The first prong is satisfied because Plaintiff entered into an enforceable and binding Modified Clickwrap Agreement and therefore Consented to Plex's Privacy Policy

---

[3] The statute was amended in 2011 to "clarify that a video tape service provider may be obtained through the Internet." H.R. Rep. 112-312 (2011). At the time the amendment passed, Congress was aware that internet companies like Facebook "track, retain, market and mine information on their customers," and the legislative history makes clear that the amendment was intended "to provide a seamless process to share video viewing habits on social media (like Facebook) in the same manner currently in use for music, books and news articles." *Id*; *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17CV04570LAKKHP, 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11, 2017).

The first requirement for permissible disclosure under VPPA is satisfied because Plaintiff Consented to Plex's Privacy Policy, which as shown in Exhibit B, is in a form that is separate and unique from the TOS and all other forms setting forth other legal or financial obligations of the Plaintiff. *See* Declaration of Ricardo Castro, at ¶¶ 7, 18; Ex. B. The Privacy Policy sets forth Plex's personal information processing policy which explains how Plex collects, uses, and shares personal data about a Plex user, and also when and how a Plex user can control what Plex do with it. *Id*., at ¶¶ 7, 24-28; Ex. B. The Privacy Policy applies to the data collected through products and services provided by Plex, including the Plex Solution. *Id*.

At all times since Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020, the Privacy Policy describes the information Plex collects, **which includes videos viewed**, as illustrated, in part, below:

> F. **Data Related to Third-Party Content**. When you use the Services to watch, listen to, or record content from a third-party content provider or source such as any officially supported Third-Party Content that Plex streams to Plex apps, trailers and extras from Internet Video Archive (IVA), or use of our Live TV and DVR service, we may collect information related to that media interaction. For example, we may collect what program or movie you are watching and when, your interaction with any static or video advertising, etc. We may also collect your device information and device location, for example, by using your IP address or by asking for your zip code. We may use this information to run and improve our Services, provide advertising and marketing to you, as well as share anonymous or aggregated versions of the data with third parties.

*Id*.; Ex. B. At all times since Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020, the Privacy Policy describes the reasons Plex collects personal information, as illustrated, in part, below:

> F. We use Collected Information related to Third-Party Content to allow us and our partners to personalize marketing, advertising, and other content delivered or offered to you. For example, we may use or share Collected Information related to Third-Party Content that is necessary to serve video content and advertisements, including the source of the content, full information about the content including title, device identifiers, timing and location of your consumption, your user information, your IP address, etc. We also share the metadata needed to serve video or audio advertising.

*Id*.; Ex. B. At all times since Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020, the Privacy Policy describes who Plex shares a user's personal information with, as illustrated, in part, below:

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

H. Plex may share Collected Information as expressly set forth in this Privacy Policy, including the following limited situations:

   i. With third parties that assist us in providing you with our Services, such as payment processors, business and analytics providers, content providers, marketers, and cloud service providers, but we require our third parties to only use your information for the purposes of providing the services requested of them and in accordance with this Privacy Policy.

   ii. If we believe that the disclosure is reasonably necessary to (a) satisfy an applicable law, regulation, legal process, or enforceable governmental request; or (b) protect or defend the safety, rights, or property of Plex, the public, or any person.

   iii. In connection with a merger, acquisition, bankruptcy, dissolution, reorganization, or similar transaction or other proceeding involving Plex that includes or requires the transfer of the information.

   iv. If your information is a part of a set of non-private, aggregated, anonymized, or otherwise non-personal information, such as anonymized and / or aggregated usage statistics and viewing trends.

   v. With third parties to improve and deliver advertising to you on our behalf.

   vi. If you request or consent to our sharing of Collected Information with a third party.

*Id.*; Ex. B. Here, Plaintiff alleges in his Complaint that Plex:

> knowingly disclosing personal information ("PI") and personally identifiable information ("PII")—including the names of specific videos and video services Plaintiff and Class Members requested and obtained—to Meta without their consent. Specifically, Plex installed computer code on its website called the "Meta Tracking Pixel," which tracks and records Plaintiff and Class Members' private video consumption. Behind the scenes of many key plex.tv webpages—and unbeknownst
>
> to video viewers—this code collects Plaintiff and Class Members' video-consumption history and discloses it to Meta without their consent.

*See* Complaint, at ¶ 5. Notwithstanding, as the above screenshots clearly and unambiguously shows, Plex's Privacy Policy explicitly puts Plaintiff on notice that it would collect, use, and/or transmit Plaintiff's PI and PII to Facebook/Meta and by proceeding to sign up with Plex and agreeing to its TOS and Privacy Policy, Plaintiff provided Consent for the alleged actions that gave rise to this action. *See* Declaration of Ricardo Castro, *Id.* at ¶¶ 18, 24-28. As such, Plex did not violate the VPPA.

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1

**2.**     The second prong is satisfied because Plaintiff never withdrew consent

2

3     The second prong is satisfied because as discussed, *supra*, by entering into the Modified

4    Clickwrap Agreement, Plaintiff provided Consent for Plex to collect, use, and/or transmit Plaintiff's

5    PI and PII to Facebook/Meta. *Id.*  In California withdrawal of consent requires an "unequivocal act

6    or statement of withdrawal[.]" *United States v. Kubbo,* 17 F. App'x 543, 545 (9th Cir. 2001); *see*

7    *also United States v. Aguirre*, No. 1:21-MJ-00094-SAB-1, 2023 WL 5155157, at *17 (E.D. Cal.

8    Aug. 10, 2023) (same).

9     Here, Plaintiff never notified Plex that he withdrew consent, requested to withdraw consent,

10   or opted-out of the Privacy Policy. *See* Declaration of Ricardo Castro, *Id.* at ¶¶ 24-28. Rather, the

11   first sentence of the TOS clearly and conspicuously provides that "by using or otherwise accessing

12   the Plex website, mobile, or web applications(s), or any  related Plex service(s)…you accept and

13   agree to the following Terms of Service", which incorporates by reference Plex's Privacy Policy.

14   *Id.*, Ex A. Accordingly, each time Plaintiff signed into his Plex account and used the Plex Solution

15   he reaffirmed his Consent regarding Plex's practice of collecting, using and sharing his PI and PII.

16     **3.**     The third prong is satisfied because within the Privacy Policy Plex provided
17         Plaintiff instructions in a clear and conspicuous manner on how to withdraw
         Consent.

18   Finally, the third prong for consent under the VPPA is satisfied because at all times since Plaintiff

19   initially entered into the Modified Clickwrap Agreement in or around April 2020, the Privacy Policy

20   provides the Plaintiff, in a clear and conspicuous manner, the ability to opt-out of  personal

21   information being provided to third-parties, as illustrated, in part, below:

22

23

24

25

26

27

28

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ◆ FAX 619.849.4950

# Use, Processing, and Sharing of Your Information

A. Plex processes and uses Collected Information with your consent, you can withdraw your consent by updating your privacy settings or closing your account. Plex also processes Collected Information when it needs to do so to fulfill a contract with you to provide you services, in its legitimate interest to aid in developing and improving the services, or when required by law. If you do not want to provide certain information to us in order to fulfil our agreement with you to provide the services, we may not be able to provide you the fullest version of our services.

## Your Choices, Including Opt-Out Options

You have the following choices regarding how we and third parties use certain information collected from or about you. We are committed to complying with the Digital Advertising Alliance ("DAA") Self-Regulatory Principles for Online Behavioral Advertising and the DAA Application of Self-Regulatory Principles for the Mobile Environment.

A. **Opt-Out from Promotional Communications.**.

    i. You may opt out of receiving the marketing newsletter from us by accessing your account, selecting Settings on the Plex website, and clicking "unsubscribe" in the Newsletter section. You may also opt out of certain promotional communications by clicking the "unsubscribe" link in a particular promotional communication. Please note that you cannot opt out from receiving all communications from us, including administrative messages, service announcements, and messages regarding the terms and conditions of your account.

    ii. You can choose to receive push notifications from Plex on your device. If you do not wish to receive push notifications, you can use your device's settings to turn them off.

B. **Opt-Out Options Page**. Please visit the Opt-Out Options page to understand the options available to you regarding Third-Party Online Behavioral or Interest-Based Advertising and any specific third-party advertising companies' opt out information.

C. **Options for Sharing What You Watch**. We may ask for your consent to have Plex share your third-party media consumption information together with your personal information with our content programmers, service providers, and other third parties. If we have asked for your consent, we will provide you with a way to view or change your consent preference by updating your account settings.

D. **Opt-Out of Playback Statistics**. You may choose to opt-out of sharing the playback statistics for Personal Local Content that you store on your personal Plex Media Server by updating your Privacy Preferences.

E. **Opt-Out for Digital Advertising**. Plex may also use third-party advertising companies to serve ads, which may, directly or indirectly, collect or use information about user visits to websites and mobile app usage over time and across non-affiliated websites and mobile apps to display advertisements more tailored to users' interests on this browser or device, and those browsers or devices associated with it. A user can visit www.aboutads.info/choices and/or download the appropriate version the AppChoices app at http://www.youradchoices.com/appchoices if a user wishes to learn more about this practice or would like to know more about his/her choices regarding that activity by companies participating in those choice tools. Please visit the Opt-Out Options for Third-Party Advertising page for any specific third party advertising companies' opt-out information.

F. **Withdraw Consent**. You can withdraw your consent to our processing of personal information by updating your privacy settings, or closing your account.

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Id.*; Ex. B. As explained, *supra*, to be clear and conspicuous a notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Rocha*, 2024 WL 393486, at *4 (*quoting Berman* 30 F.4th 849, 856)). "This may be done by using a contrasting font color…or through the use of all capital letters, both of which may 'alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage.'" *Id.* (*quoting Berman*, 30 F.4th 849,856). Here, Plaintiff, in a conclusory manner, alleges that "at no point did Defendants give consumers the opportunity to withdraw from ongoing disclosures of their PII in a clear and conspicuous manner[.]" *See* Complaint, at ¶ 61. Notwithstanding, as illustrated by the screenshot above, there can be no doubt Plex provided Plaintiff notice and instructions on how to withdraw from ongoing disclosures, Furthermore, the opt-out notice and instructions is clear and conspicuous as it is in large font, bolded, and hyperlinked in orange, while the surrounding text is black. Accordingly, as explained, *supra*, Plex received statutory consent under the VPPA, and Plaintiff's claim must be dismissed.

## B.  The Modified Clickwrap Agreement entered into with Plaintiff satisfies the requirements under California Civil Code § 1799.3 for permissible disclosure

The requirement for permissible disclosure under California Civil Code § 1799.3 is satisfied because, as explained, *supra*, Plex received Plaintiff's written Consent. Plaintiff, in a conclusory manner, alleges that "Plex failed to meet the consent requirements…because it did not obtain…written consent[.]" *See* Complaint, at ¶ 54. Plaintiff's arguments is unpersuasive however because as explained and illustrated by the screenshots above, Plex's Privacy Policy explicitly put Plaintiff on notice that it would collect, use, and/or transmit Plaintiff's PI and PII to Facebook/Meta and by proceeding to sign up with Plex and agreeing to its TOS and Privacy Policy, Plaintiff provided Consent for the alleged actions that gave rise to this action. *See* Declaration of Ricardo Castro, at ¶¶ 18, 24-28, 31. As such, Plex did not violate the California Civil Code § 1799.3. Furthermore, the language of § 1799.3 is "notably narrower in certain respects" to the VPPA  in that it does not contain the additional three factors as set forth in 18 U.S.C. § 2710(b)(2)(B). *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (analyzing California Civil Code § 1799.3). However,  to the same extent "the language of § 1799.3 is similar to that of the VPPA" in

that the VPPA expressly provides written consent can be given "through an electronic means using the internet." *See* 18 U.S.C. § 2710(b)(2)(B)(i); *see also Martin,* 657 F. Supp. 3d 277, 285. Accordingly, Plaintiff cannot in good faith argue that written consent cannot be provided through electronic means, especially in today's modern times. Accordingly, Plex received statutory consent under California Civil Code § 1799.3 and Plaintiff's claim must be dismissed.

## VII. THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f) BECAUSE PLAINTIFF IS UNABLE TO MEET THE REQUIREMENTS OF RULE 23

A court "may strike from any pleading ... any redundant, immaterial, impertinent, or scandalous mater." Fed. R. Civ. P. 12(f). Furthermore, "under Rule 23(d), a court may 'require that the pleadings be amended to eliminate allegations about representation of absent persons.'" *Larry Pearl v. Coinbase Global, Inc*., No. 22-CV-03561-MMC, 2024 WL 3416505, at *2 (N.D. Cal. July 15, 2024) (*quoting* Fed. R. Civ. P. 23(d)(1)(D)). "District courts have the authority to strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified." *Id.* (*citing Kamm v. California City Dev. Co.,* 509 F.2d 205, 207 n.3, 212–14 (9th Cir. 1975) (affirming order striking class allegations where plaintiff would be unable to meet requirements of Rule 23)). Additionally, under Fed. R. Civ. P. 23(c)(1), "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." In order to maintain a class action, a plaintiff must satisfy each of the four requirements under Fed. R. Civ. P. 23(a), and must satisfy at least one of the prerequisites within Fed. R. Civ. P. 23(b).

As an initial matter, Plaintiffs are unable to certify a class because the class lacks Article III standing. "**Every class member must have Article III standing** in order to recover individual damages… 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2016) (*quoting Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 466 (2016)). Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *Id.* "That a suit may be a class action ... adds nothing to the question of

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

1  standing[.]" *Spokeo v. Robins,* 578 U.S. 330, 338, n. 6 (2016) (citations omitted); *see also Quinalty*

2  *v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *3 (D. Ariz. Jan. 30, 2024)

3  (dismissing class allegations in a data breach because the class lacked Article III standing"). Here,

4  the Class lacks standing and the proposed Class definitions are improper, because as explained

5  above, a Plex user cannot register for a Plex account until he or she affirmatively clicks the "Create

6  an Account" button within the Plex User Interface, and therefore agrees to Plex's TOS and Privacy

7  Policy, including the provisions which grant Plex Consent to collect, store, and share Class

8  members' personal information. *See* Declaration of Ricardo Castro, ¶¶ 10, 13.

9      Additionally, a class action is maintainable under Rule 23(b)(1)(A) if "prosecution of

10  separate actions ... would create a risk of inconsistent or varying adjudications with respect to

11  individual members of the class which would establish incompatible standards of conduct for the

12  party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). "Certification under Rule 23(b)(1)(A) is…

13  not appropriate in an action for damages." *Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1180,

14  1193 (9th Cir.2001). Here, the primary relief sought is monetary damages. To be sure, Plaintiff

15  brings a Two Count Complaint seeking "statutory damages of $2,500 for each violation of the VPPA

16  pursuant to 18 U.S.C. § 2710(c)", "statutory damages of $500 for each violation of the Cal. Civ.

17  Code §1799.3" and "punitive damages[.]" *See* Complaint, at ¶¶ 86, 95; *see also* Prayer For Relief.

18  As such, Plaintiff cannot certify a class under Rule 23(b)(1)(A).

19

20      A class action is maintainable under Rule 23(b)(1)(B) if prosecuting separate actions by or

21  against individual members of the class would create a risk of adjudications with respect to

22  individual class members that, as a practical matter, would be dispositive of the interests of the other

23  members not parties to the individual adjudications or would substantially impair or impede their

24  ability to protect their interest. Fed. R. Civ. P. 23(b)(1)(B). "To satisfy Rule 23(b)(1)(B), a class

25  action plaintiff must demonstrate that the case involves a 'fund'…"*Whiteway v. FedEx Kinko's Off.*

26  *& Print Servs., Inc*., No. C 05-2320 SBA, 2006 WL 2642528, at *9 (N.D. Cal. Sept. 14, 2006). The

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

1    "mandatory class treatment under a limited fund rationale must be confined to a narrow category of

2    cases." *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 842 (1999). Here, Plaintiff will be unable to satisfy

3    Rule 23(b)(1)(B) because he fails to allege that this case involves a fund.

4        A class action is maintainable under Rule 23(b)(2) if "the party opposing the class has acted

5    or refused to act on grounds that apply generally to the class, so that final injunctive relief or

6    corresponding declaratory relief is appropriate respecting the class as a whole." *Id*. "Claims for

7    individualized relief do not satisfy Rule 23(b)(2). "*Lyon v. United States Immigr. & Customs Enf't*,

8    300 F.R.D. 628, 642 (N.D. Cal. 2014), modified sub nom. *Lyon v. U.S. Immigr. & Customs Enf't*,

9    308 F.R.D. 203 (N.D. Cal. 2015) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

10   The advisory committee's notes to Rule 23(b)(2) state the rule is not appropriate for all cases and

11   "does not extend to cases in which the appropriate final relief relates exclusively or predominantly

12   to money damages." 39 F.R.D. 69, 102 (1966). Here, Plaintiff will be unable to satisfy Rule 23(b)(2)

13   because, as explained above, the primary relief sought is damages. Furthermore, each claim for

14   relief is individualized because Plaintiff alleges he and each class member are entitled to statutory

15   damages under the VPPA and Cal. Civ. Code §1799.3 "for each violation." Accordingly, based on

16   Plaintiff's own standard, each class member will need to provide proof of each visit to the Plex

17   Solution to prove alleged damages, which drastically varies per class member. Furthermore, each

18   class member had different personal information allegedly compromised, including their "unique,

19   page-specific, unencrypted Facebook ID." *See* Complaint, at ¶ 34. As such, each class member's

20   alleged damages are not capable of computation by means of an objective standard. In contrast, any

21   alleged damages are to be computed based on the subjective differences of each class member's

22   circumstances.

23       Pursuant to Rule 23(b)(3), a court may certify a class only if it first determines that the

24   questions of law or fact common to the members of the class predominate over any questions

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1    affecting only individual members, and that a class action is superior to other available methods for

2    the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). When

3    individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the

4    court determine whether individualized inquiries about such matters would predominate over

5    common questions. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651,

6    668 (9th Cir). Courts must therefore separate the issues subject to "generalized proof" from those

7    subject to "individualized proof" to determine whether plaintiffs have satisfied the predominance

8    requirement. *AdTrader, Inc. v. Google LLC,* No. 17-CV-07082-BLF, 2020 WL 1922579, at *15

9    (N.D. Cal. Mar. 24, 2020). Where an individualized causation issue would predominate over a case,

10    courts have denied class certification. *Poulos v. Caesars World, Inc*., 379 F.3d 654, 658 (9th Cir.

11    2004); *Tourgeman v. Collins Fin. Servs., Inc*., No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at

12    *16 (S.D. Cal. Oct. 21, 2011). The presence of class members who suffered no injury at all may

13    defeat predominance. *Ngethpharat v. State Farm Mut. Ins. Co*., 339 F.R.D. 154, 169 (W.D. Wash.

14    2021). Here, first Plaintiffs merely allege that "questions of law and fact common to the members

15    of the Classes…predominate over questions that may affect individual members of the Classes[.]"

16    *See* Complaint, at ¶ 73. Plaintiffs incorrectly merge the commonality requirement of Rule 23(a)(2)

17    with the predominance requirement of Rule 23(b)(3), however, this will not suffice as the

18    predominance requirement is "more stringent" and "far more demanding" than the commonality

19    requirement and is a separate analysis. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 609, 624

20    (1997). Second, as explained above, generalized proof could not resolve a significant aspect of the

21    case in a single adjudication; rather, individual proof is required. Because the circumstances of each

22    class member is unique, it would be practically impossible that the outcome as to the class would

23    be consistent with that of the cases if adjudicated individually. Given that each class member is in a

24    unique situation and will need to individually prove causation and damages, this will practically turn

25    this class action into mini individual trials which will defeat any claim of judicial economy.

26    **VIII.    THE   COURT SHOULD DISMISS THIS ACTION PURSUANT TO FEDERAL**
27    **RULES OF CIVIL PROCEDURE 12(b)(6) BECAUSE THE CLASS ACTION**
        **WAIVER IN THE MODIFIED CLICKWRAP AGREEMENT IS ENFORCEABLE**

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

At the time Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020, Plex's TOS included a class action waiver which bars his claims. It "is well-established that parties can agree to class action waivers." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011). In California, "class action waivers are not unconscionable and are enforceable." *Lewis v. UBS Fin. Servs. Inc.,* 818 F. Supp. 2d 1161, 1166 (N.D. Cal. 2011); *see also Sheppard v. Staffmark Inv., LLC,* No. 20-CV-05443-BLF, 2021 WL 690260, at *7 (N.D. Cal. Feb. 23, 2021) (""Class action waivers are enforceable under the FAA and California state law.") (*citing AT&T Mobility,* 563 U.S. 333, 343-351; *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 951 (9th Cir. 2012)); *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 238 (2013) (holding contractual waiver of class arbitration enforceable under the FAA even when plaintiff's cost of individually arbitrating a federal statutory claim exceeds potential recovery);  *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the legality of class action waivers in arbitration agreements). "[T]he enforceability of a procedural device, like a class action waiver, should be resolved… by way of a motion to dismiss." *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1345 (S.D. Fla. 2017); *see also McIntosh v. Royal Caribbean Cruises, Ltd*., No. 17-CV-23575, 2018 WL 1732177, at *3 (S.D. Fla. Apr. 10, 2018) (same); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1206 (11th Cir. 2011) (same); *Roman v. Spirit Airlines, Inc.,* 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020), *aff'd,* No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (same).

Here, by entering into the Modified Clickwrap Agreement, Plaintiff consented to the TOS and Class Action Waiver, which provides, in pertinent part.:

> 21. LIMITATION OF LIABILITY. . . .You and Plex agree to only bring claims arising from this TOS on an individual basis and not as a plaintiff or a class member in any purported class or representative action or proceeding. Unless you and Plex agree otherwise, more than one person's or party's claims may not be consolidated. You and Plex agree that relief (including monetary, injunctive, and declaratory relief) may be awarded only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that part's individual claim(s)

*See* Declaration of Ricardo Castro, at ¶ 20; Ex. A. Where "plaintiff waived [his] right to participate in a class in court or arbitration, the Court compels arbitration of plaintiff's claims on an individual

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

basis and dismisses plaintiff's class action claims." *Fontaine* v. *Resurgent Capital Services, Inc.* 540 F. Supp. 3d 353, 362 (W.D.N.Y. May 19, 2021) (*quoting Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539, at *9 (E.D.N.Y. Mar. 9, 2018)); *see also Ahlstrom v. DHI Mortg. Co. GP, Inc.,* No. 17-CV-04383-BLF, 2018 WL 6268876, at *4 (N.D. Cal. Nov. 30, 2018) ("Finally, the Court finds it appropriate to dismiss the case without prejudice. The MAA includes a valid class action waiver…As such, given that Ahlstrom's individual claims must be sent to arbitration, the Court dismisses the class action claims pending resolution of the arbitration."); *Hovis v. Homeaglow, Inc.,* No. 323CV00045BTMWVG, 2023 WL 5003583, at *5 (S.D. Cal. Aug. 4, 2023) ("Based on the language of the BAP, each claimant must bring their dispute individually against the Defendant. By accepting this agreement, the Plaintiffs consented to independently arbitrate their causes of action and thus cannot be class members. Accordingly, the Court agrees with Defendant that the Plaintiffs cannot be class members. Therefore, the Court dismisses the class action claims."); *Villamar v. Clean Harbors Env't Servs. Inc.,* No. 222CV03966MEMFJEMX, 2022 WL 4465549, at *3 (C.D. Cal. Sept. 23, 2022) ("Because the Agreement contains a clear and unambiguous class action waiver, Villamar's class claims must be dismissed"); *Rubio v. Marriott Resorts Hosp. Corp.,* No. 823CV00773FWSADS, 2023 WL 8153535, at *3 (C.D. Cal. Oct. 17, 2023) ("the court will enforce the class action waiver and dismiss Plaintiff's class claims"); *Dhaliwal v. Ace Hardware Corp.*, 2023 WL 255471, at *8-9 (E.D. Cal. Mar. 17, 2023) (compelling plaintiff's individual claims to arbitration and dismissing class claims). Here, based on the class action waiver within Section 21 of the TOS, Plaintiff cannot maintain a class and as such the court should dismiss the class action claims.

## IX. THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3) BECAUSE THE ARBITRATION PROVISION IN THE MODIFIED CLICKWRAP AGREEMENT IS ENFORCEABLE

### A. The Arbitration Agreement within the Clickwrap Agreement is Governed by the Federal Arbitration Act.

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

At the time Plaintiff initially entered into the Modified Clickwrap Agreement in or around April 2020, Plex's TOS included a mandatory arbitration provision. *See* Declaration of Ricardo Castro, at ¶ 21-22; Ex. A.  Accordingly, should this Court not dismiss this matter pursuant to any of the arguments above, it should still be dismissed in favor of individual arbitration. As discussed, *infra*, the valid class action waiver prevents Plaintiff from bringing claims on behalf of a class, therefore arbitration would only be as to his individual claim. As Plaintiff entered into a fully enforceable and binding Modified Clickwrap Agreement with Plex, Plaintiff agreed to Plex's TOS and Arbitration Agreement, which provides, in pertinent part:

> ARBITRATION. You agree that **all disputes** between you and Plex (whether or not such dispute involves a third party) with regard to your relationship with Plex, including, without limitation, disputes related to this TOS, your use of the Plex Solution, and/or rights of privacy and/or publicity, will be resolved by binding, individual arbitration. Without limiting Plex's right to seek injunctive or other equitable relief (as set forth below), **any disputes** arising with respect to this TOS between you and Plex ("parties") shall be referred to an arbitrator affiliated with the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). The arbitrator shall be selected by joint agreement of the parties. In the event the parties cannot agree on an arbitrator within thirty (30) days of the initiating party providing the other party with written notice that it plans to seek arbitration, the parties shall each select an arbitrator affiliated with JAMS, which arbitrators shall jointly select a third such arbitrator to resolve the dispute. Arbitration **shall be conducted under the rules then prevailing of JAMS/ENDISPUTE Streamlined Arbitration Rules and Procedures in effect at the time of filing of the demand for arbitration**. The parties specifically incorporate the terms of California Code of Civil Procedure Section 1283.05 with respect to discovery. The arbitrator's award shall be binding and may be entered as a judgment in any court of competent jurisdiction. The arbitration proceeding shall be carried on and heard in Santa Clara County, California using the English language. In any action or proceeding to enforce rights under this TOS, the prevailing party will be entitled to recover costs and reasonable attorneys' fees from the other party. You may bring claims only on your own behalf. Neither you nor Plex will participate in a class-wide arbitration for any claims covered by this TOS. This dispute resolution provision will be **governed by the Federal Arbitration Act**.

*See* Declaration of Ricardo Castro, at ¶ 22; Ex. A. As the Modified Clickwrap Agreement includes an Arbitration Agreement, the FAA applies, which provides that a written provision in any contract evidencing a transaction "involving commerce" to settle by arbitration a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable, and enforceable. 9 U.S.C. § 2.

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

As the U.S. Supreme Court has made clear, the "involving commerce" language within Section 2 of the FAA is broad, and does not mean "in commerce" but rather "affecting commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-274 (1995); *Citizens Bank v. Alafabco, Inc., 539 U.S. 52* (2003); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). The FAA applies to any transaction possibly directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos* 513 U.S. 265, 277; *Prima Paint Corp. v. Flood & Conklin Mfg*. Co., 388 U.S. 395, 401 (1967). "In Commerce" includes "the generation of goods and services for interstate markets and their transport and distribution to the consumer." *Allied-Bruce Terminix Cos* 513 U.S. 265, 273 (*quoting Gulf Oil Corp. v. Copp Paving Co*., 419 U.S. 186, 195 (1974)).

Pursuant to Section 4 of the FAA, " a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*.  "The U.S. Supreme Court has held that, through the FAA, 'Congress declared a national policy favoring arbitration.'" *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption – a 'national policy' – in favor of arbitration"). Pursuant to the FAA, "questions of arbitrability must be addressed with a healthy regard for the federal policy [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "The Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums.  By its terms, the Act leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 214 (1985). "Courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Ex.,* 133 S. Ct. 2304, 2309; *see also AT&T,* 563 U.S. 333, 344-46. "A court's obligation under the Federal Arbitration Act to liberally interpret and enforce arbitration agreements is not diminished when the underlying controversy involves a violation of a Federal statute." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Communications, LLC,* 722 F.3d 1151, 1157 (9th Cir. 2013).

Here, the FAA applies because the Modified Clickwrap Agreement involves a transaction that generates services for interstate markets and is distributed to the consumer, including the Plaintiff. Specifically, as explained, *supra*, Plex allows users to view or otherwise access the Plex Solution, which includes text, graphics, photos, sounds, and videos in the form of news reports, videos, and music over the Internet. *See* Declaration of Ricardo Castro, at ¶ 5. Given that the Modified Clickwrap Agreement is a contract evidencing a transaction "involving commerce" that contains a mandatory Arbitration Agreement for all claims that arise out of the Plex Solution, Plex has the legal right to petition this Court for an order directing that arbitration proceed in the manner provided for in the Arbitration Agreement.

**B.**    **The Arbitration Agreement is valid and encompasses Plaintiff's claims giving rise to this suit**

"'When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard' in Rule 56 of the Federal Rules of Civil Procedure." *Wang v. Life Ins. Co. of the Sw.,* No. 19-CV-01150-YGR, 2019 WL 13201949, at *3 (N.D. Cal. Dec. 19, 2019) *(citations omitted).* "The party seeking to compel arbitration bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Id.* (*quoting Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir.), *cert. denied*, 138 S. Ct. 203 (2017)). Preponderance of the evidence means "more likely than not." *Hernandez ex rel. Telles-Hernandez v. United States,* 665 F. Supp. 2d 1064, 1076 (N.D. Cal. 2009) (*quoting  Sandoval v.*

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1  *Bank of Am.,* 94 Cal.App.4th 1378, 1388, 115 Cal.Rptr.2d 128 (2002)). "If the movant meets this

2  prima facie showing, the burden shifts to the non-movant to show that: (i) it did not consent to

3  arbitration, (ii) the arbitration agreement is invalid or unenforceable, or (iii) the arbitration

4  agreement does not encompass the claims the movant wishes to arbitrate." *Hamilton v. Uber Techs.,*

5  *Inc.,* No. 22CV6917PGGOTW, 2023 WL 5769500, at *3 (S.D.N.Y. Sept. 7, 2023) (citations

6  omitted).

7       Here, as explained, *supra,* when Plaintiff first registered for a Plex account, he was provided

8  a hyperlink to Plex's TOS and therefore had every opportunity to review its contents, including the

9  including the Arbitration Agreement. *See* Declaration of Ricardo Castro, at ¶¶14-18; Ex. A, C.

10  Additionally, by creating a Plex account, Plaintiff acknowledged and agreed to the TOS. *Id.* "A

11  reasonable user would know that by clicking the registration button, he was agreeing to the terms

12  and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not." *Meyer,*

13  868 F.3d 66, 79; *see also In re Bittrex, Inc.,* No. 23-10598 (BLS), 2024 WL 2347311, at *13 (Bankr.

14  D. Del. May 22, 2024) (same); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir.

15  2014) (holding that assent can be provided by "using the website"). As such, there can be no doubt

16  that Plaintiff assented to Plex's TOS, including the mandatory Arbitration Agreement. Furthermore,

17  as explained, *supra,* this Court in *Miller* held that Plex's Modified Clickwrap Agreement and

18  Arbitration Agreement is binding and enforceable and therefore granted Plex's motion to compel

19  arbitration. *See Id.*, Case No. 5:22-cv-5015-SVK, ECF No. 32, pg. 22-23. In doing so, this Court in

20  *Miller* first held "unlike the arbitrability of claims in general, whether the court or the arbitrator

21  decides arbitrability is 'an issue for judicial determination unless the parties clearly and

22  unmistakably provide otherwise.'" *Id.*, at pg. 22 (*quoting Mohamed v. Uber Techs., Inc.*, 848 F.3d

23  1201, 1208 (9th Cir. 2016)) (citation omitted). This Court in *Miller* next held "Plex's TOS include

24  a delegation clause by virtue of its incorporation by reference of the JAMS Streamlined Arbitration

25  Rules" and "**the arbitration agreement clearly and unmistakably delegates questions of**

26  **arbitrability to the arbitrator through its incorporation of the JAMS Streamlined Arbitration**

27  **Rules & Procedures**." *Id. (citing Brennan,* 796 F.3d at 1130-32) (holding that incorporation of

28

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS; OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

AAA rules constituted clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *White v. Ring LLC*, No. 22-cv-6909, 2023 WL 1097554, at *6 (C.D. Cal. Jan. 25, 2023) (concluding that incorporation of JAMS Streamlined Arbitration Rules & Procedures constituted clear and unmistakable evidence parties agreed to arbitrate arbitrability, including enforceability of arbitration agreement).

As, explained, *supra*, Plaintiff's manifestation of assent to the TOS, including the Arbitration Agreement, is unambiguous as a matter of law, accordingly Plex has met its *prima facie* showing that a fully enforceable and binding Arbitration Agreement exists. Furthermore, there can be no doubt that Plaintiff's claims giving rise to this suit encompasses the Arbitration Agreement, because as explained, the Agreement specifically covers "all disputes" and "any disputes" relating to the use of the Plex Solution, including questions of arbitrability. Accordingly, this action must be sent to arbitration with JAMS.

### C. <u>Given that the Modified Clickwrap Agreement contains an Arbitration Agreement, this action should be dismissed.</u>

"The [Federal Arbitration Act's] policy favoring a stay over dismissal does not apply where a defendant primarily seeks dismissal and only requests a stay in the alternative." *Kuehne + Nagel Inc. v. Hughes, No. 21 CIV. 8470 (KPF)*, 2022 WL 2274353, at *8 (S.D.N.Y. June 23, 2022) (*quoting Dylan 140 LLC v. Figueroa*, No. 19 Civ. 2897 (LAK) (DF), 2019 WL 12339639, at *6 (S.D.N.Y. Nov. 8, 2019)). "When… a defendant requests that an action be dismissed and requests a stay in the alternative, the Court has discretion in determining whether to stay or dismiss the case pending arbitration." *McPherson v. Bloomingdale's, LLC*, No. 23CV1084JMAARL, 2023 WL 8527462, at *7 (E.D.N.Y. Dec. 8, 2023) (*quoting Rots v. Liberty Coca-Cola Beverages, LLC*, No. 20-CV-10559, 2021 WL 3723092, at *5 (S.D.N.Y. Aug. 23, 2021)); *see also Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806-LHK, 2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011) ("Where an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action."); *Thinkey Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (holding that the district court properly exercised its discretion in dismissing an action where all claims were subject to arbitration); *Castaldi v. Signature Retail*

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1  *Servs., Inc.,* No. 15-CV-00737-JSC, 2016 WL 7042991, at *1 (N.D. Cal. Jan. 20, 2016) ("Courts in

2  this District regularly dismiss actions after granting motions to compel arbitration where all of the

3  plaintiff's claims were subject to arbitration.") (listing cases); *Dittenhafer v. Citigroup,* No. C 10–

4  1779 PJH, 2010 WL 3063127, at *7 (N.D.Cal. Aug.2, 2010) (compelling arbitration and dismissing

5  case); *Underwriters Reinsurance Co. v. Ace American Ins. Co.,* No. CV0208177CASJTLX, 2003

6  WL 24011931, at *7–8 (C.D.Cal. Feb.10, 2003) (same); *Farrow v. Fujitsu Am., Inc.,* 37 F. Supp. 3d

7  1115, 1126 (N.D. Cal. 2014) (same); *Tompkins v. 23andMe, Inc.,* No. 5:13-CV-05682-LHK, 2014

8  WL 2903752, at *18 (N.D. Cal. June 25, 2014), *aff'd,* 840 F.3d 1016 (9th Cir. 2016) (same).

9      Here, as explained, *supra,* the Arbitration Agreement specifically covers "all disputes" and

10  "any disputes" relating to the use of the Plex Solution, including questions of arbitrability.

11  Accordingly, this Court should follow its precedent in *Hopkins, Thinkey,* and *Castaldi* and dismiss

12  this action.

13      **D.    Alternatively, if this action is not dismissed, it should be stayed in its entirety.**

14      As explained, *supra,* Plex has met its *prima facie* showing that a fully enforceable and

15  binding Arbitration Agreement exists, and this Court should dismiss the entire action in favor of

16  arbitration. However, if this Court is not inclined to do so, it should alternatively stay this action in

17  its entirety pending arbitration. Section 3 of the FAA provides that:

18      If any suit or proceeding be brought in any of the courts of the United States upon
19      any issue referable to arbitration under an agreement in writing for such arbitration,
        the court in which such suit is pending, upon being satisfied that the issue involved
20      in such suit or proceeding is referable to arbitration under such an agreement, **shall**
        on application of one of the parties stay the trial of the action until such arbitration
21      has been had in accordance with the terms of the agreement, providing the applicant
        for the stay is not in default in proceeding with such arbitration.

22  9 U.S.C. § 3. As discussed, *supra,* the Modified Clickwrap Agreement and Arbitration Agreement

23  is fully enforceable and binding, and Plaintiff's claims arise out of the Plex Solution As such, if this

24  Court does not dismiss this action, it must in the alternative stay this action in its entirety pursuant

25  to Section 3 of the FAA. *See Smith v. Spizzirri,* 601 U.S. 472 (2024).

26  / / /

27  / / /

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR
IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**X.    ALTERNATIVELY, IF THIS COURT DETERMINES THAT THE AMENDED TERMS OF SERVICE ARE CONTROLLING, THE COURT SHOULD TRANSFER THIS MATTER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3) BECAUSE THE FORUM SELECTION CLAUSE IS ENFORCEABLE**

As explained, *supra*, the TOS is controlling because consistent with *Stover* and *Nguyen,* Plex did not notify its existing users, including Plaintiff, of the April 11, 2024 update to its TOS (*see* Declaration of Ricardo Castro, ¶32) and Plaintiff defines both the Nationwide Class and California Subclass as those users who used the Plex Solution up and until March 2, 2024, which is prior to the amendment. Notwithstanding, if the Court determines the Amended TOS is controlling (which it should not), venue is still improper and this Court should transfer this action to the United Stated District Court for the District of Delaware.

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* 28 U.S.C. § 1404(a) "permits transfer…to any other district to which the parties have agreed by contract or stipulation" and "a forum-selection clause may be enforced by a motion to transfer under § 1404(a.)" *Wang,* 2019 WL 13201949, at *5 (*quoting Atlantic Marine Const. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013)). When "parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Cornet v. Twitter, Inc.,* No. 3:22-CV-06857-JD, 2023 WL 3029236, at *2 (N.D. Cal. Apr. 19, 2023) (*quoting Atlantic Marine Const. Co*., 571 U.S. 49, 62). "[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.' For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.*

Here, the Amended TOS contains a forum selection clause, which provides, in part:

Subject to the foregoing informal dispute resolution, **any action** arising from or in any way related to the Plex Solution, your use of or access to the Plex Solution, or this TOS **will be brought** in the courts presiding in the state of Delaware, and all parties to this TOS expressly agree to be subject to the jurisdiction of such courts.

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1    You and Plex waive trial by jury except where such waiver is prohibited by law.

2  *See* Declaration of Ricardo Castro, at ¶ 23; Ex. D. Here, the forum selection clause specifically

3  covers "any action" relating to the use of the Plex Solution, which covers Plaintiff's claims which

4  give rise to this action. Accordingly, if the Court determines the Amended TOS is controlling (which

5  it should not), pursuant to 28 U.S.C. § 1404(a), *Wang, Twitter, Atlantic Marine*, this Court should

6  transfer this action to the United Stated District Court for the District of Delaware.

7  **XI.    CONCLUSION**

8    WHEREFORE, Plex respectfully moves pursuant to Fed. R. Civ. Pro. 12(b)(2) and (6) for

9  an order dismissing this matter; or alternatively pursuant to Fed. R. Civ. Pro. 12(f) for an order

10  striking Plaintiff's class allegations; or alternatively pursuant Fed. R. Civ. Pro. 12(3) and 9 U.S.C. §

11  4 for an order compelling arbitration of all of the claims brought by Plaintiff against Plex in this

12  action on an individual basis; or alternatively pursuant to Fed. R. Civ. Pro. 12(3) and 28 U.S.C. §

13  1404(a) for an order transferring this action to the United Stated District Court for the District of

14  Delaware. Plex seeks such further relief as appears lawful, equitable, and just.

15  DATED:  July 29, 2024              WOOD, SMITH, HENNING & BERMAN LLP

16

17

18              By:    ___/s/ Jacob P. Wilson___

19                  JACOB P. WILSON
                    CHRISTOPHER J. SEUSING
20                  (*Pro Hac Vice Admission Pending*)
                    Attorneys for Defendants, PLEX, INC., AND
21                  PLEX GMBH

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE

# EXHIBIT E

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECKA MILLER, | Case No. 22-cv-05015-SVK |
| Plaintiff, | |
| v. | **ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| PLEX, INC., et al., | Re: Dkt. Nos. 12, 15, 18, 19, 22, 26, 27, 28 |
| Defendants. | |

Defendants Plex, Inc. and Plex, GmbH (together, "Defendants" or "Plex") bring the instant motion to compel arbitration of Plaintiff Rebecka Miller's ("Plaintiff") complaint for violation of the California Consumer Privacy Act, California's Unfair Competition Law, negligence, and declaratory relief. Dkts. 1, 12. Plex seeks an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, compelling Plaintiff to arbitrate her claims against Plex, and staying this action pending the completion of arbitration proceedings. The Parties have consented to the jurisdiction of a magistrate judge. Dkts. 9, 13.

Having carefully considered the papers submitted, the pleadings in this action, the admissible evidence,[1] and the arguments of counsel, and for the reasons set forth below, the Court **GRANTS** Defendants' motion to compel arbitration.

## I. BACKGROUND

### A. Factual Background

Plaintiff is an individual and a resident of California. Dkt. 1 ("Compl.") ¶ 19. Defendant Plex, Inc. is a Delaware corporation with its principal place of business in California, and Defendant Plex GmbH is a Swiss corporation that maintains an office in California. *Id.* ¶¶ 23-24. Plex is an online entertainment platform that combines streaming services from media publishing

---

[1] Plex's evidentiary objections are addressed herein in Section III(A).

1   partners and a user's personal media library, which a user can view through Plex's website or on

2   other devices via Plex's application.  Compl. ¶ 1; Dkt. 12-1 ("Castro Decl. I") ¶ 5.

3          To access Plex's services, a user first must create an account with Plex.  Compl. ¶ 2;

4   Castro Decl. I ¶ 6.  To create an account, both desktop and mobile users must provide an email

5   address, create a password, and agree to Plex's Terms of Service ("TOS").[2]  Castro Decl. I ¶ 8;

6   Dkt. 26, Ex. 1 to Liu Decl. ("Castro Decl. III") ¶ 5.  A screenshot of the webpage that users

7   encounter when seeking to create a Plex account is set forth below:

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   ───────────────────
[2] Plaintiff refers to this process as the creation of a "user profile" in her Complaint and
26   declarations.  Dkt. 1 ¶¶ 2, 19; Dkt. 17 (Miller Decl.) ¶ 2; Dkt. 27-1 (Miller Supp. Decl.) ¶ 3.  Plex,
     by contrast, refers to this process as the creation of an "account."  *See, e.g.*, Dkt. 12-1 (Castro
27   Decl. I) ¶¶ 6, 8; Dkt. 18-1 (Castro Decl. II) ¶¶ 9-10; Dkt. 26, Ex. 1 to Liu Decl. ("Castro Decl.
     III") ¶ 5; Dkt. 26, Ex. 2 to Liu Decl. ("Castro Decl. IV") ¶ 4; Dkt. 30 ("Castro Decl. V") ¶ 3.  The
28   Parties refer to the same process, but for sake of simplicity, the Court shall use the term "account"
     rather than "profile."



Castro Decl. I, Ex. 2; Castro Decl. III ¶ 8 (hereinafter, the "Sign Up Page").

The main "Create Your Account" graphic displayed on the webpage was created in 2017 and last updated in 2019. Castro Decl. III ¶ 9. The image has been continuously in use since April 2020 and has not changed in any material respect since that time with the exception that the "Continue with Google" button was changed from red to white in 2023. *Id.* The textual notice beneath the yellow-colored "Create an account" button has not changed since April 2020, has always been entirely visible on the Sign Up Page, and provides as follows:

3

United States District Court
Northern District of California

> By creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the **Terms of Service** and have reviewed the **Privacy Policy**.

Castro Decl. I ¶ 8; Castro Decl. III ¶ 11.  The bolded phrase "Terms of Service" is a hyperlink that, if clicked on, will take the user directly to Plex's Terms of Service.  Castro Decl. I ¶ 9; Castro Decl. III ¶ 6.  Plex's TOS includes an arbitration provision, which provides:

> 23. ARBITRATION. You agree that all disputes between you and Plex (whether or not such dispute involves a third party) with regard to your relationship with Plex, including, without limitation, disputes related to this TOS, your use of the Plex Solution, and/or rights of privacy and/or publicity, will be resolved by binding, individual arbitration. Without limiting Plex's right to seek injunctive or other equitable relief (as set forth below), any disputes arising with respect to this TOS between you and Plex ("parties") shall be referred to an arbitrator affiliated with the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). The arbitrator shall be selected by joint agreement of the parties. In the event the parties cannot agree on an arbitrator within thirty (30) days of the initiating party providing the other party with written notice that it plans to seek arbitration, the parties shall each select an arbitrator affiliated with JAMS, which arbitrators shall jointly select a third such arbitrator to resolve the dispute. Arbitration shall be conducted under the rules then prevailing of JAMS/ENDISPUTE Streamlined Arbitration Rules and Procedures in effect at the time of filing of the demand for arbitration. The parties specifically incorporate the terms of California Code of Civil Procedure Section 1283.05 with respect to discovery. The arbitrator's award shall be binding and may be entered as a judgment in any court of competent jurisdiction. The arbitration proceeding shall be carried on and heard in Santa Clara County, California using the English language. In any action or proceeding to enforce rights under this TOS, the prevailing party will be entitled to recover costs and reasonable attorneys' fees from the other party. You may bring claims only on your own behalf. Neither you nor Plex will participate in a class-wide arbitration for any claims covered by this TOS. This dispute resolution provision will be governed by the Federal Arbitration Act.

Castro Decl. I ¶ 12, Ex. 1 ¶ 23.  Another provision contains a class action waiver:

> 21. LIMITATION OF LIABILITY. . . .You and Plex agree to only bring claims arising from this TOS on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding. Unless you and Plex agree otherwise, more than one person's or party's claims may not be consolidated. You and Plex agree that relief (including monetary, injunctive, and declaratory relief) may be awarded only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that part's individual claim(s)

*Id.* ¶ 11, Ex. 1 ¶ 21.  These provisions are the same provisions in effect when Plaintiff created her

4

1     account in 2021, as Plex's TOS were last revised as of January 1, 2020.  Castro Decl. I ¶¶ 6, 14.

2             An individual may create new credentials with Plex or use his Google, Facebook, or Apple

3     credentials to create a Plex account.  Castro Decl. I, Ex. 1.; Castro Decl. III ¶ 8. A screenshot of

4     the screen that users encounter if they elect to "Continue with Google" is set forth below:



18    Dkt. 18-1 ("Castro Decl. II") ¶ 8 (the "Google Sign In Page").  Plex's records indicate that

19    Plaintiff created an account on Plex's website on April 27, 2021.  *Id.* ¶ 13.  Plaintiff adds that she

20    created her account using an Android phone and, "to the best of [her] recollection," used her

21    Google credentials to create her Plex account.  Compl. ¶ 19; Dkt. 17 ("Miller Decl.") ¶¶ 3-4; Dkt.

22    27-1 ("Supp. Miller Decl.") ¶ 3.  The Sign Up Page is the Plex-hosted webpage Plaintiff would

23    have seen when she made her account in 2021.  Castro Decl. III ¶¶ 8-9; Dkt. 26 ("Liu Decl.") Ex.

24    3 ("Castro Depo Transcript") 45:24-46:10.

25            On August 23, 2022, Plex notified its users that a data breach had occurred, which resulted

26    in the potential disclosure of email addresses, usernames, and passwords.  Compl. ¶¶ 3-4.  Plaintiff

27    filed this putative class action on September 1, 2022.  Dkt. 1.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.   Procedural History

Plex moved to compel arbitration on October 25, 2022, which Plaintiff opposed.  Dkts. 12, 15, 18.  Plex objected to the evidence Plaintiff supplied in support of her opposition.  Dkt. 19.  On December 13, 2022, the Parties appeared for a hearing on Plex's motion to compel.  Dkt. 21.  At the hearing, Plaintiff raised for the first time that the supplemental declaration of Ricardo Castro, which Plex filed in support of its reply, failed to attest to the appearance of Plex's user interface *at the time* Plaintiff created her account in 2021.  Accordingly, the Court ordered limited discovery into the appearance of the user interface as it existed when Plaintiff registered for Plex's services.  Dkt. 22.  The Court further authorized supplemental briefing in the event the Parties were unable to resolve the dispute after the completion of this discovery.  *Id.*  Following discovery, Plex and Plaintiff filed supplemental briefs.  Dkts. 26, 27.  After reviewing this briefing, the Court ordered Plex to file a reply that responded to an evidentiary issue Plaintiff raised for the first time in supplemental briefing—namely, that Plex had submitted screenshot evidence from a desktop computer rather than from a mobile device.  Dkt. 27 at 1; Dkt. 28.  Plex has filed its reply, and the motion to compel is now ripe for resolution.  Dkt. 29.

## II.   LEGAL STANDARD

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce and governs the petition to compel arbitration here.  9 U.S.C. §§ 1, *et seq.*  "The FAA limits the district court's role to determining whether a valid arbitration exists, and whether the agreement encompasses the disputes at issue."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  Where all claims in the case are subject to a valid arbitration agreement, the Court may dismiss or stay the case.  *Regan v. Pinger, Inc.*, No. 20-cv-2221, 2021 WL 706465, at *3 (N.D. Cal. Feb. 23, 2021).

Interpretation of an arbitration agreement generally turns on state law.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).  However, the U.S. Supreme Court has instructed that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any

arbitration agreement within the coverage of the Act.'"  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  "Whether a dispute is arbitrable under federal law turns on two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of the agreement to arbitrate encompasses the claims at issue." *Regan*, 2021 WL 706465, at *4 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).   Challenges to the validity of a contract containing an arbitration clause may be decided by an arbitrator, but "challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017).  Accordingly, "[i]n determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen*, 763 F.3d at 1175 (citation omitted).  While a court determining whether parties have agreed to arbitrate a dispute applies "general state-law principles of contract interpretation," the court must still give "due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).  Consequently, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicaragua v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

## III.    DISCUSSION

In opposing Plex's motion to compel arbitration, Plaintiff chiefly argues that she never entered into an agreement with Plex and that, even if she did, the arbitration provision and class action waiver are unconscionable and invalid.  Dkt. 15.  Plaintiff has submitted declarations denying that she was required to view Plex's notice of the TOS when she created her account and denying that she saw any such notice.  Dkt. 17 (Miller Decl.) ¶ 4; Dkt. 27-1 (Supp. Miller Decl.) ¶¶ 5, 8-10.  Plaintiff also has submitted the declarations of her counsel, Kiley Grombacher, and various attached exhibits.  Dkts. 15-1 ("Grombacher Decl."), 27-2 ("Supp. Grombacher Decl.").  Plex objects to the bulk of Ms. Grombacher's exhibits.

7

The Court first takes up Plex's evidentiary objections and then evaluates Plex's motion to compel arbitration.

### A. Plex's Evidentiary Objections

#### 1. Screenshots

Plaintiff's first declaration contains two screenshots embedded in one of the paragraphs, which Plaintiff asserts were "pulled from Plex's current websites[.]" Dkt. 17 ¶ 4. Plaintiff relies heavily on these screenshots to prove that Plex's notice regarding its terms of service is not "reasonably conspicuous," as required under Ninth Circuit precedent. Dkt. 15 at 9. Specifically, Plaintiff points out that her screenshots do not show the key notice language advising users that by continuing to create a Plex account, they are agreeing to Plex's TOS. *See id.* at 3-4, 9-10. Users must scroll down to see that language. *See id.* Nor, she claims, does the Google sign-in page notify users that continuing to create a Plex account indicates their assent to Plex's TOS. *See id.* at 4, 10. In her declaration, Plaintiff does not provide any information as to who took the screenshots, when they were taken, and on what device. Plex objects that these screenshots have not been authenticated and constitute hearsay. Dkt. 19. The Court agrees.

In considering whether an arbitration agreement was formed, "[t]he summary judgment standard is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)). Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. Proc. 56(c)(2).

Under Federal Rule of Evidence 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. Rule 901 offers a non-exhaustive list of methods of authenticating evidence, including "Testimony of a Witness

with Knowledge." Fed. R. Evid. 901(b).[3] "A screenshot of online content may be authenticated by testimony of the person who took the screenshot, so long as the screenshot also contains circumstantial indicia of authenticity." *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-0561, 2020 WL 1531349 (N.D. Cal. Mar. 31, 2020) (citing *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 717 (N.D. Fla. 2019)). Alternatively, "[e]xhibits depicting online content may be authenticated by a person's testimony that he is familiar with the online content and that the exhibits are in the same format as the online content." *Id.* (quoting *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017)).

Plaintiff fails to offer any testimony from the person who took the screenshots that appear in her declaration or any other evidence to authenticate the screenshots. *See* Dkt. 17 (Miller Decl.) ¶ 4. The screenshots also lack circumstantial indicia of authenticity, as they appear to have been taken on different devices. *See id.* For example, in Plaintiff's declaration, the screenshot of Plex's "Sign Up Page" has a dark grey tab bar with blue icons and a light grey search bar; the "Google Sign In Pop Up" screenshot has a light grey tab bar with white icons and a black search bar. *See id.* Under similar circumstances, district courts within the Ninth Circuit have found screenshots of internet content to be inadmissible in the context of a motion to compel arbitration. For instance, in *La Force v. GoSmith, Inc.*, the district court found that screenshots had not been sufficiently authenticated where counsel's declaration included the date, device, and browser used to obtain the webpage and application screenshots but failed to verify that he personally took those screenshots. *See La Force v. GoSmith, Inc.*, No. 17-cv-5101, 2017 WL 9938681, at *3 (N.D. Cal. Dec. 12, 2017); *see also Iglesia Ni Cristo*, 2020 WL 1531349, at *4 (sustaining objections to screenshots for lack of authentication in ruling on motion for summary judgment). Accordingly, based on Rule 901 and the cases applying it, Plex's objection to the screenshots submitted in Plaintiff's declaration [Dkt. 17] is SUSTAINED. The screenshots have not been authenticated and will not be considered in ruling on the motion to compel arbitration.

---

[3] Courts within the Ninth Circuit disagree as to whether screenshots may be considered self-authenticating. *Compare La Force v. GoSmith, Inc.*, No. 17-cv-5101, 2017 WL 9938681, at *3 (N.D. Cal. Dec. 12, 2017) *with Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-0561, 2020 WL 1531349, at *4 n.3 (N.D. Cal. Mar. 31, 2020). The Court need not resolve this dispute, as Plaintiff has not offered the "certification of a qualified person" and therefore cannot meet the requirements of Federal Rule of Evidence 902(13).

9

### 2. Plaintiff's Declarations

Both Plaintiff's declaration and supplemental declaration contain multiple qualified assertions based on the "best of [her] knowledge" and the "best of [her] recollection." Dkts. 17 (Miller Decl.), 27-1 (Supp. Miller Decl.). For example, she asserts, "[t]o the best of my recollection, I was not required to view the website's Terms prior to signing up for service or at any other time." Supp Miller Decl. ¶ 8. She also asserts that, "I do not recall ever seeing or reviewing the Terms of Service." *Id.* ¶ 5. Plex urges the Court to disregard such conclusory statements. Dkts. 18-19, 31.

It is unclear to what extent Plaintiff's statements based on the "best of" her knowledge or recollection are intended to contradict Plex's positive assertions that she would have been required to agree to the TOS before creating an account. Courts in this district have found cause to disregard similarly qualified statements. *See, e.g.*, *Vista v. USPlabs, LLC*, No. 14-cv-0378, 2014 WL 5507648, at *3 (N.D. Cal. Oct. 30, 2014) (finding conclusory statements in declaration based on "the best of" the witness' knowledge insufficient to controvert plaintiff's factual allegations); *Bates v. Arata*, No. 05-cv-3383, 2008 WL 820578, at *27-28 (N.D. Cal. Mar. 26, 2008) (finding plaintiff's conclusory statement based on "best of my knowledge" that SFSD discriminated against her failed to specifically rebut defendant's evidence that SFSD's conduct was not racially motivated and granting summary judgment on Unruh Act claim). Likewise, a "bare assertion" that consumers do not recall agreeing to terms of service when creating accounts does not overcome evidence that a consumer had to agree to terms of service when creating an account. *See, e.g.*, *Houtchens v. Google LLC*, No. 22-cv-2638, 2023 WL 122393, at *4 (N.D. Cal. Jan. 6, 2023) (finding plaintiffs' "bare assertion that they do not recall" checking box agreeing to Fitbit's terms of service when creating their accounts insufficient to "overcome Google's evidence"); *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 WL 6606563, at *2 (S.D. Cal. Nov. 5, 2014) (concluding plaintiff assented to sign-in wrap terms of service even though plaintiff averred that she did "not recall seeing or agreeing to any terms and conditions on the BeachBody website"). This Court likewise does not find such vague statements sufficient to contradict Plex's evidence and SUSTAINS Plex's objections.

United States District Court
Northern District of California

### 3. Ms. Grombacher's Declarations

Kiley Grombacher, Plaintiff's counsel, offers declarations in support of both Plaintiff's opposition to compel arbitration and Plaintiff's supplemental brief. Dkts. 15-1 ("Grombacher Decl. I"), 27-2 (Supp. Grombacher Decl.). Plex objects to portions of both declarations. Dkts. 19, 31. The Court takes these objections in order.

In her first declaration, Ms. Grombacher states, "[a]attached as Exhibit B, [sic] are the results of the Readability Statistics run through the Microsoft Word program." Grombacher Decl. I ¶ 6. Plex asserts relevance, hearsay and authentication objections to this statement and to the attached exhibit. Dkt. 19. These objections are well taken. Ms. Grombacher's declaration fails to authenticate the exhibit, which appears to be a computer screenshot, in accordance with Federal Rule of Evidence 901, and the evidence is not self-authenticating under Federal Rule of Evidence 902. *See La Force*, 2017 WL 9938681, at *3; *see also Iglesia Ni Cristo*, 2020 WL 1531349, at *4. Further, as discussed below, the Court concludes that Plaintiff's unconscionability and validity challenges must be decided by the arbitrator. Plex's evidentiary objections are, accordingly, SUSTAINED.

In her second declaration, Ms. Grombacher attaches screenshots of Plex's sign up page as it appeared on her iPhone's browser and as it appeared on her secretary's browser. Supp. Grombacher Decl. ¶¶ 6, 9, Exs. 2-3. She also purports to quote the specifications of her phone and her secretary's iPhones based on information from Apple's website. *Id.* ¶¶ 7, 11. Plex asserts a variety of objections to these statements and exhibits, which the Court likewise finds appropriate. Dkt. 31. For reasons discussed below, Plex's objection as to relevance is SUSTAINED.

### 4. Request for Judicial Notice

Plaintiff asks the Court to take judicial notice of a docket entry in the case *Kim v. Tinder, Inc.*, No. 18-cv-3093, which appears to be a screenshot from a case in the United States District Court for the Central District of California. Grombacher Decl. ¶ 7, Ex. C; *see also* Dkt. 15 at 10. Plex does not oppose Plaintiff's request. *See* Dkts. 18-19.

A court may take judicial notice of documents outside of the complaint that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b)(2). Court records and matters of public record are proper subjects of judicial notice. *See Roca v. Wells Fargo Bank*, No. 15-cv-02147, 2015 WL 2598749, at *4 (N.D. Cal. Sep. 29, 2015); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because the document is a court record, and therefore a proper subject of judicial notice, the Court GRANTS Plaintiff's request for judicial notice.

## B. Plex's Motion to Compel Arbitration

Plex contends that the arbitration provision in its TOS requires the Court to compel arbitration. Plaintiff disputes this contention, arguing that she never entered into an agreement to arbitrate and that the arbitration and class action waiver provisions are unenforceable and invalid. The Court addresses each argument in turn.

### 1. Formation of the Agreement

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The moving party bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate exists. *Norcia v. Samsung Tel. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

Under California law, a valid contract requires the mutual consent of the parties. *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 789 (2019). "'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved.'" *Id.* (citations omitted).

"These elemental principles of contract formation apply with equal force to contracts formed online." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2022). Accordingly, where a website offers contractual terms to website users, and a user engages in conduct manifesting acceptance of those terms, a binding agreement can be formed. *Id.* at 856. The Ninth Circuit has explained that internet agreements generally can be classified as

United States District Court
Northern District of California

"clickwrap" or "browsewrap" agreements.  *Id.*  In a clickwrap agreement, "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed."  *Id.*  Courts have routinely found such agreements to be enforceable.  *Id.*  Browsewrap agreements, by contrast, do not require the user to manifest express consent to specific terms.  *Id.*  Rather, "a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website."  *Id.*  Courts generally have been more reluctant to enforce such agreements "because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms."  *Id.* (quoting *Nguyen*, 763 F.3d at 1178).

However, existing between the poles of "clickwrap" and "browsewrap" is a third form of agreement—the "sign-in wrap."   Sign-in wrap, or "signwrap," agreements "are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service.  While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up."  *Id.* at 865-66 (Baker, J., concurring) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464 (2021)); *see also Snow v. Eventbrite, Inc.*, No. 20-cv-3698, 2020 WL 6135990, at *4 (N.D. Cal. Oct. 19, 2020) ("A third type of internet contract, the 'sign-in wrap' agreement, has also developed and is sometimes regarded as a 'blend' or 'hybrid' of the two.").  "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Berman*, 30 F.4th at 856.

Here, Plaintiff posits that Plex uses a browsewrap agreement, Dkt. 15 at 8, while Plex maintains that it uses a sign-in wrap agreement, Dkt. 18 at 5.  Whereas Plaintiff offers nothing beyond the bare assertion that "the Plex website utilizes a browsewrap agreement," Dkt. 15 at 8, Plex has submitted evidence that, "in order to complete the registration process, a user agrees and

acknowledges that to 'Create an Account', the user must agree to Plex's TOS as set forth on Plex's 'Sign Up' page." Castro Decl. I ¶ 8. The 'Sign Up' page provides, "By creating an account or continuing to use a Plex application, website or software, you acknowledge and agree that you have accepted the **Terms of Service** and have reviewed the **Privacy Policy**." *Id.* (emphasis in original). Plex further avers that "[n]o user can complete the 'Sign Up' process without confirming that the user agrees and accepts the TOS." *Id.* at ¶ 10. Because the user is purportedly bound by Plex's TOS by clicking to "Create an Account" or "Continue with Google," and cannot create an account without affirmatively acknowledging the agreement, the Court concludes that Plex's agreement is most accurately characterized as a sign-in wrap agreement. *See, e.g.*, *Lee v. Ticketmaster*, 817 Fed. App'x 393, 394-95 (9th Cir. 2020) (concluding Ticketmaster's terms of use was neither a browsewrap nor a clickwrap agreement but finding sufficient notice for constructive assent nevertheless and affirming decision granting motion to compel arbitration); *Britt v. ContextLogic, Inc.*, No. 20-cv-4333, 2021 WL 1338553, at *5-6 (N.D. Cal. Apr. 9, 2021) (granting motion to compel arbitration where defendants produced evidence of valid sign-in wrap agreement).

Having determined the type of agreement at issue, the Court next turns to considering whether Plaintiff was on inquiry notice under *Berman*. Plaintiff argues, however, that the Court cannot perform a *Berman* analysis because Defendant has not produced sufficient evidence. First, at the hearing, Plaintiff argued that Plex had failed to present any evidence of the appearance of the Sign Up Page when Plaintiff created her account in 2021. *See* Dkts. 21-22. Following limited discovery, Plex has produced unrefuted evidence that the Sign Up Page, as reflected in Castro Decl. III ¶ 8 and Exhibit 2 to Castro Decl. I, is the webpage Plaintiff encountered when she made her account in 2021. Castro Decl. I, Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition Transcript 45:24-46:10.

Abandoning this objection, Plaintiff now objects that Plex has failed to offer evidence as to the appearance of Plex's sign up page for mobile users. Dkt. 27 at 1. In support of this argument, Plaintiff notes that in his deposition, Mr. Castro testified that the screenshots in his supporting declarations were "likely" taken on a desktop computer and not a mobile device. Dkt. 27-3 (Ex. 1

14

United States District Court
Northern District of California

1    to Grombacher Decl.) at 44:24-45:10; 46; 11-24; 47:7-15.  She further points out that Mr. Castro

2    testified that "presentation" on a mobile device as compared to a desktop "is different because of

3    the screen size."  Dkt. 27 at 1 (quoting Dkt. 27-3 at 37:13-20.).  The mobile device appearance

4    also differs because the mobile website lacks "breakpoints that trigger adjustments to fit the

5    images and content to the user's screen size/resolution."  *Id.* (quoting Dkt. 27-3 at 54:15-20).

6    Based on these statements, Plaintiff argues that Plex cannot prove that the notice language would

7    have been visible to a mobile website user.  *Id.* at 2.

8        Plex responds by pointing out that, as set forth above, it has presented evidence that the

9    "Create Your Account" image has been in use and substantially unchanged on the Sign Up Page

10   since April 2020.  Castro Decl. III ¶ 9.  Plex also provides a supplemental declaration from Mr.

11   Castro, in which he avers that "[s]ince January 1, 2021 to the present, Plex's entire Sign Up Page

12   is completely viewable on a Google Android mobile phone, subject to a user's settings on the

13   phone that may adjust the size of the text of content on the phone."  Dkt. 30 ("Castro Decl. V") ¶

14   7.  Finally, Plex points out that at his deposition, Mr. Castro testified that he has viewed Plex's

15   Sign Up Page from a mobile device:

16

17       Q.      Have you ever viewed the sign-up page from a mobile device – the Plex
         sign-up page from a mobile device?
18       A.      Yes.
         Q.      What type of mobile device did you view it on?
19       A.      I mean, over the course of my job, I go to that website every once in a while
         when I'm testing something or logging in or signing up, and in the five and a half
20       years I've been here, I've had an iPhone, a different iPhone every year. So it's been
         a few different devices, and I have an Android test device as well.

21   Dkt. 29 (quoting Ex. 1 to Liu Decl. at 47:16-48:2).  Plaintiff did not inquire further

22   regarding Mr. Castro's Android test device and whether Plex's Sign Up Page was completely

23   visible on that device.  *Id.* at 3.  Nor has Plaintiff objected to the authenticity of any of Plex's

24   screenshot evidence.  Plex further notes that Plaintiff's counsel stated in an email dated February

25   22, 2023, that "Plaintiff does not have reason to dispute the contention that the image captured

26   was used throughout the relevant time period."  Dkt. 26 (Ex. 7 to Liu Decl.).

27       While courts have considered the devices on which a Plaintiff registered for a service in

28   determining whether to compel arbitration, most courts have done so where evidence demonstrates

                                                   15

1  that the appearance of the desktop website, mobile website, or smartphone application varied. For

2  example, in *Snow v. Eventbrite, Inc.*, defendant's motion to compel arbitration was denied where

3  there were three different methods of interacting with Eventbrite's platform (desktop website,

4  mobile website, and smartphone application) and each method had "its own stand-alone sign-up

5  page and purchasing process" with "six distinct TOS agreements a user can assent to at any given

6  time." *Snow*, 2020 WL 6135990, at *1. The court determined that Eventbrite had failed to

7  produce evidence of the "versions of the sign-in wrap agreements the plaintiffs would have seen

8  during the relevant time period." *Id.* at *5. In *Weber v. Amazon.com, Inc.*, the court likewise

9  considered the desktop website flows and mobile website and application flows separately because

10 the appearance of the screens differed significantly. *See Weber v. Amazon.com, Inc.*, No. 17-cv-

11 8868, 2018 WL 6016975, at *9-11 (C.D. Cal. June 4, 2018) (citing Dkts. 39-16–39-18).

12      Such is not the case here. The Court deferred ruling on the motion to compel arbitration to

13 allow both sides to conduct discovery as to how the Sign Up Page appeared to Plaintiff when she

14 created her account in 2021. *See* Dkt. 22. For the reasons stated herein, Plaintiff's "evidence" is

15 unavailing. On the other hand, Plex has presented evidence that the "Create Your Account"

16 image, which is used on the Sign Up Page for both the mobile and desktop websites, was created

17 in 2017 and has been continuously in use. Castro Decl. III ¶¶ 5, 10. The image has not materially

18 changed since April 2020 with the exception that the "Continue with Google" button is now white

19 instead of red. *Id.* at ¶ 9. Plex also has presented evidence that the "Create Your Account" image

20 on the Sign Up Page is what Plaintiff would have encountered on her Android phone when she

21 created an account in April 2021, which Plaintiff's counsel appears to have conceded. Castro

22 Decl. I, Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition Transcript 45:24-46:10; Dkt. 26 (Ex. 7

23 to Liu Decl.).

24      Accordingly, the Court proceeds with an analysis under *Berman*. Where, as here, there is

25 no evidence of Plaintiff's actual notice of the agreement to arbitrate, the Court first considers

26 whether "the website provides reasonably conspicuous notice of the terms to which the consumer

27 will be bound." *Berman*, 30 F.4th at 856; *see also Nguyen*, 763 F.3d at 1177 ("[T]he validity of

28 the [online] agreement turns on whether the website puts a reasonably prudent user on inquiry

16

United States District Court
Northern District of California

1    notice of the terms of the contract. Whether a user has inquiry notice of the a[n] [online]

2    agreement, in turn, depends on the design and content of the website and the agreement's

3    webpage.").  The Court concludes that it does.  Plex's Sign Up Page, unlike the webpage at issue

4    in *Berman*, is uncluttered and does not include distracting graphics.  *See* Castro Decl. III ¶ 8.  The

5    critical notice language is wholly visible and appears in close proximity to the yellow-colored

6    "Create an Account" button in dark gray font of the same size as the rest of the webpage's text

7    other than the statement "Create your free account" that appears at the top of the webpage in a

8    larger font.  *See id.*  Further, the three buttons for Google, Facebook and Apple plainly provided

9    options for how a user could sign up for Plex's services because each began with "Continue with"

10   and then provided a method for doing so.  *See id.*  Directly beneath these options is the word "or"

11   and fields for a user to enter an email address and password along with an orange "Create an

12   account" button.  *See id.*  Under the yellow-colored "Create an account" button, users are clearly

13   informed that "By creating an account or continuing to use a Plex application, website, or

14   software, you acknowledge and agree that you have accepted the Terms of Service and have

15   reviewed the Privacy Policy."  *See id.*  A user clicking on the hyperlink "Terms of Service" is

16   directed to a copy of the TOS.  Castro Decl. I ¶ 9; Castro Decl. III ¶ 6.

17           Under similar circumstances, the Ninth Circuit and other courts in this district have upheld

18   webpages as providing sufficient notice of the terms of use to form an agreement when the user

19   signed in and used the service.  *See, e.g.*, *Lee*, 817 Fed. App'x at 394-95; *Dohrmann v. Intuit, Inc.*,

20   823 Fed. App'x 482, 484-85 (9th Cir. 2020) (holding consumers received adequate notice of terms

21   and agreed to be bound by arbitration provision contained in terms where warning and hyperlink

22   to terms of use were conspicuous and sign-in page was "relatively uncluttered"); *Regan*, 2021 WL

23   706465, at *6-7 (granting motion to compel arbitration where application's terms of service were

24   sign-in wrap agreement and concluding plaintiff assented to terms of service by creating an

25   account); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (granting motion to

26   compel arbitration of sign-in wrap agreement where sign-up screens were "uncluttered and wholly

27   visible" and the notice text appeared close to the sign-up button); *Britt*, 2021 WL 1338553, at *5

28   (granting motion to compel arbitration of sign-in wrap agreement).  A reasonable person would

know that, by signing up, she would be agreeing to Plex's terms even if she used her Google account to sign up.

Plaintiff offers two main arguments as to why Plex's Sign Up Page fails to provide reasonably conspicuous notice of the TOS. First, Plaintiff argues that the notice language "frequently is not within the viewport of mobile devices or is otherwise obscured (i.e. by pop-up keyboards) and thus is not reasonably conspicuous." Dkt. 27 at 2. In support of this argument, Plaintiff offers the declaration of her counsel, Kiley Grombacher, who submits screenshots purporting to show Plex's sign up page as it appeared on Ms. Grombacher's iPhone's browser and as it appeared on Ms. Grombacher's secretary's iPhone's browser. Supp. Grombacher Decl. ¶¶ 6, 9, Exs. 2-3. In these images, Plex's notice language is obscured by a Safari search engine bar. *See id.* Ms. Grombacher also sets forth the specifications for those iPhone devices, which apparently were copied from Apple's website. *Id.* ¶¶ 7, 11. Plaintiff's evidence fails the test for relevance under Federal Rule of Evidence 401, and the Court declines to consider it. If the user's search engine bar covers Plex's notice, that could present a problem regarding constructive notice. However, as Plex notes, Plaintiff does not assert that the search engine bar of her Android device obscured Plex's notice language. *See* Dkts. 17 (Miller Decl.), 27-1 (Supp. Miller Decl.). Further, Plaintiff created her account with Plex in 2021 using an Android. Miller Decl. ¶ 2; Supp. Miller Decl. ¶ 3. Present-day screenshots from Ms. Grombacher's and her secretary's iPhones, therefore, are irrelevant to the issue of whether the screen Ms. Miller saw when creating her account in 2021 satisfies the *Berman* test.

Plaintiff also points to the testimony of Mr. Castro in support of her claim that Plex's notice language is not visible on mobile device users' screens absent scrolling. Dkt. 27 at 4-5. During Mr. Castro's deposition, Plaintiff asked, "Is it true that, depending on the device utilized by a user there may be a need to scroll to see the entirety of the white box?" Dkt. 29 at 5 (quoting Grombacher Supp. Decl., Ex. 1 71:20-4). Mr Castro responded, "That is correct." *Id.* It is true that courts have been reluctant to enforce internet agreements where a user was required to scroll to see a notice regarding binding terms of service. *See, e.g.*, *Metter v. Uber Techs.*, Inc., No. 16-cv-6652, 2017 WL 1374579, at *3 (N.D. Cal. Apr. 17, 2017) (denying motion to compel

United States District Court
Northern District of California

arbitration where plaintiff averred that keypad obstructed notice and user would have needed to scroll to bottom of screen to see notice).  However, as previously discussed, Plex has presented evidence that the "Create Your Account" image on the Sign Up Page is what Plaintiff would have encountered on her Android phone when she created an account in April 2021 and that Plex's entire Sign Up Page has been completely visible on a Google Android mobile phone since January 2021, subject to a user's personal settings related to text size.  Castro Decl. V ¶ 7; Castro Decl. I, Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition Transcript 45:24-46:10.

Second, Plaintiff argues that the presence of the hyperlinks in Plex's notice is insufficiently apparent because the hyperlinks are not underlined, capitalized, or in a contrasting font color.  Dkt. 15 at 9-10 (citing *Berman*, 30 F.4th at 857).  While this design element presents a close call, the hyperlinks are bolded in black font in a sentence that otherwise appears to use either a lighter gray or black font against a white backdrop, and the first letters of each phrase are capitalized—i.e., "Terms of Service" and "Privacy Policy."  *See* Castro Decl. III ¶¶ 6, 8; Dkt. 26, Ex. 2 to Liu Decl. ("Castro Decl. IV") ¶ 7.  Because the hyperlinks are bolded and as such appear darker than the rest of the sentence, they are "sufficiently 'set apart' from the surrounding text."  *Berman*, 30 F.4th at 857.  It is clear that Plaintiff was not required to "hover [her] mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks."  Further, this case is distinguishable from *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019), where the court was tasked with evaluating a similar sign-in screen displaying a hyperlink to the terms of service in a different color and concluded that the display was insufficient to establish inquiry notice.  *Colgate*, 402 F. Supp. 3d at 765-66.  Unlike Plex's sign-in page, the *Colgate* sign-in page included another hyperlink that was bolded, underlined, and in a larger font.  *Id.* at 766.  The court was concerned that users would not know that the second link was also a hyperlink given greater emphasis on the first-appearing link.  *Id.*  By contrast, Plex's Sign Up Page includes three hyperlinks, to its TOS, privacy policy, and sign-in page, where users who already have Plex accounts may log in.  Castro Decl. I, Ex. 2; Castro Decl. III ¶ 8.  The hyperlinks are all bolded and in the same size font, which sufficiently indicates to users that they are clickable in this instance; a user need not "click on every word of the sentence in case one of them is actually a link."

*Colgate*, 402 F. Supp. 3d at 765.  As such, the hyperlink to Plex's TOS was presented in a manner that gave Plaintiff adequate notice that the bolded phrase "Terms of Service" was a clickable link. *See Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 897 (C.D. Cal. Aug. 14, 2020) (granting motion to compel arbitration and finding bolding and underlining of "privacy policy" and "terms of use," coupled with requirement plaintiff affirmatively acknowledge terms of use before completing purchase, sufficient to place reasonably prudent user on inquiry notice); *Houtchens*, 2023 WL 122393, at *4 (finding bold-underlined font sufficient to distinguish hyperlinks from surrounding text).

The second *Berman* factor requires the Court to consider whether Plaintiff took some action, such as clicking a button or checking a box, that unambiguously manifested her assent to Plex's TOS.  The Court finds that she did.  Plaintiff admits that she created a Plex account "on Plex's mobile website in 2021 using an Android phone."  Miller Decl. ¶ 2; Supp. Miller Decl. ¶ 3. Plaintiff has failed to rebut Plex's evidence as to what she saw when creating an account in 2021. She no longer has the Android device she used to create her Plex account, having upgraded her phone since that time.  Dkt. 27-1 (Supp Miller Decl.) ¶ 3.  She offers no positive evidence regarding what she saw when she made her Plex account.  For instance, she does not claim that her Android phone's browser obscured Plex's notice.  Instead, she offers only vague statements such as "I do not recall ever seeing or reviewing the Terms of Service" and "To the best of my knowledge, the notice language that appears in screenshot attached to the Castro Declaration stating that usage of the website would constitute consent to Plex's privacy policy or terms of use was not visible on my device at the time I signed up for service." *Id.* at ¶¶ 5, 9.  She does not dispute Mr. Castro's testimony that, based on Plex's records, she created a Plex account on April 27, 2021.  Castro Decl. I ¶ 13.  Nor does she dispute Plex's evidence that she would have seen the Sign Up Page when creating her account in 2021. Castro Decl. I, Ex. 2; Castro Decl. III ¶¶ 9-10; Castro Deposition Transcript 45:24-46:10; Dkt. 26 (Ex. 7 to Liu Decl.).  Thus, her statements that she never saw Plex's TOS "can be understood to mean that she was subjectively unaware of their existence" on the screen she viewed to use the mobile website. *Britt*, 2021 WL 1338553, at *4; *Maynez*, 479 F. Supp. 3d at 898 ("Whether or not Plaintiff actually saw, reviewed, or read the

United States District Court
Northern District of California

Terms of Use is not relevant to the question of whether she agreed to them."). Mutual assent, however, is measured objectively, and it is undisputed here that Plaintiff created a Plex account using the Sign Up Page. Accordingly, there is no genuine dispute that Plaintiff objectively manifested her assent to Plex's terms of service.

Plaintiff offers one final argument in an effort to avoid this result—that the Google Sign In Page likewise failed to put her on notice that by creating an account, she was agreeing to Plex's Terms of Service. Dkt. 15 at 4, 10. She points out that the Google Sign In Page does not warn users that "[b]y creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the Terms of Service and have reviewed the Privacy Policy." Rather, it is undisputed that the Google Sign In Page simply states, "To continue, Google will share your name, email address, language preference, and profile picture with Plex. Before using this app, you can review Plex's privacy policy and terms of service." Dkt. 15 at 4; *see also* Dkt. 18-1 (Castro Decl. II) ¶ 8. Plaintiff's argument is unavailing. Plex has demonstrated that Plaintiff would have encountered Plex's Sign Up Page first, which, as set forth above, satisfies the *Berman* test, and then would have encountered the Google Sign In Page. *See* Castro Decl. II ¶¶ 4, 8, 10. Courts have upheld similar phased sign-in processes where a user first encountered a webpage that placed the user on inquiry notice. *See, e.g.*, *Selden v. Airbnb*, 4 F.4th 148, 156-58 (D.C. Cir. 2021) (affirming motion to compel arbitration and concluding that phased sign-in created valid sign-in wrap agreement where Airbnb's sign-in page clearly put users on inquiry notice); *Britt*, 2021 WL 1338553, at *4 (granting motion to compel arbitration where plaintiff elected to sign in to Wish using her Facebook account). Further, Mr. Castro testified in his deposition that Google, not Plex, maintains the Google Sign In Page. Dkt. 29 (Ex. 1 to Liu Decl.) at 48:11-25. To the extent Plaintiff challenges the lack of notice on Google's webpage, therefore, Plaintiff's quarrel lies with Google.

In sum, the Court finds that Plex's Sign Up Page satisfies the *Berman* test, that Plaintiff was on inquiry notice of the arbitration agreement, and that Plaintiff manifested unambiguous assent to Plex's TOS when she signed up for Plex's services using her Google credentials.

United States District Court
Northern District of California

### 2. Validity and Enforceability of the Arbitration Agreement

Plaintiff does not dispute that the arbitration provision covers her claims but instead argues that the arbitration agreement and class action waiver contained in Plex's TOS are (1) procedurally and substantively unconscionable and (2) invalid because they prohibit public injunctive relief and are invalid under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).  Dkt. 15 at 11-22.  "Unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citation omitted). "[L]anguage 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Id.*

As Plex points out, Plex's TOS include a delegation clause by virtue of its incorporation by reference of the JAMS Streamlined Arbitration Rules.  *See* Castro Decl. I ¶ 12, Ex. 1 ¶ 23.  The arbitration agreement provides, in relevant part, "[a]rbitration shall be conducted under the rules then prevailing of JAMS/ENDISPUTE Streamlined Arbitration Rules and Procedures in effect at the time of filing of the demand for arbitration."  Castro Decl. I ¶ 12, Ex. 1 ¶ 23.  Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of Section 8(b) of the JAMS Streamlined Rules, which provides, "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  JAMS Streamlined Arbitration Rules & Procedures, https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8 (last accessed Mar. 27, 2023).

The Court finds that the arbitration agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator through its incorporation of the JAMS Streamlined Arbitration Rules & Procedures.  *See Brennan*, 796 F.3d at 1130-32 (holding that incorporation of AAA rules constituted clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *White v. Ring LLC*, No. 22-cv-6909, 2023 WL 1097554, at *6 (C.D. Cal. Jan. 25,

United States District Court
Northern District of California

2023) (concluding that incorporation of JAMS Streamlined Arbitration Rules & Procedures constituted clear and unmistakable evidence parties agreed to arbitrate arbitrability, including enforceability of arbitration agreement).  Moreover, because Plaintiff's unconscionability and validity arguments are not specifically directed at the delegation clause, those challenges must be resolved by the arbitrator.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 64, 72-73 (2010) (holding that because plaintiff did not challenge the specific delegation clause, but rather only challenged the arbitration provision as a whole as unconscionable, that challenge is for the arbitrator); *I.C. v. Zynga, Inc.*, No. 20-cv-1539, 2021 WL 3271187, at *2 (N.D. Cal. July 30, 2021) (granting motion to compel arbitration in clickwrap case and concluding that unconscionability and *McGill* were issues for arbitrator based on agreement's clear delegation of question of arbitrability to arbitrator and plaintiffs' failure to challenge delegation clause as unconscionable); *Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 991-92 (N.D. Cal. Jan. 5, 2017) (holding arbitration clause provided clear and unmistakable evidence of parties' intent to delegate questions of arbitrability to arbitrator where arbitration agreement incorporated AAA Commercial Arbitration Rules); *see also B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 957-59 (2022) (concluding *McGill* challenge fell within scope of gateway issues parties agreed to delegate to the arbitrator and that *McGill* challenge was not specific to the delegation clause).  Accordingly, Plex's motion to compel arbitration is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Plex's motion to compel arbitration is **GRANTED**, and the case is hereby stayed pending completion of the arbitration.  The Clerk is directed to close the file for administrative purposes.  It may be reopened for such additional proceedings as may be appropriate and necessary upon conclusion of the arbitration.

**SO ORDERED.**

Dated: March 30, 2023

_____
SUSAN VAN KEULEN
United States Magistrate Judge

WOOD, SMITH, HENNING & BERMAN LLP<br>501 WEST BROADWAY, SUITE 1200<br>SAN DIEGO, CALIFORNIA 92101<br>TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

## CERTIFICATE OF SERVICE

I hereby certify that on this 29 day of July, 2024, I electronically filed the foregoing **DEFENDANT PLEX, INC.'S AND PLEX GMBH'S NOTICE OF MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE; AND MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Neal J. Deckant (State Bar No. 322946)
Joshua R. Wilner (State Bar No. 353949)
Joshua B. Glatt (State Bar No. 354064)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com;
jwilner@bursor.com  jglatt@bursor.com

*ATTORNEYS FOR PLAINTIFF*

*/s/ Lorena V. Hernandez*
Lorena V. Hernandez

DEFT PLEX, INC.'S AND PLEX GMBH'S NTC OF MTN TO DISMISS & STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE