Christopher J. Seusing *(Pro Hac Vice Admission Forthcoming)*
cseusing@wshblaw.com
Sean V. Patel *(Pro Hac Vice Admission Forthcoming)*
spatel@wshblaw.com
**Wood, Smith, Henning & Berman LLP**
685 3rd Avenue, 18th Floor
New York, NY 10017
Tel: 475-755-7050

Jacob P. Wilson (State Bar No. 331448)
jwilson@wshblaw.com
**Wood, Smith, Henning & Berman LLP**
10960 Wilshire Boulevard, 18th Floor,
Los Angeles, CA 90024
Tel: 310-481-7702

Attorneys for Defendants, Plex, Inc. and Plex GmbH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

RICHARD LEE, individually and on behalf of all others similarly situated,

                    Plaintiff,

    v.

PLEX, INC. and PLEX GMBH,

                    Defendants.

Case No. 5:24-cv-02386-PCP

**DEFENDANT PLEX, INC.'S AND PLEX GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR TRANSFER VENUE; AND MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 10, 2024
Time 10:00 a.m.
Courtroom: 8
Judge: The Honorable P. Casey Pitts

*[Filed Concurrently with Declaration of Ricardo Castro and Declaration of Angelo Spenillo In Support of Motion]*

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND PARTIES OF RECORD:**

**PLEASE TAKE NOTICE** that on October 10, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled Court, located at San Jose Courthouse, Courtroom 8 – 4th Floor, 280 South 1st Street, San Jose, CA 95113 Defendants, Plex, Inc. and Plex GmbH (collectively, "Plex") will, and hereby does, move this Court for an order dismissing Plaintiff, Richard Lee's, First Amended Class Action Complaint pursuant to Fed.R.Civ.P. 12(b)(2) for failing to plead facts sufficient to exert personal jurisdiction over Plex GmbH, and pursuant to Fed.R.Civ.P. 12(b)(6) for failing to plead facts sufficient to support his causes of action against Plex. Alternatively, Plex will, and hereby does move this Court for an order striking Plaintiff's class allegations pursuant Fed.R.Civ.P. 12(f) for failure to meet the requirements of Fed.R.Civ.P. 23(a) and (b). Alternatively, Plex will, and hereby does move this Court for an order compelling arbitration on an individual basis pursuant to Fed.R.Civ.P. 12(b)(3) and 9 U.S.C. § 4. Alternatively, Plex will, and hereby does move this Court for an order transferring venue to the United States District Court for the District of Delaware pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404. Plex further requests all other relief as this Court deems just and equitable.

The motion is made based on the attached memorandum of points and authorities, the Declarations of Angelo Spenillo and Ricardo Castro and accompanying exhibits, the record in this action, and such other argument and evidence as may be presented at the time of hearing.

DATED: August 19, 2024                    WOOD, SMITH, HENNING & BERMAN LLP

By:     /s/ Jacob P. Wilson
        _____
        JACOB P. WILSON
        CHRISTOPHER J. SEUSING
        (*Pro Hac Vice Admission Forthcoming*)
        SEAN V. PATEL
        (*Pro Hac Vice Admission Forthcoming*)
        Attorneys for Defendants, PLEX, INC., AND PLEX GMBH

1

2

**TABLE OF CONTENTS**

**PAGE**

3  I.     INTRODUCTION ............................................................................................ 1

4  II.    STATEMENT OF RELEVANT FACTS ........................................................ 1

5  III.   THE PARTIES ENTERED INTO A SIGN-IN WRAP AGREEMENT ............................ 4

6       A.    This Court has held that the Sign-In Wrap Agreement is enforceable .................... 4

7            1.    Plaintiff received reasonably conspicuous notice ......................... 5

8            2.    Plaintiff exhibited an unambiguous manifestation of assent ........................ 7

9  IV.   THE TOS, RATER THAN THE AMENDED TOS, IS CONTROLLING .......................... 7

10
   V.    THE COURT SHOULD DISMISS THIS ACTION AS TO PLEX GMBH
11      PURSUANT TO RULE 12(B)(2) BECAUSE THERE IS NO MINIMUM
     CONTACTS ..................................................................................................... 8

12      A.    Plex Inc. and Plex GmbH have separate personalities ............................................. 10

13      B.    Disregarding the separate identities would not result in injustice or fraud ............. 12

14  VI.   THIS COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE
15      12(B)(6) BECAUSE PLAINTIFF CONSENTED TO THE ALLEGED CONDUCT ........ 13

16      A.    The Sign-In Wrap Agreement satisfies the VPPA requirements for
       disclosure ............................................................................................................. 13

17            1.    The first prong is satisfied because Plaintiff entered into the Sign-In
18                Wrap Agreement and Consented to the Privacy Policy .............................. 14

19            2.    The second prong is satisfied because Plaintiff never withdrew
              Consent ........................................................................................ 16

20            3.    The third prong is satisfied because the Privacy Policy provided
21                Plaintiff instructions in a clear and conspicuous manner on how to
              withdraw Consent. ................................................................................. 16

22      B.    The Sign-In Wrap Agreement  satisfies the California Civil Code § 1799.3
23         permissible disclosure requirements ........................................................................ 18

24  VII.  THE COURT SHOULD STRIKE CLASS ALLEGATIONS PURSUANT TO
     RULE 12(f) BECAUSE THE PROPOSED CLASS DEFINITIONS ARE TOO
25      BROAD ........................................................................................................... 18

26  VIII. THE  COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE
     12(b)(6) BECAUSE THE CLASS ACTION WAIVER IS ENFORCEABLE .................... 21

27  IX.   THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE
     12(B)(3) BECAUSE THE ARBITRATION AGREEMENT IS ENFORCEABLE ............ 22

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

     A.     The Arbitration Agreement is Governed by the Federal Arbitration Act. ...............22

     B.     The Arbitration Agreement encompasses Plaintiff's claims ....................................24

X.     ALTERNATIVELY PURSUANT TO RULE 12(B)(3) THIS MATTER SHOULD BE TRANSFERRED TO DELAWARE IF THE AMENDED TOS ARE CONTROLLING ..............................................................................................................25

XI.     CONCLUSION ......................................................................................................................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1

**TABLE OF AUTHORITIES**

2

**CASES**

        **PAGE**

3

*AdTrader, Inc. v. Google LLC,*
4
No. 17-CV-07082-BLF, 2020 WL 1922579 (N.D. Cal. Mar. 24, 2020) ............................. 21

5

*Ahlstrom v. DHI Mortg. Co. GP, Inc.,*
No. 17-CV-04383-BLF, 2018 WL 6268876 (N.D. Cal. Nov. 30, 2018) ............................. 22
6

*Allied-Bruce Terminix Cos. v. Dobson*,
7
513 U.S. 265 (1995) ......................................................................................................... 23

8

*Ashcroft v. Iqbal*,
9
556 U.S. 662 (2009) ......................................................................................................... 10

10

*Atlantic Marine Const. Co. v. U.S. Dist. Court*,
11
571 U.S. 49 (2013) ........................................................................................................... 25

12

*AT & T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ......................................................................................................... 22
13

*Baker v. Wehinger,*
14
No. CV 18-05800 SJO (EX),2018 WL 6443086 (C.D. Cal. Oct. 9, 2018) ........................ 9

15

*Baton v. Ledger SAS,*
16
No. 21-CV-02470-EMC, 2024 WL 3447511 (N.D. Cal. July 16, 2024)............................. 19

17

*Bennett v. Isagenix Int'l, LLC,*
No. CV-23-01061-PHX-DGC, 2023 WL 4562605 (D. Ariz. July 17, 2023) ...................... 8
18

*Berman v. Freedom Fin. Network, LLC,*
19
30 F.4th 849 (9th Cir. 2022)................................................................................... *passim*

20

*Bernardino v. Barnes & Noble Booksellers, Inc.,*
21
No. 17CV04570LAKKHP, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)........................ 13

22

*Buckeye Check Cashing, Inc. v. Cardegna,*
23
546 U.S. 440 (2006) ......................................................................................................... 23

24

*Castaldi v. Signature Retail Servs., Inc.,*
No. 15-CV-00737-JSC, 2016 WL 7042991 (N.D. Cal. Jan. 20, 2016) .............................. 24
25

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
26
491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................................................................. 10

27

28

*///*

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Corcoran v. CVS Health Corp.,*
169 F. Supp. 3d 970 (N.D. Cal. 2016) ....................................................................... 11,12

*Data Disc, Inc. v. Systems Technology Associates, Inc.,*
557 F.2d 1280, 1286 (9th Cir. 1977)............................................................................ 9

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ..................................................................................................... 23

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001)........................................................................................ 11

*Dole Food Co. v. Patrickson,*
538 U.S. 468 (2003) ..................................................................................................... 11

*Fontaine v. Resurgent Capital Services, Inc.*
540 F. Supp. 3d 353, 362 (W.D.N.Y. May 19, 2021) ................................................. 22

*Gerritsen v. Warner Bros. Entm't Inc.,*
116 F. Supp. 3d 1104 (C.D. Cal. 2015)........................................................................ 11

*Gofron v. Picsel Techs., Inc.,*
804 F. Supp. 2d 1030 (N.D. Cal. 2011) ...................................................................... 8

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,*
328 F.3d 1122 (9th Cir.2003)....................................................................................... 11

*Heerde v. Learfield Commc'ns, LLC,*
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024) ........... 21

*Hovis v. Homeaglow, Inc.,*
No. 323CV00045BTMWVG, 2023 WL 5003583 (S.D. Cal. Aug. 4, 2023) ...................... 22

*In re California Gasoline Spot Mkt. Antitrust Litig.,*
No. 20-CV-03131-JSC, 2021 WL 4461199  (N.D. Cal. Sept. 29, 2021) ...................... 11

*In re Gilead Scis. Sec. Litig.,*
536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 10

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945) ..................................................................................................... 9

*In re Cupertino Electric Inc. Litigation,*
Case 5:23-cv-04007-BLF, ECF No. 69 (N.D. Cal. Aug. 14, 2024)................................ 19

*In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.,*
735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd,* 683 F.3d 462 (3d Cir. 2012) ......................... 9

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

34254817.1:12373-0010

*Jackson v. Amazon.com, Inc.,*
559 F. Supp. 3d 1132 (S.D. Cal. 2021), *aff'd,* 65 F.4th 1093 (9th Cir. 2023) ...................... 8

*Kamm v. California City Dev. Co.,*
509 F.2d 205 (9th Cir. 1975) ................................................................................. 19

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
394 F.3d 1143 (9th Cir. 2004) ............................................................................... 11

*Larry Pearl v. Coinbase Global, Inc.,*
No. 22-CV-03561-MMC, 2024 WL 3416505 (N.D. Cal. July 15, 2024) ........................... 19

*Lewis v. UBS Fin. Servs. Inc.,*
818 F. Supp. 2d 1161 (N.D. Cal. 2011) ..................................................................... 22

*Lyon v. United States Immigr. & Customs Enf't,*
300 F.R.D. 628 (N.D. Cal. 2014), modified sub nom.
*Lyon v. U.S. Immigr. & Customs Enf't,* 308 F.R.D. 203 (N.D. Cal. 2015) .......................... 20

*Martin v. Meredith Corp.,*
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ....................................................................... 18

*Mohamed v. Uber Techs., Inc.,*
848 F.3d 1201 (9th Cir. 2016) ................................................................................. 24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ................................................................................................. 24

*Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.,*
No. C 12-05586 CW, 2013 WL 245594 (N.D. Cal. Jan. 22, 2013) .................................... 9

*NetApp, Inc. v. Nimble Storage, Inc.,*
2015 WL 400251, at *7 (N.D. Cal. Jan. 29, 2015) ....................................................... 11

*Ngethpharat v. State Farm Mut. Ins. Co.,*
339 F.R.D. 154 (W.D. Wash. 2021) .......................................................................... 21

*Nguyen v. OKCoin USA Inc.,*
No. 22-CV-06022-KAW, 2023 WL 2095926 (N.D. Cal. Feb. 17, 2023) .................... *passim*

*Oracle Am., Inc. v. Appleby,*
No. 16-CV-02090-JST, 2016 WL 5339799 (N.D. Cal. Sept. 22, 2016) ............................. 12

*Pickman v. Am. Exp. Co.,*
No. C 11-05326 WHA, 2012 WL 1357636 (N.D. Cal. Apr. 17, 2012) .............................. 12

*Poulos v. Caesars World, Inc.,*
379 F.3d 654 (9th Cir. 2004) .................................................................................. 21

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Quamina v. JustAnswer LLC,*
No. 22-CV-06051-JD, 2024 WL 950157 (N.D. Cal. Mar. 5, 2024) .................................. 4

*Quinalty v. FocusIT LLC,*
No. CV-23-00207-PHX-JJT, 2024 WL 342454 (D. Ariz. Jan. 30, 2024) ......................... 19

*Ranza v. Nike, Inc.,*
793 F.3d 1059 (9th Cir. 2015) .......................................................................... *passim*

*Rano v. Sipa Press, Inc.,*
987 F.2d 580 (9th Cir.1993)................................................................................. 9

*Rebecka Miller v. Plex, Inc.,*
Case No. 5:22-cv-5015-SVK (March 30, 2023) ................................................... *passim*

*Reynolds v. Binance Holdings Ltd.,*
481 F. Supp. 3d 997 (N.D. Cal. 2020) .................................................................. 11

*Rocha v. Urb. Outfitters, Inc.,*
No. 23-CV-00542-AMO, 2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ........................ 5,17

*Roman v. Spirit Airlines, Inc.,*
482 F. Supp. 3d 1304 (S.D. Fla. 2020), *aff'd,*
No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) ..................................... 22

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir.2004)................................................................................. 8

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007)............................................................................... 10

*Scott v. Breeland,*
792 F. 2d 925 (9th Cir. 1986)............................................................................... 9

*Sheppard v. Staffmark Inv., LLC,*
No. 20-CV-05443-BLF, 2021 WL 690260 (N.D. Cal. Feb. 23, 2021) ........................... 22

*Sher v. Johnson,*
911 F.2d 1357 (9th Cir.1990) ............................................................................... 9

*Smith v. Simmons,*
638 F. Supp. 2d 1180 (E.D. Cal. 2009), *aff'd,* 409 F. App'x 88 (9th Cir. 2010) ............ 12

*SMS Signature Cars v. Connects Mktg. LLC,*
2012 WL 12893936 (C.D. Cal. Nov. 5, 2012)........................................................... 9

*Sonora Diamond Mid–Century Ins. Co. v. Gardner,*
9 Cal.App.4th 1205, 11 Cal.Rptr.2d 918 (1992) ...................................................... 12

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

34254817.1:12373-0010

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ............................................................................................ 23

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ........................................................................................ 19

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ................................................................. *passim*

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.,*
No. 17-CV-02191-SK, 2024 WL 2193311 (N.D. Cal. May 14, 2024) ............... *passim*

*Tourgeman v. Collins Fin. Servs., Inc.*,
No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ...................... 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................ 19

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................................................ 19

*United States v. Aguirre*,
No. 1:21-MJ-00094-SAB-1, 2023 WL 5155157 (E.D. Cal. Aug. 10, 2023) ...................... 16

*United States v. Kubbo,*
17 F. App'x 543 (9th Cir. 2001) ...................................................................... 16

*United States v. Manchester Farming Partnership,*
315 F.3d 1176 (9th Cir.2003) .......................................................................... 12

*United States v. Pangang Grp. Co.,*
879 F. Supp. 2d 1052 (N.D. Cal. 2012) ....................................................... 10,12

*United States v. Rosenthal,*
No. CR 02-00053 CRB, 2007 WL 2013524 (N.D. Cal. July 6, 2007) ............... 12

*Villamar v. Clean Harbors Env't Servs. Inc.,*
No. 222CV03966MEMFJEMX, 2022 WL 4465549 (C.D. Cal. Sept. 23, 2022) ............... 22

*VirtualMagic Asia, Inc.,*
99 Cal.App.4th 228, 121 Cal.Rptr.2d 1 (2002) .............................................. 12

*Wang v. Life Ins. Co. of the Sw.,*
No. 19-CV-01150-YGR, 2019 WL 13201949 (N.D. Cal. Dec. 19, 2019) ........... 25

*White v. Ring LLC,*
No. 22-cv-6909, 2023 WL 1097554 (C.D. Cal. Jan. 25, 2023) ........................ 24

*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.,*
No. 5:20-CV-04184-EJD, 2020 WL 6290377 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom.*
*Yih v. Taiwan Semiconductor Mfg. Co., Ltd*, No. 20-17237, 2021 WL 378309
 (9th Cir. Aug. 26, 2021) .............................................................................................. 11

*Zinser v. Accufix Research Institute, Inc.,*
253 F.3d 1180 (9th Cir.2001) ....................................................................................... 20

**OTHER AUTHORITY**

39 F.R.D. 69, 102 (1966) ................................................................................................ 20

H.R. Rep. 112-312 (2011) .............................................................................................. 13

**STATUTES**

9 U.S.C. § 2 ..................................................................................................................... 23

9 U.S.C. § 4 ............................................................................................................. *passim*

18 U.S.C. § 2710 .................................................................................................... *passim*

28 U.S.C. § 1404 .................................................................................................... *passim*

California Civil Code § 1799.3 ............................................................................... *passim*

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Richard Lee ("Plaintiff"), individually and as the personal representative of a putative class, filed his First Amended Class Action Complaint ("FAC") on August 5, 2024. The FAC alleges Plex installed tracking pixels on its publicly facing website, which transmitted Plaintiff's and Class Members' viewing activities to third-party providers like Meta/Facebook without consent. *See* FAC, at ¶¶1-2. Plaintiff alleges causes of action for (1) violation of the Video Privacy Protection Act (18 U.S.C. § 2710, *et seq*) (the "VPPA") and (2) violation of California Civil Code § 1799.3. Plex respectfully requests this court dismiss this matter in its entirely and strike class allegations; or alternatively compel arbitration; or alternatively transfer this matter to the United Stated District Court for the District of Delaware.

### II.      STATEMENT OF RELEVANT FACTS

Plex provides its users with access to text, graphics, photos, sounds, audio and videos in the form of news reports, videos, and music (collectively, the "Content") streamed over the internet to its user's internet-connected devices (the "Device"). *See* Declaration of Ricardo Castro, at ¶ 5. Plex's Terms of Service ("TOS") govern a user's access to and use of the Plex Solution, which includes its website located at https://www.plex.tv/, (the "Website"), its video services, the Content, Plex's software, mobile or web applications, or any related Plex services (collectively, "the Plex Solution"). *Id*., at ¶ 6; Ex. A. Plex's privacy policy ("Privacy Policy") governs the method by which Plex collects, uses, and shares user's personal information when a user uses the Plex Solution. *Id*., at ¶ 7; Ex. B. Plaintiff alleges that "in or around April 2020, Plaintiff created a Plex account using the 'Continue with Facebook' button." *See* FAC at ¶ 64. To create a Plex account, Plex users, including Plaintiff, complete the registration process on the Plex Userflow (defined below). *See* Declaration of Ricardo Castro, at ¶ 9. A user cannot advance to the next step and complete the Plex account registration process until the user affirmatively clicks the "Continue with Google", "Continue with Facebook", "Continue with Apple" or "Create an Account" button within the Plex Userflow, which are displayed immediately next to the message that expressly states "By creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**DEFENDANT PLEX, INC.'S AND PLEX GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS**

accepted the Terms of Service and have reviewed the Privacy Policy." (the "Sign-In Wrap Agreement"). *Id*., at ¶¶ 10,16. At the time of Plaintiff's alleged account creation in or around April 2020, the Plex Userflow was substantially the same as the screenshot depicted below (the "Plex Userflow"):



*Id*., at ¶ 14, Ex. C. When a user, including Plaintiff, selects the "Continue With Facebook" button within the Plex Userflow, they are automatically presented with a screen containing the Facebook Userflow (defined below). *Id*., at ¶ 11. A user, including Plaintiff cannot advance to the next step and complete the Plex account registration process until the user grants Plex access to their name, profile picture, and email address and until the user affirmatively selects the "Continue" button within the Facebook Userflow, which is displayed immediately next to a hyperlink containing Plex's Privacy and TOS  and immediately next to the message that expressly states "by continuing, Plex will receive ongoing access to the information you share and Facebook will record when Plex Access it. Learn more about this sharing and the settings you have." *Id*., at ¶ 11, Ex. D. At the time Plaintiff allegedly created an account in or around April 2020 by selecting the "Continue With Facebook" button, the Facebook Userflow was substantially the same as the screenshot depicted below (the "Facebook Userflow"):

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950



*Id.*, at ¶ 15, Ex. D.  As shown in both of the above screenshot, the words "Terms of Service" and "Privacy Policy" are active hyperlinks that a Plex user, including Plaintiff, could click on to be directed to another screen containing the entire text of the respective document. *Id.*, at ¶ 17. When Plaintiff allegedly created a Plex account, he encountered the TOS and Privacy Policy on the Plex Userflow and Facebook Userflow, as illustrated above. *Id.*, at ¶¶ 25-26. Plaintiff had the opportunity to review the TOS and Privacy Policy before creating a Plex account and selecting the "Continue with Facebook" button on the Plex Userflow and the "Continue" button on the Facebook Userflow. *Id.*, at ¶ 27. Plaintiff alleges he "created a Plex account using the 'Continue to Facebook button'" and therefore acknowledged, agreed, and accepted the TOS and Privacy Policy,  as illustrated in the above screenshots. *Id.*, at ¶ 28. At the time Plaintiff initially entered into the Sign-in Wrap Agreement in April 2020, Plex's TOS included (i) a mandatory arbitration agreement and (ii) class action waiver. *Id.*, at ¶ 29. Furthermore, beginning April 11, 2024, Plex's Amended TOS (defined below) included a forum selection clause, which, subject to its dispute resolution provision within same, requires all claims arising from the Plex Solution to be brought in the courts presiding in the state of Delaware. *Id.*, at ¶ 33. At all times since Plaintiff initially entered into the Sign-in Wrap

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1   Agreement in or around April 2020, Plaintiff accepted Plex's Privacy Policy and provided informed,

2   written consent for Plex to collect, process, store, share, and/or sell his personal information with

3   third-parties ("Consent"). *Id*., at ¶¶ 7, 34-41. Furthermore, at no time relevant hereto did Plaintiff

4   withdraw Consent. *Id*., at ¶¶ 37-38.

5   **III.    THE PARTIES ENTERED INTO A SIGN-IN WRAP AGREEMENT**

6       **A.    <u>This Court has held that the Sign-In Wrap Agreement is enforceable</u>**

7           Under California state contract law, sign-in wrap agreements (also referred to as "modified

8   clickwrap agreements") "notify the user of the existence of the website's terms of use and, instead

9   of providing an 'I agree' button, advise the user that he or she is agreeing to the terms of service

10  when registering or signing up." *Quamina v. JustAnswer LLC,* No. 22-CV-06051-JD, 2024 WL

11  950157 at *4  (N.D. Cal. Mar. 5, 2024). This Court has previously held that:

12

13          Because the user is purportedly bound by Plex's TOS by clicking to "Create an
            Account" or "<u>**Continue with Google**</u>", and cannot create an account without
14          affirmatively acknowledging the agreement…Plex's agreement is…categorized as a
            sign-in wrap agreement
15

16  *See Rebecka Miller v. Plex, Inc.*, Case No. 5:22-cv-5015-SVK, ECF No. 32, pg. 14 (March 30,

17  2023), Ex. E. As explained, *infra*, this Court previously held that the Sign-In Wrap Agreement

18  offered by Plex is a fully enforceable and binding contract. In doing so, this Court applied the two-

19  factor test created by the Ninth Circuit in *Berman v. Freedom Fin. Network, LLC*.[1]

20

21  _____

22  [1] Pursuant to the *Berman* Test, "unless the website operator can show that a consumer had actual

23  knowledge of the agreement an enforceable contract will be found based on an inquiry notice theory

24  if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will

25  be bound; and (2) the consumer take some action, such as clicking a button or checking a box, that

26  unambiguously manifests his or her assent to those terms." *See Berman v. Freedom Fin. Network,*

27  *LLC*, 30 F. 4th 849, 856 (9th Cir. 2022).

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1          **1.**     Plaintiff received reasonably conspicuous notice

As to the first *Berman* factor, to be conspicuous a notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* "This may be done by using a contrasting font color…or through the use of all capital letters, both of which may 'alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage.'" *Rocha v. Urb. Outfitters, Inc.,* No. 23-CV-00542-AMO, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) (*quoting Berman*, 30 F.4th 849,856). This Court, in *Miller*, held the Sign-In Wrap Agreement offered by Plex satisfies the first *Berman* factor because:

> Plex's Sign Up Page… is uncluttered and does not include distracting graphics…The critical notice language is wholly visible and appears in close proximity to the yellow-colored "Create an Account" button in dark gray font of the same size as the rest of the webpage's text other than the statement "Create your free account" that appears at the top of the webpage in a larger font…Further, the three buttons for Google, **Facebook** and Apple plainly provided options for how a user could sign up for Plex's services because each began with "Continue with" and then provided a method for doing so… Directly beneath these options is the word "or" and fields for a user to enter an email address and password along with an orange "Create an account" button…Under the yellow-colored "Create an account" button, **users are clearly informed that** "By creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the Terms of Service and have reviewed the Privacy Policy."…A user clicking on the hyperlink "Terms of Service" is directed to a copy of the TOS…**A reasonable person would know that, by signing up, she would be agreeing to Plex's terms even if she used her Google account to sign up**…Plex's Sign Up Page includes three hyperlinks, to its TOS, privacy policy, and sign-in page, where users who already have Plex accounts may log in…**The hyperlinks are all bolded and in the same size font, which sufficiently indicates to users that they are clickable in this instance**; a user need not "click on every word of the sentence in case one of them is actually a link."…As such, the hyperlink to Plex's TOS was presented in a manner that **gave Plaintiff adequate notice** that the bolded phrase "Terms of Service" was a clickable link[.]

*Id.,* 5:22-cv-5015-SVK, ECF No. 32, pg. 16-20. **Here, Plex has not implemented any changes to the design of the Plex Userflow since this Court's decision in *Miller*.** *See* Declaration of Ricardo Castro, at ¶ 14; Ex. C. Accordingly, this Court's analysis and ruling in *Miller* should be binding here.

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    Akin to the plaintiff in *Miller*, Plaintiff here alleges "when a consumer is presented with the

2    sign-up screen, any terms of service or privacy policy Defendants present are not immediately

3    visible and require the consumer to scroll down the page." *See* FAC, at ¶ 64.  Notwithstanding, this

4    Court rejected the same argument in *Miller*, and held:

5        Plex has presented evidence that the "Create your Account" image on the Sign Up
6        Page is what Plaintiff would have encountered on her Android phone when she
         created an account in April 2021 and the **Plex's entire Sign Up Page has been**
7        **completely visible** on a Google Android mobile phone since January 2021, **subject**
         **to a user's personal settings related to text size**"
8

9    *See Id.,* 5:22-cv-5015-SVK, ECF No. 32, pg. 18-19. In both *Miller* and the current matter, Plex

10   submits exactly the same evidence through the Declaration of Ricardo Castro. *See Id.*, at ¶21.

11   Accordingly, Plaintiff's argument is unpersuasive. Furthermore, Plaintiff had an additional

12   opportunity to view Plex's TOS and Privacy Policy on the Facebook Userflow, which is immediately

13   below the "Continue" button which Plaintiff allegedly clicked on. *See Id.*, at ¶¶22, 26. As such,

14   during the process of registering for a Plex account, Plaintiff received reasonably conspicuous notice

15   of the TOS and Privacy on the Plex Userflow and the Facebook Userflow. *Id*. Also akin to the

16   plaintiff in *Miller*, Plaintiff alleges "the Terms and Privacy Policy are not presented as clear

17   hyperlinks." See FAC, ¶ 61. Notwithstanding, this Court also rejected the same argument in *Miller*,

18   and held:

19

20       because the hyperlinks are **bolded** and as such appear darker than the rest of the
21       sentence, they are "**sufficiently set apart**" from the surrounding set apart from the
         surrounding text…it is clear that Plaintiff was not required to " hover [her] mouse
22       over otherwise plain-looking text or aimlessly click on words on a page in an effort
         to ferret out hyperlinks.
23

24    *See Id.,* 5:22-cv-5015-SVK, ECF No. 32, pg. 19-20.  Here, as mentioned above Plex has not

25   implemented any changes to the design of the Plex Userflow since this Court's decision in *Miller*.

26   *See* Declaration of Ricardo Castro. *See Id.*, at ¶21; Ex. C. Accordingly, Plaintiff's argument is

27   unpersuasive. Lastly, Plaintiff argues that the April 2020 Terms of Service and Privacy Policy are

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

34254817.1:12373-0010

-6-

not clickable hyperlinks. Notwithstanding, as explained above, this is simply untrue. *Id.* ¶¶17,19

### 2.   Plaintiff exhibited an unambiguous manifestation of assent

In concluding that Plex's Sign-In Wrap Agreement satisfied the second *Berman* factor, this Court in *Miller* held:

> **Plaintiff was on inquiry notice** of the arbitration agreement, and that Plaintiff **manifested unambiguous assent** to Plex's TOS when she signed up for Plex's services using her Google credentials.

*Id.,* Case No. 5:22-cv-5015-SVK, ECF No. 32, pg. 21. Here, similar to the plaintiff in *Miller*, Plaintiff concedes that "in or around April 2020, Plaintiff created a Plex account" and therefore manifested unambiguous assent to the terms and conditions of the Sign-In Wrap Agreement, including the TOS and Privacy Policy. *See* FAC, at ¶ 64; *see also* Declaration of Ricardo Castro, at ¶ 16. Accordingly, as explained above, both of the *Berman* factors are met. As such, this Court should follow its precedent in *Miller* and hold Plaintiff entered into an enforceable Sign-in Wrap Agreement with Plex and therefore acknowledged, agreed, and accepted the TOS and Privacy Policy.

## IV.   THE TOS, RATER THAN THE AMENDED TOS, IS CONTROLLING

At all times since Plaintiff initially entered into the Sign-In Wrap Agreement in or around April 2020, each version of Plex's terms of service, including the TOS, included a change-of-terms provision, which provides that Plex "reserves the right to change terms and conditions of the TOS[.]" *See* Declaration of Ricardo Castro, at ¶ 43. Ex. A; E. Under California law, "in order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). The party enforcing the change-of-terms provision has the burden of proving each element of a valid assent, including mutual assent. *Id.* "Notice…is the touchstone for assent to a contract, and the resulting enforceability of changed terms in an agreement." *Id.* In *Nguyen v. OKCoin USA Inc.,* the parties disputed whether the September 2021 terms of service or the July 2022 terms of service applied. *Id.*, No. 22-CV-06022-

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ◆ FAX 619.849.4950

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ◆ FAX 619.849.4950

KAW, 2023 WL 2095926, at *2 (N.D. Cal. Feb. 17, 2023). The September 2021 terms of service provided that defendant may "change or modify the terms and conditions contained in these terms ... at any time and at its sole discretion." *Id*. Further, the September 2021 terms of service stated: "your non-termination or continued use of this Site or Service(s) after the effective date of any changes or modifications of these terms will constitute your acceptance of such changes or modifications." *Id*. Defendant subsequently modified the terms of service in July 2022, and plaintiffs stated that they used defendant's website thereafter. *Id*. Plaintiffs argued that the July 2022 terms of service applied to the case, while defendant responded that the September 2021 terms of service still applied because defendant did not notify existing users by e-mail or other means about the July 2022 terms of service. *Id*. Applying the *Stover* Test, the court in *Nguyen* agreed with the defendant and held that the September 2021 terms of service applied because defendant did not notify its existing users of the July 2022 terms of service. *Id. See also Jackson v. Amazon.com, Inc.,* 559 F. Supp. 3d 1132, 1141 (S.D. Cal. 2021), *aff'd,* 65 F.4th 1093 (9th Cir. 2023); *Bennett v. Isagenix Int'l, LLC,* No. CV-23-01061-PHX-DGC, 2023 WL 4562605, at *3 (D. Ariz. July 17, 2023). Here, Plex did not notify its existing users, including Plaintiff, of the April 11, 2024 update to its TOS (the "Amended TOS") by e-mail or other means. *See* Declaration of Ricardo Castro, at ¶ 42. Accordingly, consistent with *Stover* and *Nguyen,* the TOS is the controlling version in effect when Plaintiff initially entered into the Sign-In Wrap Agreement in or around April 2020, which includes (i) a mandatory arbitration agreement and (ii) class action waiver. Additionally, the Amended TOS is not controlling because Plaintiff defines both the Nationwide Class and California Subclass as those users who used the Plex Solution "up and until March 2, 2024", which is prior to the April 11, 2024 update. *See* FAC, at ¶¶ 69-70. Accordingly, this Motion should be evaluated in accordance with the TOS.

## V. THE COURT SHOULD DISMISS THIS ACTION AS TO PLEX GMBH PURSUANT TO RULE 12(B)(2) BECAUSE THERE IS NO MINIMUM CONTACTS

Pursuant to Fed.R.Civ.P. 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction and "the plaintiff then bears the burden of demonstrating that the Court has jurisdiction." *Gofron v. Picsel Techs., Inc.,* 804 F. Supp. 2d 1030, 1035 (N.D. Cal. 2011) (*citing Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir.2004)). While uncontroverted allegations in

the complaint must be taken as trust, "the court may not assume the truth of such allegations if they are contradicted by affidavit." *Id.* (*citing Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir.1977)). "If defendant submits evidence controverting the allegations, plaintiff may not rely on its pleadings, but must 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Baker v. Wehinger,* No. CV 18-05800 SJO (EX), 2018 WL 6443086, at *3 (C.D. Cal. Oct. 9, 2018) (*quoting SMS Signature Cars v. Connects Mktg. LLC*, 2012 WL 12893936, at *1 (C.D. Cal. Nov. 5, 2012) (*citing Scott v. Breeland*, 792 F. 2d 925, 927 (9th Cir. 1986)). "There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process." *Id.* (*citing Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990); *Data Disc, Inc.,* 557 F.2d 1280, 1286)). "California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis." *Id.* (*citing Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 (9th Cir.1993)). "Under that analysis, the exercise of jurisdiction over a non-resident defendant will violate due process unless the defendant has established such 'minimum contacts' with the forum state that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.,* No. C 12-05586 CW, 2013 WL 245594, at *2 (N.D. Cal. Jan. 22, 2013) (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "The court's exercise of personal jurisdiction may be either general or specific." *Id*. Here, Plaintiff concedes that "Plex GmbH is a Swiss corporation with its principal place of business at Wilhelmine-Gemberg-Weg 6 10179 Berlin, Germany." *See* FAC, at ¶ 8; *see also* Declaration of Angelo Spenillo, at ¶ 7. Accordingly, the "alter-ego theory…has been utilized by courts…to determine whether a court may exercise personal jurisdiction over a foreign… corporation." *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.,* 735 F. Supp. 2d 277, 317 (W.D. Pa. 2010), *aff'd,* 683 F.3d 462 (3d Cir. 2012); *see also Ranza v. Nike, Inc.,* 793 F.3d 1059, 1073 (9th Cir. 2015) ("We hold the alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."). In the Ninth Circuit, the alter-ego test is met when "(1) that there is such a

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   unity of interest and ownership that the separate personalities of the two entities no longer exist and

2   (2) that failure to disregard their separate identities would result in injustice. The first prong of this

3   test has 'alternately been stated as requiring a showing that the parent controls the subsidiary to such

4   a degree as to render the latter the mere instrumentality of the former.'" *United States v. Pangang*

5   *Grp. Co.*, 879 F. Supp. 2d 1052, 1066 (N.D. Cal. 2012) (citations omitted).

6         **A.**    <u>**Plex Inc. and Plex GmbH have separate personalities**</u>

7   Courts consider the below factors in analyzing the unity of interest prong of the *alter ego* test:

> (1) inadequate capitalization, (2) commingling of funds and other assets, (3)
> disregard of corporate formalities and failure to maintain an arm's length
> relationship, (4) holding out by one entity that is liable to the debts of the other, (5)
> identical equitable ownership, (6) use of the same offices and employees, (7) lack of
> segregation of corporate records, (8) manipulating assets between entities so as to
> concentrate the assets in one and the liabilities in another, and (9) identical directors
> and officers.

13   *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.,* No. 17-CV-02191-SK, 2024 WL 2193311,

14   at *12 (N.D. Cal. May 14, 2024) (*quoting City & Cnty. of San Francisco v. Purdue Pharma L.P.*,

15   491 F. Supp. 3d 610, 635 (N.D. Cal. 2020)). Here, Plaintiff alleges, in a conclusory fashion that

16   personal jurisdiction exists as to Plex GmbH because "Plex GmbH oversees and controls the

17   operations of Plex, Inc., and relies on its subsidiary, Plex, Inc., for access into, and delivery of video

18   content and the sales of subscription into the United States on the Plex streaming service. As such,

19   both Defendants acted jointly and in concert to commit the violation alleged[.]" *See* FAC, at ¶ 8.

20   First, Plaintiff's argument is unpersuasive because "<u>**mere 'bare bones' assertions of minimum**</u>

21   <u>**contacts with the forum or legal conclusions unsupported by specific factual allegations will**</u>

22   <u>**not satisfy a plaintiff's pleading burden**</u>." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir.

23   2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations or "formulaic

24   recitation of the elements" of a claim are not entitled to the presumption of truth); *In re Gilead Scis.*

25   *Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) ("Nor is the court required to accept as true

26   allegations that are ... unwarranted deductions of fact, or unreasonable inferences."). Second,

27   Plaintiff's conclusory allegations are false as Plex, Inc. is the sole owner of the Plex Solution. *See*

28   Declaration of Angelo Spenillo, at ¶ 21. Third, Plaintiff's conclusory allegations are false because

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1  Plex Inc. is not a subsidiary of Plex GmbH. *See* Declaration of Angelo Spenillo, at ¶ 8. Fourth, even

2  assuming, *arguendo*, Plaintiff's conclusory allegations are true (which they are not), courts have

3  continuously dismissed this argument. *See Nike, Inc.,* 793 F.3d 1059, 1073 ("total ownership and

4  shared management personnel are alone insufficient to establish the requisite level of control.")

5  (*citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir.2003));

6  *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The

7  mere fact of sole ownership and control does not eviscerate the separate corporate identity that is

8  the foundation of corporate law."); *Sun Grp.,* 2024 WL 2193311, at *12 ("a parent corporation may

9  be directly involved in the activities of its 'subsidiaries without incurring liability so long as that

10  involvement is 'consistent with the parent's investor status.'") (*quoting Doe v. Unocal Corp.,* 248

11  F.3d 915, 926 (9th Cir. 2001)); *In re California Gasoline Spot Mkt. Antitrust Litig.,* No. 20-CV-

12  03131-JSC, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021) ("[A] parent corporation may be

13  directly involved in financing and macro-management of its subsidiaries ... without exposing itself

14  to a charge that each subsidiary is merely its alter ego.") (*quoting Nike, Inc.,* 793 F.3d 1059, 1074));

15  *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate

16  veil, however, is the rare exception, applied in the case of fraud or certain other exceptional

17  circumstances"). Even in the context of shared websites between affiliated domestic and foreign

18  entities, this is not enough to satisfy the alter-ego test. *See Reynolds v. Binance Holdings Ltd.,* 481

19  F. Supp. 3d 997, 1006 (N.D. Cal. 2020) ("'When confronted with entities' shared websites in the

20  alter ego context, courts have held this does not reflect an 'abuse of the corporate form and existence

21  of an alter ego relationship.'") (*quoting Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104,

22  1139 (C.D. Cal. 2015)); *NetApp, Inc. v. Nimble Storage, Inc,* 2015 WL 400251, at *7 (N.D. Cal.

23  Jan. 29, 2015) ("In addition, the allegation that [entities] share a website and email is an

24  administrative ... function. Shared administrative functions are not necessarily indicative of an alter

25  ego relationship.");*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.,* No. 5:20-CV-04184-EJD, 2020

26  WL 6290377, at *7 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg.

27  Co., Ltd*, No. 20-17237, 2021 WL 3783096 (9th Cir. Aug. 26, 2021) ("Moreover, separate corporate

28  entities presenting themselves 'as one online does not rise to the level of unity of interest required

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

to show companies are alter egos.'") (*quoting Corcoran v. CVS Health Corp.,* 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016)). Fifth, Plaintiff does not allege any of the remaining eight *Sun Grp.* factors exist, nor can he. *See* Declaration of Angelo Spenillo, at ¶¶ 9-21. Accordingly Plaintiff fails to satisfy the first factor of the alter-ego test.

## B. Disregarding the separate identities would not result in injustice or fraud

In order to satisfy the second prong of the alter-ego test, plaintiff must show that the foreign entity was structured "in such a way that it was designed as to avoid subjecting it to liability within the United States." *Pangang Grp. Co.,* 879 F. Supp. 2d 1052, 1068 ; *see also Oracle Am., Inc. v. Appleby*, No. 16-CV-02090-JST, 2016 WL 5339799, at *7 (N.D. Cal. Sept. 22, 2016) ("California courts generally require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding"). Furthermore, "California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable circumstances that warrants application of the alter ego doctrine." *Smith v. Simmons,* 638 F. Supp. 2d 1180, 1192 (E.D. Cal. 2009), *aff'd,* 409 F. App'x 88 (9th Cir. 2010) (*citing VirtualMagic Asia, Inc.,* 99 Cal.App.4th 228, 245, 121 Cal.Rptr.2d 1 (2002) ("Alter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and 'difficulty in enforcing a judgment or collecting a debt does not satisfy this standard'"); *Sonora Diamond Mid–Century Ins. Co. v. Gardner,* 9 Cal.App.4th 1205, 1213, 11 Cal.Rptr.2d 918 (1992) (same). Here, Plex GmbH was strategically incorporated in Switzerland for business purposes. *See* Declaration of Angelo Spenillo, at ¶ 20. Plaintiff also entirely fails to allege evidence of bad faith or fraud by Plex GmbH. While Plaintiff alleges throughout the FAC that Plex violated the VPPA and California Civil Code § 1799.3, this does not satisfy the heightened pleading requirement. *See United States v. Rosenthal,* No. CR 02-00053 CRB, 2007 WL 2013524, at *2 (N.D. Cal. July 6, 2007) ("'[B]ad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will.") (*quoting United States v. Manchester Farming Partnership,* 315 F.3d 1176, 1182 (9th Cir.2003)); *Pickman v. Am. Exp. Co.,* No. C 11-05326 WHA, 2012 WL 1357636, at *3 (N.D. Cal. Apr. 17, 2012) (same). Accordingly,

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    Plaintiff fails the alter-ego test and  fails to establish personal jurisdiction over Plex GmbH.

2    **VI.    THIS COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE 12(B)(6) BECAUSE PLAINTIFF CONSENTED TO THE ALLEGED CONDUCT**

3

4            As an initial matter, as explained, *supra*,  Plaintiff gave Plex Consent for the conduct alleged

5    in the FAC which is fatal as a matter of law to his claim for violations of the VPPA and California

6    Civil Code § 1799.3. *See* Declaration of Ricardo Castro, *generally*. Pursuant to 18 U.S.C. §

7    2710(b)(2)(B)[2], a video tape service provider may disclose personally identifiable information

8    concerning any consumer to any person with the informed, written consent (including through an

9    electronic means using the internet) of the consumer that (i) is in a form distinct and separate from

10   any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the

11   consumer is given at the time the disclosure is sought or is given in advance for a set period of time,

12   not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and

13   (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner,

14   for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at

15   the consumer's election. *Id*. Similarly, California Civil Code § 1799.3 provides that "no person

16   providing video recording sales or rental services shall disclose any personal information or the

17   contents of any record, including sales or rental information which is prepared or maintained by that

18   person, to any person, other than the individual who is the subject of the record, without the written

19   consent of that individual." *Id*. As discussed, *infra*, the Sign-In Wrap Agreement satisfies the

20   requirements under the VPPA and California Civil Code § 1799.3 for permissible disclosure.

21   **A.    The Sign-In Wrap Agreement satisfies the VPPA requirements for disclosure**

22   ---

     [2] The statute was amended in 2011 to "clarify that a video tape service provider may be obtained

23   through the Internet." H.R. Rep. 112-312 (2011). At the time the amendment passed, Congress was

24   aware that internet companies like Facebook "track, retain, market and mine information on their

25   customers," and the legislative history makes clear that the amendment was intended "to provide a

26   seamless process to share video viewing habits on social media (like Facebook) in the same manner

27   currently in use for music, books and news articles." *Id*; *see also Bernardino v. Barnes & Noble

28   Booksellers, Inc*., No. 17CV04570LAKKHP, 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11, 2017).

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**1.** <u>The first prong is satisfied because Plaintiff entered into the Sign-In Wrap Agreement and Consented to the Privacy Policy</u>

The first requirement for permissible disclosure under VPPA is satisfied because Plaintiff Consented to Plex's Privacy Policy, which as shown in Exhibit B, is in a form that is separate and unique from the TOS and all other forms setting forth other legal or financial obligations of the Plaintiff. *See* Declaration of Ricardo Castro, *generally*; Ex. B. The Privacy Policy sets forth Plex's personal information processing policy which explains how Plex collects, uses, and shares personal data about a Plex user, and also when and how a Plex user can control what Plex do with it. *Id*., at ¶¶ 7, 35; Ex. B. The Privacy Policy applies to the data collected through products and services provided by Plex, including the Plex Solution. *Id*. At all times since Plaintiff initially entered into the Sign-In Wrap Agreement in or around April 2020, the Privacy Policy describes the information Plex collects, **which includes videos viewed**, as illustrated, in part, below:

> F. **Data Related to Third-Party Content**. When you use the Services to watch, listen to, or record content from a third-party content provider or source such as any officially supported Third-Party Content that Plex streams to Plex apps, trailers and extras from Internet Video Archive (IVA), or use of our Live TV and DVR service, we may collect information related to that media interaction. For example, we may collect what program or movie you are watching and when, your interaction with any static or video advertising, etc. We may also collect your device information and device location, for example, by using your IP address or by asking for your zip code. We may use this information to run and improve our Services, provide advertising and marketing to you, as well as share anonymous or aggregated versions of the data with third parties.

*Id*.; Ex. B. At all times since Plaintiff initially entered into the Sign-In Wrap Agreement in or around April 2020, the Privacy Policy describes who Plex shares a user's  personal information with, as illustrated, in part, below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

> H. Plex may share Collected Information as expressly set forth in this Privacy Policy, including the following limited situations:
>
> i. With third parties that assist us in providing you with our Services, such as payment processors, business and analytics providers, content providers, marketers, and cloud service providers, but we require our third parties to only use your information for the purposes of providing the services requested of them and in accordance with this Privacy Policy.
>
> ii. If we believe that the disclosure is reasonably necessary to (a) satisfy an applicable law, regulation, legal process, or enforceable governmental request; or (b) protect or defend the safety, rights, or property of Plex, the public, or any person.
>
> iii. In connection with a merger, acquisition, bankruptcy, dissolution, reorganization, or similar transaction or other proceeding involving Plex that includes or requires the transfer of the information.
>
> iv. If your information is a part of a set of non-private, aggregated, anonymized, or otherwise non-personal information, such as anonymized and / or aggregated usage statistics and viewing trends.
>
> v. With third parties to improve and deliver advertising to you on our behalf.
>
> vi. If you request or consent to our sharing of Collected Information with a third party.

12

13

14

15

16

17

18

*Id*; Ex B. Furthermore, as illustrated in the Facebook Userflow within Exhibit D, separate and unique from any other legal or financial obligations, Plex again disclosed that "by continuing, Plex will receive ongoing access to the information you share and **Facebook will record when Plex access it**" *See* Declaration of Ricardo Castro, at ¶ 11, Ex. D. Accordingly, by creating a Plex account via the "Continue with Facebook" button, Plaintiff consented to Facebook/Meta receiving Plaintiff's personal information. Here, Plaintiff alleges in the FAC that Plex:

19

20

21

22

23

> knowingly disclosing personal information…and personally identifiable information…including the names of specific videos and video services Plaintiff and Class Members requested and obtained…to Meta without their consent. Specifically, Plex installed computer code on its website called the "Meta Tracking Pixel," which tracks and records Plaintiff and Class Members' private video consumption. Behind the scenes of many key plex.tv webpages—and unbeknownst to video viewers—this code collects Plaintiff and Class Members' video-consumption history and discloses it to Meta without their consent.

24

25

26

27

28

*See* FAC, at ¶ 5. Notwithstanding, as the above screenshots clearly and unambiguously shows, Plex's Privacy Policy and the Facebook Userflow explicitly puts Plaintiff on notice that Plex could collect, use, and/or transmit Plaintiff's personal information to Facebook/Meta and by proceeding to sign up with Plex and agreeing to its TOS and Privacy Policy, Plaintiff provided Consent for the alleged actions that gave rise to this action. *See* Declaration of Ricardo Castro, *generally,* Ex. B, D.

**2.** <u>The second prong is satisfied because Plaintiff never withdrew Consent</u>

The second prong is satisfied because as discussed, *supra*, by entering into the Sign-In Wrap Agreement, Plaintiff provided Consent for Plex to collect, use, and/or transmit Plaintiff's personal information to Facebook/Meta. *Id*. **In California withdrawal of consent requires an "unequivocal act or statement of withdrawal[.]"** *United States v. Kubbo*, 17 F. App'x 543, 545 (9th Cir. 2001); *see also United States v. Aguirre*, No. 1:21-MJ-00094-SAB-1, 2023 WL 5155157, at *17 (E.D. Cal. Aug. 10, 2023) (same). **Here, Plaintiff never notified Plex that he withdrew consent, requested to withdraw consent, or opted-out of the Privacy Policy.** *See* Declaration of Ricardo Castro, *Id*. at ¶¶ 36-39. Rather, the first sentence of the TOS clearly and conspicuously provides that "by using or otherwise accessing the Plex website, mobile, or web applications(s), or any  related Plex service(s)…you accept and agree to the following Terms of Service", which incorporates by reference Plex's Privacy Policy. *Id*., Ex A. The Facebook Userflow also clearly and conspicuously provides that that "**by continuing**, Plex will receive ongoing access to the information you share and **Facebook will record when Plex access it**" *See Id.,* at  ¶ 11, Ex. D. Accordingly, each time Plaintiff signed into his Plex account and used the Plex Solution he reaffirmed his Consent regarding Plex's alleged practice of collecting, using and sharing his personal information with Facebook.

**3.** <u>The third prong is satisfied because the Privacy Policy provided Plaintiff instructions in a clear and conspicuous manner on how to withdraw Consent.</u>

Finally, the third prong for consent under the VPPA is satisfied because at all times since Plaintiff initially entered into the Sign-In Wrap Agreement in or around April 2020, the Privacy Policy provides Plaintiff, in a clear and conspicuous manner, the ability to opt-out of personal information being provided to third-parties, as illustrated, in part, below:

## Use, Processing, and Sharing of Your Information

A. Plex processes and uses Collected Information with your consent, you can withdraw your consent by updating your privacy settings or closing your account. Plex also processes Collected Information when it needs to do so to fulfill a contract with you to provide you services, in its legitimate interest to aid in developing and improving the services, or when required by law. If you do not want to provide certain information to us in order to fulfil our agreement with you to provide the services, we may not be able to provide you the fullest version of our services.

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1    *Id.*; Ex. B.

### Your Choices, Including Opt-Out Options

You have the following choices regarding how we and third parties use certain information collected from or about you. We are committed to complying with the Digital Advertising Alliance ("DAA") Self-Regulatory Principles for Online Behavioral Advertising and the DAA Application of Self-Regulatory Principles for the Mobile Environment.

A. **Opt-Out from Promotional Communications.**

   i. You may opt out of receiving the marketing newsletter from us by accessing your account, selecting Settings on the Plex website, and clicking "unsubscribe" in the Newsletter section. You may also opt out of certain promotional communications by clicking the "unsubscribe" link in a particular promotional communication. Please note that you cannot opt out from receiving all communications from us, including administrative messages, service announcements, and messages regarding the terms and conditions of your account.

   ii. You can choose to receive push notifications from Plex on your device. If you do not wish to receive push notifications, you can use your device's settings to turn them off.

B. **Opt-Out Options Page**. Please visit the Opt-Out Options page to understand the options available to you regarding Third-Party Online Behavioral or Interest-Based Advertising and any specific third-party advertising companies' opt out information.

C. **Options for Sharing What You Watch**. We may ask for your consent to have Plex share your third-party media consumption information together with your personal information with our content programmers, service providers, and other third parties. If we have asked for your consent, we will provide you with a way to view or change your consent preference by updating your account settings.

D. **Opt-Out of Playback Statistics**. You may choose to opt-out of sharing the playback statistics for Personal Local Content that you store on your personal Plex Media Server by updating your Privacy Preferences.

E. **Opt-Out for Digital Advertising**. Plex may also use third-party advertising companies to serve ads, which may, directly or indirectly, collect or use information about user visits to websites and mobile app usage over time and across non-affiliated websites and mobile apps to display advertisements more tailored to users' interests on this browser or device, and those browsers or devices associated with it. A user can visit www.aboutads.info/choices and/or download the appropriate version the AppChoices app at http://www.youradchoices.com/appchoices if a user wishes to learn more about this practice or would like to know more about his/her choices regarding that activity by companies participating in those choice tools. Please visit the Opt-Out Options for Third-Party Advertising page for any specific third party advertising companies' opt-out information.

F. **Withdraw Consent**. You can withdraw your consent to our processing of personal information by updating your privacy settings, or closing your account.

*Id.*; Ex. B. As explained, *supra*, clear and conspicuous notice "may be done by using a contrasting font color…or through the use of all capital letters, both of which may 'alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage.'" *Rocha*, 2024 WL 393486, at *4 (*quoting Berman*, 30 F.4th 849, 856). Here, Plaintiff, in a conclusory manner, alleges that "at no point did Defendants give consumers the opportunity to withdraw from ongoing disclosures of their PII in a clear and conspicuous manner[.]" *See* FAC, at ¶ 62. Notwithstanding, as illustrated by the screenshot above, there can be no doubt Plex provided

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

Plaintiff notice and instructions on how to withdraw from ongoing disclosures, Furthermore, the opt-out notice and instructions is clear and conspicuous as it is in large font, bolded, and hyperlinked in orange. Accordingly, Plex received statutory consent under the VPPA.

## B.   The Sign-In Wrap Agreement  satisfies the California Civil Code § 1799.3 permissible disclosure requirements

The requirement for permissible disclosure under California Civil Code § 1799.3 is satisfied because, as explained, *supra*, Plex received Plaintiff's written Consent. Plaintiff, in a conclusory manner, alleges that "Plex failed to meet the consent requirements…because it did not obtain…written consent[.]" *See* FAC, at ¶ 53. Plaintiff's arguments is unpersuasive however because as explained and illustrated by the screenshots above, Plex's Privacy Policy and the Facebook Userflow explicitly put Plaintiff on notice that it could collect, use, and/or transmit Plaintiff's personal information to Facebook/Meta and by proceeding to sign up with Plex and agreeing to its TOS and Privacy Policy, Plaintiff provided Consent for the alleged actions that gave rise to this action. *See* Declaration of Ricardo Castro, generally. Furthermore, the language of § 1799.3 is "notably narrower in certain respects" to the VPPA in that it does not contain the additional three factors as set forth in 18 U.S.C. § 2710(b)(2)(B). *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (analyzing California Civil Code § 1799.3). However,  to the same extent "the language of § 1799.3 is similar to that of the VPPA" in that the VPPA expressly provides written consent can be given "through an electronic means using the internet." *See* 18 U.S.C. § 2710(b)(2)(B)(i); *see also Martin,* 657 F. Supp. 3d 277, 285. Accordingly, Plaintiff cannot in good faith argue that written consent cannot be provided through electronic means, especially in today's modern times. Accordingly, Plex received statutory consent under California Civil Code § 1799.3.

## VII.   THE COURT SHOULD STRIKE CLASS ALLEGATIONS PURSUANT TO RULE 12(f) BECAUSE THE PROPOSED CLASS DEFINITIONS ARE TOO BROAD

Pursuant to Fed. R. Civ. P. 12(f) a court "may strike from any pleading ... any redundant, immaterial, impertinent, or scandalous mater." Pursuant to Fed. R. Civ. P. 23(d)(1)(D), a court may require "that the pleadings be amended to eliminate allegations about representation of absent persons." Pursuant to Fed. R. Civ. P. 23(c)(1), "as soon as practicable after the commencement of an action brought as

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

a class action, the court shall determine by order whether it is to be so maintained." "District courts have the authority to strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified." *Larry Pearl v. Coinbase Global, Inc*., No. 22-CV-03561-MMC, 2024 WL 3416505, at *2 (N.D. Cal. July 15, 2024) (*citing Kamm v. California City Dev. Co.,* 509 F.2d 205, 207 n.3, 212–14 (9th Cir. 1975)). "Several district courts in this district have found that it was appropriate to strike an overly broad proposed class at the motion to dismiss stage." *Baton v. Ledger SAS,* No. 21-CV-02470-EMC, 2024 WL 3447511, at *15 (N.D. Cal. July 16, 2024) (listing cases); *see also Quinalty v. FocusIT LLC,* No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *3 (D. Ariz. Jan. 30, 2024); *In re Cupertino Electric Inc. Litigation*, Case 5:23-cv-04007-BLF, ECF No. 69 (N.D. Cal. Aug. 14, 2024). Here, as an initial matter, Plaintiff is unable to certify a class because Plaintiff's proposed class definitions are too broad and Plaintiff does not have standing to bring claims on behalf of the proposed class members. As the Supreme Court has held, "every class member must have Article III standing in order to recover individual damages… 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2016) (*quoting Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)). Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *Id.* "That a suit may be a class action ... adds nothing to the question of standing[.]" *Spokeo v. Robins,* 578 U.S. 330, 338, n. 6 (2016) (citations omitted). "Plaintiffs in a putative class action who lack standing to bring certain claims cannot litigate those claims on behalf of those not present." *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-4457 SC, 2013 WL 791457, at *6 (N.D. Cal. Mar. 4, 2013). Here, Plaintiff's class definitions are too broad because it encompasses class members that "created a Plex account, or signed up in to Plex, with a Google, Facebook, or Apple Account[.]. *See* FAC, at ¶¶ 69-70. Notwithstanding, as explained above Plaintiff alleges that he "created a Plex account using the 'Continue with Facebook' button." *See id.*, at ¶ 64. Based on the cases listed above, Plaintiff does not have standing to represent a class of Plex users that created a Plex account via a method other than Facebook. As such, Plaintiff's proposed class definitions are too broad. Also, as explained, *infra*, Plaintiff is unable to certify a class under Fed. R. Civ. P.  23.

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

"Certification under Rule 23(b)(1)(A) is… not appropriate in an action for damages." *Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1180, 1193 (9th Cir.2001). Here, the primary relief sought is monetary damages. To be sure, Plaintiff brings a Two Count Complaint seeking "statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c)", and "statutory damages of $500 for each violation of the Cal. Civ. Code §1799.3" and "punitive damages[.]" *See* FAC, at ¶¶ 87, 96; *see also* Prayer For Relief. As such, Plaintiff cannot certify a class under Fed. R. Civ. P.  23(b)(1)(A).  Furthermore, certification under Rule 23(b)(1)(B) is only appropriate if "the case involves a 'fund'[.]" As such, Plaintiff cannot certify a class under Fed. R. Civ. P.  23(b)(1)(B) because this action does not include a fund. *See* FAC, *generally*.

Certification under Fed. R. Civ. P.  23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *See* Advisory Committee Notes, 39 F.R.D. 69, 102 (1966); *see also Lyon v. United States Immigr. & Customs Enf't*, 300 F.R.D. 628, 642 (N.D. Cal. 2014) ("Claims for individualized relief do not satisfy Rule 23(b)(2)") (citations omitted). Here, Plaintiff will be unable to satisfy Rule 23(b)(2) because, as explained above, the primary relief sought is damages. Furthermore, each claim for relief is individualized because Plaintiff alleges he and each class member are entitled to statutory damages under the VPPA and Cal. Civ. Code §1799.3 "for **each violation**." Accordingly, based on Plaintiff's own standard, each class member will need to provide evidence of each visit to the Plex Solution to prove alleged damages, which drastically varies per class member. Furthermore, Plaintiff admits that each class member had different personal information allegedly compromised, including their "unique, page-specific, unencrypted Facebook ID ['FID']." *See* FAC, at ¶ 34. As such, to prove that the video watching history the Meta Pixel allegedly collected is personally identifiable, each class member will need to provide individual proof their "Facebook profile is publicly accessible and includes sufficient identifying information", including "name, gender, birthday, place of residence,

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

career, education history, photographs, and content of posts", and "[c]ontrol [of] who can see [their] Facebook page…(**private profiles may not be viewable even if someone has the FID**)." *See Heerde v. Learfield Commc'ns, LLC,* No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (dismissing VPPA class action).[3] As such, damages are not capable of computation by means of an objective standard. Similarly, certification under Fed. R. Civ. P. 23(b)(3) is only appropriate if questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Courts must therefore separate the issues subject to "generalized proof" from those subject to "individualized proof. "*AdTrader, Inc. v. Google LLC,* No. 17-CV-07082-BLF, 2020 WL 1922579, at *15 (N.D. Cal. Mar. 24, 2020). Where an individualized causation issue would predominate over a case, courts have denied class certification. *Poulos v. Caesars World, Inc*., 379 F.3d 654, 658 (9th Cir. 2004); *Tourgeman v. Collins Fin. Servs., Inc*., No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *16 (S.D. Cal. Oct. 21, 2011). The presence of class members who suffered no injury at all may defeat predominance. *Ngethpharat v. State Farm Mut. Ins. Co*., 339 F.R.D. 154, 169 (W.D. Wash. 2021). Here, as explained above generalized proof could not resolve a significant aspect of the case in a single adjudication; rather, individual proof is required. Because, as Plaintiff admits, the circumstances of each class member is "unique", it would be practically impossible that the outcome as to the class would be consistent with that of the cases if adjudicated individually.

## VIII.   THE  COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE 12(b)(6) BECAUSE THE CLASS ACTION WAIVER IS ENFORCEABLE

---

[3] A violation of the VPPA or California Civil Code § 1799.3 requires disclosure of personally identifiable information. **Plaintiff fails to allege his FID is personally identifiable** because he fails to list the factors in *Heerde*. *See* FAC, *generally.* Accordingly, Plaintiff's claims must be dismissed.

At the time Plaintiff initially entered into the Sign-In Wrap Agreement in or around April 2020, Plex's TOS included a Class Action Waiver which bars his claims. *See* Declaration of Ricardo Castro, at ¶ 29; Ex. A. It "is well-established that parties can agree to class action waivers." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011). In California, "class action waivers are not unconscionable and are enforceable." *Lewis v. UBS Fin. Servs. Inc.,* 818 F. Supp. 2d 1161, 1166 (N.D. Cal. 2011); *see also Sheppard v. Staffmark Inv., LLC,* No. 20-CV-05443-BLF, 2021 WL 690260, at *7 (N.D. Cal. Feb. 23, 2021) (same). "[T]he enforceability of a procedural device, like a class action waiver, should be resolved… by way of a motion to dismiss." *Roman v. Spirit Airlines, Inc.,* 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020), *aff'd,* No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021). Here, by entering into the Sign-In Wrap Agreement, Plaintiff consented to the TOS and Class Action Waiver, which provides, in pertinent part:

> You and Plex agree to only bring claims arising from this TOS on an **individual basis** and not as a plaintiff or a class member in any purported class or representative action or proceeding. Unless you and Plex agree otherwise, more than one person's or party's claims may not be consolidated.

(the "Class Action Waiver"). *See* Declaration of Ricardo Castro, at ¶ 30; Ex. A. Where "plaintiff waived [his] right to participate in a class in court or arbitration, the Court…dismisses plaintiff's class action claims." *Fontaine* v. *Resurgent Capital Services, Inc*. 540 F. Supp. 3d 353, 362 (W.D.N.Y. May 19, 2021) (internal quotation omitted); *see also Ahlstrom v. DHI Mortg. Co. GP, Inc.,* No. 17-CV-04383-BLF, 2018 WL 6268876, at *4 (N.D. Cal. Nov. 30, 2018) ("Finally, the Court finds it appropriate to dismiss the case without prejudice. The MAA includes a valid class action waiver[.]"); *Hovis v. Homeaglow, Inc.,* No. 323CV00045BTMWVG, 2023 WL 5003583, at *5 (S.D. Cal. Aug. 4, 2023) (same); *Villamar v. Clean Harbors Env't Servs. Inc.,* No. 222CV03966MEMFJEMX, 2022 WL 4465549, at *3 (C.D. Cal. Sept. 23, 2022) (same). Here, based on above, Plaintiff cannot maintain a class action.

## IX.   THE COURT SHOULD DISMISS THIS ACTION PURSUANT TO RULE 12(B)(3) BECAUSE THE ARBITRATION AGREEMENT IS ENFORCEABLE

### A.   The Arbitration Agreement is Governed by the Federal Arbitration Act.

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

34254817.1:12373-0010

-22-

DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

At the time Plaintiff initially entered into the Sign-In Wrap Agreement in or around April 2020, Plex's TOS included an Arbitration Agreement, which provides, in pertinent part:

> ARBITRATION. You agree that **all disputes** between you and Plex…with regard to your relationship with Plex, including, without limitation, disputes related to this TOS, your use of the Plex Solution, and/or rights of privacy and/or publicity, will be resolved by binding, individual arbitration… **any disputes** arising with respect to this TOS between you and Plex…shall be referred to an arbitrator affiliated with the Judicial Arbitration and Mediation Services, Inc. ("JAMS")… Arbitration **shall be conducted under the rules then prevailing of JAMS/ENDISPUTE Streamlined Arbitration Rules and Procedures in effect at the time of filing of the demand for arbitration**…Neither you nor Plex will participate in a class-wide arbitration for any claims covered by this TOS. This dispute resolution provision will be **governed by the Federal Arbitration Act ["FAA"]**.

(the "Arbitration Agreement"). *See* Declaration of Ricardo Castro, at ¶¶ 29,31; Ex. A. "The U.S. Supreme Court has held that, through the FAA, 'Congress declared a national policy favoring arbitration.'" *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 214 (1985). Pursuant to Section 2 of the FAA, a written provision in any contract evidencing a transaction "involving commerce" to settle by arbitration a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable, and enforceable. 9 U.S.C. § 2. As the U.S. Supreme Court has made clear, the "involving commerce" language within Section 2 of the FAA is broad, and does not mean "in commerce" but rather "affecting commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-274 (1995). "In Commerce" includes "the generation of goods and services for interstate markets and their transport and distribution to the consumer." *Id.*, at 273. Furthermore, pursuant to Section 4 of the FAA, " a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  "Upon being satisfied that the making of the agreement for arbitration or the failure to

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1  comply therewith is not in issue, the court shall make an order directing the parties to proceed to

2  arbitration in accordance with the terms of the agreement." *Id*. Here, the Plex Solution involves

3  commerce and the FAA applies because Plex allows users to view or otherwise access text, graphics,

4  photos, sounds, and videos in the form of news reports, videos, and music over the Internet. *See*

5  Declaration of Ricardo Castro, at ¶ 5. As such, all of Plaintiff's claims must be sent to arbitration.

6  **B.      The Arbitration Agreement encompasses Plaintiff's claims**

7          As the U.S. Supreme Court has made clear, pursuant to the FAA, "any doubts concerning

8  the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l*

9  *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Furthermore, as explained, *supra*, this

10 Court in *Miller* held that Plex's Arbitration Agreement is binding and enforceable and therefore

11 granted Plex's motion to compel arbitration. *See Id*., Case No. 5:22-cv-5015-SVK, ECF No. 32, pg.

12 22-23. In doing so, this Court in *Miller* first held "unlike the arbitrability of claims in general,

13 whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless

14 the parties clearly and unmistakably provide otherwise.'" *Id*., at pg. 22 (*quoting Mohamed v. Uber*

15 *Techs., Inc*., 848 F.3d 1201, 1208 (9th Cir. 2016)) (citation omitted). This Court in *Miller* held

16 "Plex's TOS include a delegation clause by virtue of its incorporation by reference of the JAMS

17 Streamlined Arbitration Rules" and "**the arbitration agreement clearly and unmistakably**

18 **delegates questions of arbitrability to the arbitrator through its incorporation of the JAMS**

19 **Streamlined Arbitration Rules & Procedures**." *Id. (citing Brennan*, 796 F.3d at 1130-32) (holding

20 that incorporation of AAA rules constituted clear and unmistakable evidence that the parties agreed

21 to arbitrate arbitrability); *White v. Ring LLC*, No. 22-cv-6909, 2023 WL 1097554, at *6 (C.D. Cal.

22 Jan. 25, 2023) (same, as to incorporation of JAMS rules). Here, all of Plaintiff's claims encompasses

23 the Arbitration Agreement because it covers "all disputes" and "any disputes" relating to the use of

24 the Plex Solution, including questions of arbitrability. Accordingly, given that the Arbitration

25 Agreement covers all of Plaintiff's claim, this matter should be dismissed and be sent to arbitration.

26 *See Castaldi v. Signature Retail Servs., Inc.,* No. 15-CV-00737-JSC, 2016 WL 7042991, at *1 (N.D.

27 Cal. Jan. 20, 2016) ("Courts in this District regularly dismiss actions after granting motions to

1   compel arbitration where all…claims were subject to arbitration.") (listing cases).

2   **X.      ALTERNATIVELY PURSUANT TO RULE 12(B)(3) THIS MATTER SHOULD BE TRANSFERRED TO DELAWARE IF THE AMENDED TOS ARE CONTROLLING**

3

4           As explained, *supra*, the TOS is controlling because consistent with *Stover* and *Nguyen*, Plex

5   did not notify its existing users, including Plaintiff, of the April 11, 2024 update to its TOS (*see*

6   Declaration of Ricardo Castro, ¶42) and Plaintiff defines both the Nationwide Class and California

7   Subclass as those users who used the Plex Solution up and until March 2, 2024, which is prior to

8   the amendment (*See* FAC, at ¶¶ 69-70). Notwithstanding, if this Court determines the Amended

9   TOS is controlling (which it should not), venue is still improper and this Court should transfer this

10  action to the United States District Court for the District of Delaware. Pursuant to 28 U.S.C. §

11  1404(a), "a district court may transfer any civil action to any other district or division where it might

12  have been brought or to any district or division to which all parties have consented." *Id*. 28 U.S.C.

13  § 1404(a) "permits transfer…to any other district to which the parties have agreed by contract or

14  stipulation" and "a forum-selection clause may be enforced by a motion to transfer under § 1404(a)."

15  *Wang,* 2019 WL 13201949, at *5 (*quoting Atlantic Marine Const. Co. v. U.S. Dist. Court*, 571 U.S.

16  49, 59 (2013)),   Here, the Amended TOS contains a forum selection clause, which provides, in part:

17          Subject to the foregoing informal dispute resolution, **any action** arising from or in any way related to the Plex Solution, your use of or access to the Plex Solution, or
18          this TOS **will be brought** in the courts presiding in the state of Delaware, and all parties to this TOS expressly agree to be subject to the jurisdiction of such courts.

19

20  *See* Declaration of Ricardo Castro, at ¶ 33; Ex. E. Here, the forum selection clause overs "any action"

21  relating to the use of the Plex Solution, including Plaintiff's claims which give rise to this action.

22  Accordingly, if this Court determines the Amended TOS is controlling (which it should not) this

23  Court should transfer this action to the United Stated District Court for the District of Delaware.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

34254817.1:12373-0010

**DEFENDANT PLEX, INC.'S AND GMBH'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

WOOD, SMITH, HENNING & BERMAN LLP
501 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE 619.849.4900 ♦ FAX 619.849.4950

1

**XI.     CONCLUSION**

2

WHEREFORE, Plex requests this court dismiss this matter in its entirely and strike class

3

allegations; or alternatively compel arbitration; or alternatively transfer this matter to the United

4

Stated District Court for the District of Delaware. Plex seeks such further relief as appears lawful,

5

equitable, and just.

6

7

8

DATED:  August 19, 2024                     **WOOD, SMITH, HENNING & BERMAN LLP**

9

10

By:  _____
11                                    /s/ Jacob P. Wilson
                                      JACOB P. WILSON
12                                    CHRISTOPHER J. SEUSING
                                      (*Pro Hac Vice Admission Forthcoming*)
13                                    SEAN V. PATEL
                                      (*Pro Hac Vice Admission Forthcoming*)
14                                    ***Attorneys for Defendants, PLEX, INC.,***
                                      ***AND PLEX GMBH***

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="text-align:left; writing-mode: vertical;">WOOD, SMITH, HENNING & BERMAN LLP<br>501 WEST BROADWAY, SUITE 1200<br>SAN DIEGO, CALIFORNIA 92101<br>TELEPHONE 619.849.4900 ♦ FAX 619.849.4950</div>

1

# CERTIFICATE OF SERVICE

2

I hereby certify that on this 19 day of August, 2024, I electronically filed the foregoing

3 **DEFENDANT PLEX, INC.'S AND PLEX GMBH'S NOTICE OF MOTION TO DISMISS**

4 **FIRST AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS, OR IN THE**

5 **ALTERNATIVE TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS OR**

6 **TRANSFER VENUE; AND MEMORANDUM OF POINTS AND AUTHORITIES** with the

7 Clerk of the Court using the CM/ECF system which will send notification of such filing to the

8 following:

| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16 | Neal J. Deckant, Esq.<br>Joshua R. Wilner, Esq.<br>Joshua B. Glatt, Esq.<br>**BURSOR & FISHER, P.A.**<br>1990 North California Blvd., Suite 940<br>Walnut Creek, CA 94596<br>Telephone: (925) 300-4455<br>Facsimile: (925) 407-2700<br>ndeckant@bursor.com<br>jwilner@bursor.com<br>jglatt@bursor.com | ***ATTORNEYS FOR PLAINTIFF*** |
|---|---|---|

17

18                                      */s/ Teresa Cabanday*
                                        Teresa Cabanday

19
20
21
22
23
24
25
26
27
28

34254817.1:12373-0010                                    -27-
**CERTIFICATE OF SERVICE**