**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Joshua R. Wilner (State Bar No. 353949)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          jwilner@bursor.com
          jglatt@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LEE, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>    v.<br><br><br> PLEX, INC. AND PLEX GMBH,<br><br>                          Defendants. | Case No. 5:24-cv-02386-EKL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND STRIKE CLASS ACTION ALEEGATIONS**<br><br>Date:   October 30, 2024<br>Time:  10:00 a.m.<br>Courtroom:  7<br>Judge:  Hon. Eumi K Lee |

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    PLAINTIFF WAS NOT ON NOTICE OF ANY TERMS OF SERVICE OR PRIVACY POLICY .........................................................................................................2

    A.    Defendants' "Create Your Free Account Page" Does Not Provide Sufficient Notice Of The Terms Of Service Or Privacy Policy .................................2

    B.    The "Continue With Facebook" Screen Does Not Require Consent To The Terms Of Service Or Privacy Policy—And Plaintiff In Fact Did Not Consent ..........................................................................................................8

II.   DEFENDANT PLEX GMBH IS PROPERLY NAMED IN THIS ACTION ...................10

    A.    Plex GmbH Is Subject To General Jurisdiction .......................................................10

    B.    This Court Has Specific Personal Jurisdiction Over Plex GmbH Under Fed. R. Civ. P. 4(k)(2) .................................................................................10

        1.    Plex GmbH, As Joint Operator Of The Website, Purposefully Availed Itself to the Benefits of The Forum ..................................................11

        2.    Exercising Jurisdiction Comports With Due Process Because Defendant Has Sufficient Minimum Contacts With California ..................13

III.  PLAINTIFF DID NOT CONSENT TO THE ALLEGED CONDUCT ...........................15

    A.    Plaintiff Was Not On Notice Of Defendants' Privacy Policy ..................................16

    B.    Defendants' Privacy Policy Is Not Complaint With The VPPA ..............................16

IV.   DEFENDANTS' ATTEMPT TO STRIKE CLASS ALLEGATIONS ARE PREMATURE................................................................................................................18

V.    THE ARBITRATION PROVISION AND CLASS ACTION WAIVER IN THE 2020 TERMS CANNOT BE ENFORCED HERE.......................................................22

    A.    The 2020 Terms Only Apply To Defendant Plex GmbH.........................................22

    B.    This Action is Outside The Scope Of The Class Action Waiver and Arbitration Agreement.............................................................................................23

VI.   CONCLUSION ..............................................................................................................24

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Abboud v. Circle K Stores Inc.*,
   2024 WL 1765659 (D. Ariz. Apr. 24, 2024) ............................................................. 20

5

*Adams v. America's Test Kitchen*,
6   680 F.Supp.3d 31 (D. Mass. 2023)........................................................................ 15, 17

7

*Am. Tel. & Tel. Co. v. Compagnie Bruxells Lambert*,
   94 F. 3d 586 (9th Cir. 1996) ........................................................................................ 10

8

*Azad v. Tokio Marine HCC—Med. Ins. Servs. LLC*,
9   2017 WL 3007040 (N.D. Cal. July 14, 2017) ............................................................. 19

10

*Baton v. Ledger SAS*,
11   2024 WL 3447511 (N.D. Cal. July 16, 2024) ............................................................. 21

12

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ................................................................................. passim

13

*Boschetto v. Hansing*,
14   539 F.3d 1011 (9th Cir. 2008) ..................................................................................... 11

15

*Burger King v. Rudzewicz*,
16   471 U.S. 462 (1985) ..................................................................................................... 11

17

*Cappello v. Walmart Inc.*,
   2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ......................................................... 2, 17

18

*Caruth v. Int'l Psychoanalytical Ass'n.*,
19   59 F. 3d 126 (9th Cir. 1995) ........................................................................................ 13

20

*Chiron Corp. v. Ortho Diagnostic Sys.*,
21   207 F.3d 1126 (9th Cir. 2000) ....................................................................................... 2

22

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019).......................................................................... 3

23

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
24   990 F.3d 173 (2d Cir. 2021) ........................................................................................ 24

25

*Dhruva v. CuriosityStream Inc.*,
   2023 WL 7647774 (D. Md. Nov. 15, 2023) ............................................................. 1, 9

26

*Diamond S.J. Enter., Inc. v. City of San Jose*,
   395 F. Supp. 3d 1202 (N.D. Cal. 2019)....................................................................... 19

27

28

*Doe v. Princess Cruise Lines, Ltd.*,
   657 F.3d 1204 (11th Cir. 2011) ................................................................... 24

*Doe v. WebGroup Czech Republic, a.s.*,
   93 F. 4th 442 (9th Cir. 2024) ..................................................................... 10

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ................................................................... 24

*Fan v. NBA Properties Inc.*,
   2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ......................................... 15

*Feldman v. Star Tribune Media Co. LLC*,
   659 F. Supp. 3d 1006 (D. Minn. 2023) ..................................................... 17

*Forsher v. Boar's Head Provisions Co., Inc.*,
   2018 WL 11436306 (N.D. Cal. Sept. 14, 2018) ...................................... 21

*Garland v. Dunkin Donuts LLC*,
   2024 WL 2808653 (N.D. Cal. May 31, 2024) .......................................... 15

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ................................................................... 11

*Gofron v. Picsel Techs., Inc.*,
   804 F. Supp. 2d 1030 (N.D. Cal. 2011) ................................................... 10

*Goldstein v. Fandango Media, LLC*,
   2021 WL 6617447 (S.D. Fla. July 27, 2021) ......................................... 7, 8

*Guisinger v. Keystone RV Co.*,
   2024 WL 3384211 (9th Cir. July 12, 2024) ............................................. 22

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
   72 F. 4th 1085 (9th Cir. 2023) ................................................................... 11

*Howard v. Goldbloom*,
   30 Cal. App. 5th 659 (2018) ...................................................................... 23

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
   505 F. Supp. 2d 609 (N.D. Cal. 2007) ..................................................... 19

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) ..................................................... 14

*Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ................................................................................... 11

*Jackson v. Amazon.com, Inc.*,
   65 F.4th 1093 (9th Cir. 2023) .............................................................. passim

*Jones v. Halliburton Co.*,
   583 F.3d 228 (5th Cir. 2009) ................................................................................ 24

*Law v. City of Berkeley*,
   2016 WL 4191645 (N.D. Cal. Aug. 9, 2016) ......................................................... 18

*Lien v. City of San Diego*,
   2021 WL 2072385 (S.D. Cal. May 24, 2021) ........................................................ 22

*Maree v. Deutsche Lufthansa AG*,
   2021 WL 267853 (C.D. Cal. Jan. 26, 2021) ............................................................ 7

*Marshall v. Georgetown Mem'l Hosp*.,
   2024 WL 3763620 (4th Cir. Aug. 13, 2024) ........................................................... 5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F. 3d 1218 (9th Cir. 2011) ....................................................................... 12, 13

*McDaniel v. Home Box Office, Inc.*,
   2023 WL 1069849 (S.D.N.Y. Jan. 27, 2023) .......................................................... 9

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) .............................................................................. 21

*Milan v. Cliff Bar & Co.*,
   2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ...................................................... 20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ............................................................................................... 2

*Monster Energy Co. v. Cycle Locators Inc.*,
   2018 WL 6431009 (C.D. Cal. June 25, 2018) ...................................................... 13

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ......................................................................... 1, 22

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................................ 6

*Payrovi v. LG Chem Am., Inc.*,
   491 F. Supp. 3d 597 (N.D. Cal. 2020) .................................................................. 14

*Pearl v. Coinbase Global, Inc.*,
   2024 WL 3416505 (N.D. Cal. July 15, 2024) ....................................................... 21

*Pebble Beach Co. v. Caddy*,
   453 F. 3d 1151 (9th Cir. 2006) ............................................................................. 14

*Rahman v. Smith & Wollensky Restaurant Grp., Inc.*,
   2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) ......................................................... 20

*Rancourt v. Meredith Corp.*,
    2024 WL 381344 (D. Mass. Feb. 1, 2024)................................................................... 13

*Ranza v. Nike, Inc.*,
    793 F. 3d 1059 (9th Cir. 2015) ...................................................................................... 10

*Ringgold v. Burgett, Inc.*,
    2023 WL 34437 (E.D. Cal. Jan. 4, 2023)....................................................................... 19

*Roy v. Wells Fargo Bank, N.A.*,
    2015 WL 1408919 (N.D. Cal. Mar. 27, 2015) ............................................................... 19

*Sadlock v. Walt Disney Co.*,
    2023 WL 4869245 (N.D. Cal. July 31, 2023) .................................................................. 7

*Sandquist v. Lebo Automotive, Inc.*,
    1 Cal. 5th 233 (2016) ..................................................................................................... 23

*Sinatra v. Nat. Enquirer, Inc.*,
    854 F. 2d 1191 (9th Cir. 1988) ...................................................................................... 14

*Slovin v. Sunrun, Inc.*,
    2016 WL 5930631 (N.D. Cal. Oct. 12, 2016) ................................................................ 19

*Soltero v. Precise Distribution, Inc.*,
    102 Cal. App. 5th 887 (2024) ........................................................................................ 22

*Stark v. Patreon, Inc.*,
    656 F. Supp. 3d 1018 (N.D. Cal. 2023) ................................................................... 17, 18

*Strehl v. Guitar Ctr., Inc.*,
    2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) ............................................................... 6, 7

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791 (9th Cir. 2017) ......................................................................................... 24

*United States v. Bohn*,
    956 F.2d 208 (9th Cir. 1992) ......................................................................................... 23

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F. 3d 970 (9th Cir. 2010) ........................................................................................ 20

*Will Co., Ltd. v. Lee*,
    47 F. 4th 917 (9th Cir. 2022) ........................................................................... 10, 11, 12, 13

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) ......................................................................................... 15

*Wilson v. Redbox Automated Retail, LLC*,
    448 F. Supp. 3d 873 (N.D. Ill. 2020) ............................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATUTES**

18 U.S.C. § 2710 ............................................................................................................ 11, 16, 18

Cal. Civ. Code § 1799.3 ................................................................................................. 15, 16

**RULES**

Fed. R. Civ. P. 4(k)(2) ........................................................................................................ i, 10

Fed. R. Civ. P. 12 ................................................................................................... 18, 20, 21

Fed. R. Civ. P. 15(a) ............................................................................................................ 24

Fed. R. Civ. P. 23 ................................................................................................................ 20

1     Plaintiff Richard Lee ("Plaintiff") respectfully submits this opposition to Defendants Plex

2   GmbH and Plex Inc's ("Defendants") Motion to Dismiss (ECF No. 22) (the "Motion" or "MTD").

3                                    **INTRODUCTION**

4     Because they cannot win on the merits, Defendants bring a myriad of claims that do not

5   directly deal with their illegal conduct, seeking to compel arbitration, enforce a class action waiver,

6   dismiss Plaintiff's claims against Defendant Plex GmbH for lack of personal jurisdiction, and

7   dismiss Plaintiff's claims on the basis that Defendants' 53-page privacy policy constitutes a

8   "separate and distinct" notice under the VPPA.

9     First, rather than facing Plaintiff's clearly meritorious VPPA claim in open court,

10  Defendants seek to push Plaintiff's claims into the secrecy of private arbitration. But Defendants'

11  Motion faces an uphill battle. The hyperlinks Defendants contend Plaintiff was on notice of are not

12  readily visible to website users like Plaintiff; they are only visible if the user scrolls down to the

13  bottom of the page. Declaration of Joshua B. Glatt ("Glatt Decl.") ¶ 7. Further, even if Plaintiff

14  was on notice of these terms, the Plex Terms of Service (the "Terms" or "Terms of Service") only

15  apply to one Defendant, Plex GmbH, and not Plex, Inc. Moreover, the language Defendants rely

16  on to argue Plaintiff was appraised of the Terms when he clicked on the "Sign Up With Facebook"

17  button does not even invite Plaintiff to read the Terms, let alone put Plaintiff on notice that he

18  would be bound by them and would have to arbitrate his claims. *Dhruva v. CuriosityStream Inc.*,

19  2023 WL 7647774, at *3 (D. Md. Nov. 15, 2023). Even putting all of that aside, Plaintiff's claims

20  are independent of the Terms and are therefore not encompassed by the Class Action Waiver or

21  Arbitration Agreement.

22     Any of the aforementioned issues on their own would be enough to doom Defendants'

23  Motion. Defendants have to overcome all three, and Defendants bear the burden of proof for each.

24  *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). All the while, Defendants must

25  face precedent from the Ninth Circuit and California appellate courts, as well as myriad cases in

26  this Circuit and others, that undermine each of its positions. *See, e.g.*, *Berman v. Freedom Fin.*

27  *Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) (finding no notice of hyperlink to terms

28  containing arbitration clause); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)

(declining to enforce an arbitration agreement in favor of a nonsignoatory to the contract); *Jackson*, 65 F.4th at 1101-04 (finding privacy claim fell outside of scope of arbitration clause).  Defendants simply cannot jump through that many hoops.

Defendants' personal jurisdiction challenge is similarly unable to pass muster.  Per Defendants' own Terms, it is at home in this District.  Nonetheless, as a joint operator of the Plex streaming service, Plex GmbH purposefully directed its activities to California.

What is more, Defendants cannot prove consent under the VPPA to their surreptitious sharing of Plaintiff's video viewing information by pointing to their general privacy policy. The policy is 53 pages in length and deals with *all* elements of privacy related to Plex.tv, rather than solely Defendants' sharing of users video viewing information, as required by the VPPA. *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019).  This is simply not enough to defeat Plaintiff's claim.  For the following, Defendants' Motion should be denied.

## ARGUMENT

I.    **PLAINTIFF WAS NOT ON NOTICE OF ANY TERMS OF SERVICE OR PRIVACY POLICY**

A.    **Defendants' "Create Your Free Account Page" Does Not Provide Sufficient Notice Of The Terms Of Service Or Privacy Policy**

Defendants rely exclusively on the decision in *Miller v. Plex, Inc. et al.*, 5:22-cv-5015-SVK, ECF No. 32 at 8-9 (N.D. Cal. March 30, 2023) ("*Miller*") to argue that Plaintiff was on constructive notice of the Terms and Privacy Policy.  MTD at 4-7.  This argument is misplaced and erroneous; *Miller* is inapposite to the present motion.  Under Ninth Circuit caselaw, Plaintiff was not on notice of the Terms or Privacy Policy and, thus, Defendants' arguments that Plaintiff is bound to any part of these documents fails.

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  The court must determine: (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms.  *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

1    "In determining whether the parties have agreed to arbitrate a particular dispute, federal

2    courts apply state-law principles of contract formation." *Berman,* 30 F.4th at 855.  As relevant

3    here, "[t]o form a contract under … California law, the parties must manifest their mutual assent to

4    the terms of the agreement." *Id.*  "Website users are entitled to assume that important provisions—

5    such as those that disclose the existence of proposed contractual terms—will be prominently

6    displayed, not buried in fine print." *Id.* at 857.  Thus, "[t]o avoid the unfairness of enforcing

7    contractual terms that consumers never intended to accept, courts confronted with online

8    agreements such as those at issue here have devised rules to determine whether meaningful assent

9    has been given." *Id.* at 856.  "Unless the website operator can show that a consumer has actual

10   knowledge of the agreement, an enforceable contract will be found based on an inquiry notice

11   theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the

12   consumer will be bound; and (2) the consumer takes some action, such as clicking a button or

13   checking a box, that unambiguously manifests his or her assent to those terms." *Id.*  Accordingly,

14   when a hyperlink to an agreement is "not conspicuous enough to put [plaintiffs] on inquiry notice,"

15   then the agreement is not binding.  *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D.

16   Cal. 2019).

17   "[T]he onus must be on website owners to put users on notice of the terms to which they

18   wish to bind consumers" as "consumers cannot be expected to ferret out hyperlinks to terms and

19   conditions to which they have no reason to suspect they will be bound." *Jackson,* 65 F.4th at 1100.

20   Thus, the burden is on the party "seeking arbitration to show that it provided notice … and that

21   there was mutual assent to the contractual agreement to arbitrate." *Id.* at 1099.

22   Defendants have not met their burden here.  First, *Miller* should not guide here because the

23   *Miller* plaintiff's declarations prevented her from making the dispositive argument that the block of

24   text containing the links to the Terms and Privacy Policy were not visible when the user reached

25   the "Create Your Free Account" page and was only visible if the user scrolled down, which is not

26   required to create an account.  *Miller,* 5:22-cv-5015-SVK, ECF No. 32 at 8-9.  As such, the

27   analysis in *Miller* is incomplete with respect to Plaintiff in this matter.

28

1         Here, the Court is able to consider what the "Create Your Free Account" page actually

2    looked like when Plaintiff created a Plex account.  The FAC includes screenshots of the current

3    "Create Your Free Account" page, FAC ¶ 54 Fig. 4, which Defendants cite in their motion and

4    argue is "substantially the same" as the page encountered by Plaintiff in 2020.  MTD at 2.  Those

5    screenshots, reproduced below, show that a user viewing the page with standard browser settings

6    (*i.e.* 100% zoom) would not see the block of text containing the Terms and Privacy Policy unless

7    they scrolled down the page, while scrolling is not required to click any of the buttons which allow

8    users to create an account.



1    *See* Glatt Decl. ¶¶ 3-7; FAC ¶ 54, Fig. 4.

2    Defendants were aware of these allegations but chose not to address them. Instead,

3    Defendants' motion contains only a zoomed-out image of the white block in the center of the page

4    without any reference to what that page would look like on a users' browser under normal settings

5    or, crucially, if the entire page is visible. MTD at 2. This alone establishes that Defendants have

6    not carried their burden to prove notice and mutual assent to the contracts at issue. *Jackson,* 65

7    F.4th at 1099.

8    In any event, the "Create Your Free Account" page does not provide sufficient notice of the

9    Terms of Service or Privacy policy. First, as described above, Plaintiff could have created an

10   account without ever seeing the hyperlinks to the Terms of Service or Privacy Policy or reading the

11   text informing him that creating an account binds him to those contracts.

12   This clearly violates the Ninth Circuit requirement that the contractual terms "be

13   prominently displayed." *Berman*, 30 F.4th at 857. A user must zoom out or scroll down for the

14   Terms and Conditions hyperlink to appear on screen. Glatt Decl. ¶¶ 6-7. This transforms

15   Defendants' hyperlinks into a browsewrap agreement, which is unenforceable.

16   *Marshall v. Georgetown Mem'l Hosp*., 2024 WL 3763620 (4th Cir. Aug. 13, 2024) is

17   directly on point. In *Marshall*, as here, the plaintiff could submit an online application without

18   scrolling down the page, but "[o]nly by scrolling down further would a returning applicant also see

19   the pre-employment statement containing the proposed arbitration agreement." *Id*. at *1. The

20   court denied the defendant's motion to compel arbitration, finding "in the internet context, courts

21   have rejected constructive notice claims based on information that 'would have become visible to

22   [users] only if they had scrolled to the next screen.'" *Id*. at *7. The court went on, explaining that

23   the plaintiff "may well have known that there was 'unexplored' territory below the screens on

24   which she was operating. But without more, she was not on inquiry notice that this territory

25   included a contract offer and she was not obliged to go exploring for one." *Id*. (citation omitted).

26   Here, as in *Marshall*, Plaintiff was not required to go exploring for a contract offer in areas of the

27   screen not required for him to visit to create his account. *Id*.

28

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) is also instructive. In that case, "[t]he website's Terms of Use [were] available via a 'Terms of Use' hyperlink located in the bottom left-hand corner of every page on the Barnes & Noble website." *Id.* at 1174. The Ninth Circuit deemed this hyperlink to be a "'browsewrap' agreement[], where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Id*. Such agreements "do[] not require the user to manifest assent to the terms and conditions expressly." *Id.* (cleaned up). Rather, "a party instead gives his assent simply by using the website." *Id.* (cleaned up). And "[w]here the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement." *Id.* at 1177. Based on this reasoning, the Ninth Circuit refused to enforce Barnes & Noble's terms and conditions, holding:

> [W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.

*Id.* at 1178-79.

The same result is mandated in this case. As in *Nguyen*, the Terms of Service and hyperlinks here are "buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it." *Id.* at 1177; *see also* Glatt Decl. ¶¶ 6-7. To even have the hyperlink appear on the checkout page, a user needs to zoom out or scroll down to the bottom of the page. Glatt Decl. ¶ 7. But a user does not need to zoom out or scroll down to the bottom of the page to complete their transaction because the "Continue with Google," "Continue with Facebook," "Continue with Apple," and "Create an Account" buttons can all be clicked without scrolling at all. *Id.* ¶ 8. This is no different than a browsewrap agreement where a user is ostensibly bound simply by using the website. *See Nguyen*, 763 F.3d at 1174 (browsewrap agreements "do[] not require the user to manifest assent to the terms and conditions expressly"). Accordingly, the hyperlinks here constitute an inconspicuous browsewrap agreement that cannot be enforced under *Nguyen*. *See also Strehl v. Guitar Ctr., Inc.*, 2023 WL 9700041, at *6 (C.D. Cal.

1   Nov. 3, 2023) (finding the existence of an unenforceable browsewrap agreement where "[t]he

2   hyperlink to the Purchase Terms would be located at the bottom of the screen, where it is

3   reasonable [sic] likely that it would not be visible to the user unless the user scrolled down or

4   zoomed out" because "[a] purchaser who clicks the [] button may be left unaware that contractual

5   terms were even offered, much less ... manifest[ed] acceptance of those terms") (internal quotations

6   and citations omitted).

7          Further, Plaintiff alleges that he created an account by clicking the "Continue with

8   Facebook" button.  FAC ¶ 64.  But "[t]he hyperlink[s] are located [twelve] lines away from the

9   ['Continue with Facbook'] button."  *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *10 (N.D.

10  Cal. July 31, 2023) (finding a lack of sufficient notice when the hyperlink in question was located

11  five lines away from the "Agree and Subscribe" button).  In addition to the physical distance on the

12  page, the hyperlinks are not identifiable as such.  The links are not underlined and appear in a grey

13  font that looks like bolded text rather than a link.  As courts have repeatedly found, simply

14  changing the color of text to designate a hyperlink is not itself sufficient for notice.  *Colgate,* 402

15  F. Supp. 3d at 765 ("I am not convinced that the mere change in color of the hyperlinks, without

16  more, is enough."); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020)

17  ("Using a different color for the hyperlink from the surrounding text, by itself, is not sufficient to

18  render the hyperlink reasonably conspicuous."); *Berman*, 30 F.4th at 854 ("Simply underscoring

19  words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably

20  prudent user that a clickable link exists."); *Strehl*, 2023 WL 9700041, at *7 ("[T]he color of the

21  hyperlink cannot offset and compensate for the size of the hyperlink or the distance between the

22  statement containing the hyperlink and the second button."); *Maree v. Deutsche Lufthansa AG*,

23  2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021) (finding hyperlink was inconspicuous where,

24  although a different color, the hyperlink was "not highlighted, underlined, in all capital letters, or

25  displayed inside of a conspicuous and clickable box").

26          Finally, "[i]t is significant that [Defendant's] notice regarding the binding nature of its

27  Terms and Policies was placed *beneath* the large … click button, rather than above it."  *Goldstein*

28  *v. Fandango Media, LLC*, 2021 WL 6617447, at *3 (S.D. Fla. July 27, 2021) (emphasis in

original).  "It is not reasonable to expect a user to continue reading below the highly conspicuous purchase button."  *Id.*  In this way, the hyperlink at issue was actually ***more inconspicuous*** than in *Berman*, where the relevant hyperlinks appears above the button the users were required to click on, and were at least visible without scrolling down.  *Berman*, 30 F.4th at 856-60.

Each of these factors, by themselves, defeat Defendants' argument that Plaintiff was on notice of the Terms of Service and Privacy Policy.  Combined, Defendants' position is simply not tenable.

### B.     The "Continue With Facebook" Screen Does Not Require Consent To The Terms Of Service Or Privacy Policy—And Plaintiff In Fact Did Not Consent

The disclosures on the pop-up screen that appear when the "Continue With Facebook" button is clicked are similarly insufficient to provide notice that Plaintiff would be bound by the Terms of Service or Privacy Policy.  According to Defendants, this is how the pop-up screen appeared when Plaintiff created his account:



MTD at 3.

First, nothing in the language "by continuing, Plex will receive ongoing access to the information you share and Facebook will record when Plex access it.  Learn more about this sharing and the settings you have" indicates anything about Plaintiff's account creation at all, let alone indicating that Plaintiff would be bound to Plex's Terms.  *Id.*  This is a far cry from the unambiguous manifestation of assent necessary to bind Plaintiff to an online contract.  *Berman*, 30 F.4th at 856.

Second, the presence of the hyperlinks to Plex's Terms of Service and Privacy policy does nothing to salvage Defendants' argument.  The user is not prompted – or even required – to *read* the Terms or Privacy Policy, let alone *agree* to be bound by them.

Courts have found much stronger language relating directly to linked Terms insufficient to compel arbitration.  *See Dhruva v. CuriosityStream Inc.*, 2023 WL 7647774, at *3 (D. Md. Nov. 15, 2023), *reconsideration denied sub nom. Druva v. CuriosityStream, Inc.*, 2024 WL 184344 (D. Md. Jan. 17, 2024), and *reconsideration denied,* 2024 WL 712467 (D. Md. Feb. 21, 2024).  In *Dhruva*, the hyperlinked terms stated only that "'by subscribing to Curiosity Stream, you agree that you've read our Terms of Use and Privacy Policy.'"  *Id.* at *3.  There, the court noted that "[n]othing in that sentence expresses an agreement to the Terms of Use or Privacy Policy themselves, *simply an agreement that they were read*."  *Id* (emphasis added).  Defendants' terms here are even worse.  Unlike the failed terms in *Dhruva,* Defendants' terms here don't even require Plaintiff to have read them.  Surely then, if the terms in *Dhruva* could not be said to apprise the user of the contents of that agreement, the terms here definitely do not.  *C.f., McDaniel v. Home Box Office, Inc.*, 2023 WL 1069849, at *1 (S.D.N.Y. Jan. 27, 2023) ("[S]ubscribers were required to check a box indicating that they agreed to the [Terms of Use] … before completing the registration process.").  "Ultimately, the pertinent question is whether a user has 'reasonable notice that a click will manifest assent to an agreement.'"  *Dhruva,* 2023 WL 7647774 at *4.  No such notice is present here.  As such, no contract was formed with respect to Defendants' Terms or Privacy policies.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    DEFENDANT PLEX GMBH IS PROPERLY NAMED IN THIS ACTION

Defendants argue that the Court should dismiss the action as it relates to Plex GmbH because it has no minimum contacts with the forum.  MTD at 8.  This is both a red herring and wrong.

### A.    Plex GmbH Is Subject To General Jurisdiction

A defendant is subject to personal jurisdiction where it has its principal place of business. *Ranza v. Nike, Inc.*, 793 F. 3d 1059, 1069 (9th Cir. 2015).  As Defendants concede the 2024 terms do not apply, MTD at 25, Defendants' 2020 terms make clear that "[t]he Plex Solution is controlled and operated by Plex from its offices within the United States," Castro Decl., Ex. A at 54.  Those terms define "Plex" to be Plex GmbH.  *See Id.* at 2.  Plaintiff alleges that Plex's U.S. office is in Los Gatos, California.  FAC ¶ 7.  By Defendants' own admission, it is plausible that Defendant Plex GmbH is at home, by its very terms, in this District.  Although Defendants submit an affidavit to the contrary, "conflicts between the facts … must be resolved in [the plaintiff's favor] for purposes of deciding whether a prima facia case for personal jurisdiction exists." *Am. Tel. & Tel. Co. v. Compagnie Bruxells Lambert*, 94 F. 3d 586, 588-89 (9th Cir. 1996).  And where "the plaintiff also submits admissible evidence, conflicts in the evidence must be resolved in the plaintiff's favor." *Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1035 (N.D. Cal. 2011).  As such, by Plex GmbH's own terms, it is at home *here* in this District.

### B.    This Court Has Specific Personal Jurisdiction Over Plex GmbH Under Fed. R. Civ. P. 4(k)(2)

"Under [Fed. R. Civ. P.] 4(k)(2), a federal court may exercise jurisdiction over a foreign defendant if: (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) exercising jurisdiction comports with due process." *Will Co., Ltd. v. Lee*, 47 F. 4th 917, 922 (9th Cir. 2022).  Under the third prong, "the defendant must have performed some act or consummated some transaction by which it purposefully directed its activities toward the United States or purposefully availed itself of the privilege of conducting business in the United States." *Doe v. WebGroup Czech Republic, a.s.,* 93 F. 4th 442, 451 (9th Cir. 2024) (cleaned up).  "The exercise of personal jurisdiction over a

defendant comports with due process if a defendant has 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Will Co*, 47 F. 4th at 922 (quoting *Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

Here, prongs one and two are met because Plaintiff's claim arises out of a "violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.*" FAC ¶ 2. Additionally, if the Court determines that Plex GmbH is not subject to general personal jurisdiction, this prong is met.

### 1.    Plex GmbH, As Joint Operator Of The Website, Purposefully Availed Itself to the Benefits of The Forum

Courts in the Ninth Circuit "do not impose a rigid dividing line between these two types of claims. When both contract and tort claims are at issue, both tests are relevant." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F. 3d 1101, 1107 (9th Cir. 2020). "Although they are distinct, at bottom, both [tests] ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be hailed into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.'" *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F. 4th 1085, 1090 (9th Cir. 2023) (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Despite Defendants' insistence that an alter-ego analysis applies, MTD at 9, the analysis is best considered under a purposeful availment inquiry as Defendants motion is premised on Plaintiff's consent (he didn't) to disclose his web activity via Defendants' privacy policy. MTD at 14 ("The first requirement for permissible disclosure under the VPPA is satisfied because Plaintiff Consented [sic] to Plex's Privacy Policy."). Thus, the dispute sounds in contract. And, "[t]o have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (internal citation omitted). Courts' "evaluation of the jurisdictional significance of a defendant's contract or other business in the forum is not rigid and formalistic, but rather practical and pragmatic." *Id.*

1    Here, Defendant Plex GmbH received the benefits of conducting business in the forum by

2    jointly operating the service to offer subscriptions, FAC ¶ 8, and collecting user information, like

3    Plaintiff's, who is a California resident and citizen. *Id.* ¶ 6.  Specifically, "Defendants configured

4    the Meta Tracking Pixel on its website to … create a PageView event every time a consumer goes

5    to the webpage playing the video." *Id.* ¶ 31. Thus, "[f]rom the moment consumers enter

6    Defendants' website, the Meta Tracking Pixel follows them and records their activity." *Id.* ¶ 30.

7    With this collected data, and in conjunction with Defendants' integration of the Meta Tracking

8    Pixel, Defendants can "build 'Custom Audiences[,]' [that] enable business to reach 'people who

9    have already shown interest in [their] business[.]" *Id.* ¶ 23.  Businesses, like Defendants, "can use

10   Custom Audiences to target existing customers directly, or they can use it [for] building 'Lookalike

11   Audiences,' which 'leverage[] information such as demographics, interests, and behaviors from

12   [the business's] source audience to find new people who share similar qualities.'" *Id.*  Importantly,

13   "[b]usinesses control what actions—or as Meta calls it, 'events'—the Meta Tracking Pixel will

14   collection on the business's site," *id* ¶ 25, and here, Defendants have configured the Meta Tracking

15   Pixel to collect the user's activity and pair it with the c_user cookie, "the user's unique and

16   personal Facebook page-specific ID." *Id.* ¶ 34.  With this information, "[t]he Meta Tracking Pixel

17   is designed to collect information about website visitors that can be matched to an individual's

18   Facebook profile for the purpose for sending targeted advertising to that user." *Id.* ¶ 45.

19   Courts have found that leveraging the state's commercial market amounts to availing itself

20   to the benefits of the forum. *See e.g., Will Co.*, 47 F. 4th 917, 924 ("Will Co. met its burden of

21   showing 'something more' to demonstrate that Defendants 'appeal[ed] to' and 'profited from' the

22   U.S. market.  First, the advertising structure Defendants employed demonstrated that they profited

23   from viewers in the United States market."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F. 3d

24   1218, 1229 (9th Cir. 2011) ("[W]e find most salient the fact that Brand used Mavrix's copyrighted

25   photos as part of its <u>exploitation of the California market for its commercial gain</u>.") (emphasis

26   added).  Plex GmbH has purposefully availed itself to the benefits of the forum.

27

28

**2.    Exercising Jurisdiction Comports With Due Process
Because Defendant Has Sufficient Minimum Contacts
With California**

*Second,* a claim arises out of or relates to conduct "if, 'but for' a defendant's forum-related activities through which a defendant purposefully avails itself of the forum, the plaintiff would not have suffered injury.'" *Monster Energy Co. v. Cycle Locators Inc.*, 2018 WL 6431009, at *4 (C.D. Cal. June 25, 2018) (internal citation omitted).  Here, Plaintiff's claims arise from Plaintiff's use and access of Defendants' website in California, FAC ¶ 6, and disclosure of Plaintiff's viewing activity to third parties during those visits.  *Id.* ¶ 82; 84.  In *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *10 (D. Mass. Feb. 1, 2024), a case also brought under the VPPA, the court found defendant's "use of advertising and content curation that targets individual … residents increases user engagement with the App, thus allowing [Defendant] to collect and disclose more of users' information … sufficient for a prima facia showing of relatedness between [defendant's contacts] with Massachusetts and [Plaintiff's] claims based on the disclosure of his information."  The same should carry here.

And, where "Defendant's motion is based on written materials rather than an evidentiary hearing, as is the case here, '[courts] only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facia showing of personal jurisdiction.'"  *Will Co.*, 47 F.4th at 921 (quoting *Caruth v. Int'l Psychoanalytical Ass'n.*, 59 F. 3d 126, 128 (9th Cir. 1995)).  Moreover, Defendants' declaration fails to rebut allegations material to Plaintiff's theory of personal jurisdiction.  *See generally* Declaration of Angelo Spenillo ("Spenillo Decl."), ECF No. 22-1.  At strongest, the Spenillo declaration clarifies that Plex, Inc. is the sole owner of the "Plex Solution," (Spenillo Decl. ¶ 22), but that is not the basis for which this Court has personal jurisdiction over Plex GmbH and Defendants' own evidence refutes this (*See* Castro Decl. Ex. A, at 54).  Although the declaration refutes which Defendant is the parent and which is the subsidiary, Spenillo Decl. ¶ 8, neither the motion nor the Spenillo Declaration proffer any facts to refute the fact that they "acted jointly and in concert to commit the violations alleged herein."  FAC ¶ 8.  And although Defendants argue that Plaintiff's allegations are merely "bare bone[] assertions of minimum contacts," MTD at 10, "uncontroverted allegations in the complaint must be taken as true."  *Mavrix*

1    *Photo, Inc.*, 647 F. 3d at 1223.  And, as shown by Castro Decl., Ex. A, Plex GmbH controls and

2    operates Plex, Ex. A, at 54, while Defendants' Ex. E, at 1, states that "Plex GmbH and its affiliates,

3    including Plex, Inc., … (together, 'Plex') is willing to license and permit use of the Plex Solution."

4    These allegations, taken as true, together with Defendants' own admission, show that it is plausible

5    that Plex GmbH is an operator of the site directed at California.  *See Payrovi v. LG Chem Am., Inc.*,

6    491 F. Supp. 3d 597, 602 (N.D. Cal. 2020) ("While the plaintiff bears the burden of showing that

7    the Court has personal jurisdiction over the defendant, the court resolves all disputed facts in favor

8    of the plaintiff.") (quoting *Pebble Beach Co. v. Caddy*, 453 F. 3d 1151, 1154 (9th Cir. 2006)).

9            Finally, "[o]nce minimum contacts is shown, a rebuttable presumption arises that the

10   exercise of jurisdiction is reasonable. … The defendant bears the burden of ultimately proving that

11   the exercise of jurisdiction is unreasonable."  *Sinatra v. Nat. Enquirer, Inc.*, 854 F. 2d 1191, 1195

12   (9th Cir. 1988).  Defendants do not do so.  *See also id.* at 1201 ("The burden lay with the Clinic to

13   rebut the presumption of reasonableness established by its actions taken to solicit and obtain

14   business in California.  This the clinic did not do. Therefore, the Clinic … should reasonably

15   expect that its conduct would subject it to suit in the United States").  "The court examines seven

16   factors to determine reasonableness: the extent of purposeful interjection; the burden on the

17   defendant; the extent of conflict with sovereignty of the defendant's state; the forum state's interest

18   in adjudicating the suit; the most efficient judicial resolution of the dispute; the convenience and

19   effectiveness of relief for the plaintiff; and the existence of an alternative forum."  *Id.* at 1198-99.

20   Most critically, Defendant Plex GmbH has *already* litigated in this very district.  *See Miller v. Plex,*

21   *Inc.*, et al., Case No. 5:22-cv-05015-SVK, ECF No. 1 (N.D. Cal. 2022).  *See also In re ZF-TRW*

22   *Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 704 (C.D. Cal. 2022) (finding

23   Korean defendant's burden on litigating in the U.S. is "limited" where it can be inferred that "it has

24   some familiarity with the legal system in the United States, and likely has counsel here").

25           If this Court determines that Plex GmbH is not subject to personal jurisdiction, Plaintiff

26   seeks jurisdictional discovery to clarify each Defendant's role in operating the site and receiving

27   the benefits thereof from California.  It remains a fact question as to which entity is operating the

28   site.  *See* Ex. A, at 1-2 ("Plex GmbH ('Plex') is willing to license and permit use of the plex

1   solution"); Ex. E, at 1 ("Plex GmbH and its affiliates, including Plex, Inc., … (together, 'Plex') is

2   willing to license and permit use of the Plex Solution"); *see also Garland v. Dunkin Donuts LLC*,

3   2024 WL 2808653, at *5 (N.D. Cal. May 31, 2024) ("Plaintiffs have asked that the Court allow

4   Plaintiffs to undertake jurisdictional discovery regarding who owns, operates, or leases the relevant

5   stores … The Court finds this request to be appropriate.") (internal quotation omitted).

6   **III.    PLAINTIFF DID NOT CONSENT TO THE ALLEGED CONDUCT**

7           Defendants argue that "Plaintiff gave Plex [c]onsent for the conduct alleged in the FAC

8   which is fatal as a matter of law to his claim for violations of the VPPA and California Civil Code

9   § 1799.3." MTD at 13. The assertion is both premature and incorrect.

10          First, Plaintiff clearly alleges Defendants did not obtain his consent for the disclosures at

11  issue. FAC ¶ 53 ("Plex failed to meet the consent requirements under both VPPA and Cal. Civ.

12  Code § 1799.3 because it did not obtain informed, written consent, in a separate and distinct form

13  (as required by VPPA), or simply written consent (as required by Cal. Civ. Code § 1799.3) from

14  Plaintiff and the Class.").

15          For both statutes at issue, a finding of informed consent to the disclosures is governed by a

16  "reasonable consumer" standard. *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal.

17  Mar. 26, 2024). What a reasonable consumer would consider to be a conspicuous, distinct, and

18  separate disclosure is not appropriate for resolution at the motion to dismiss stage. *Williams v.

19  Gerber Prod. Co.*, 552 F.3d 934, 938-939 (9th Cir. 2008). "Whether reasonable consumers would

20  understand, based on the [69] page Terms of Use or the [53] page Privacy Policy, that by using the

21  [plex.tv] website they were consenting to the disclosure of their personally identifiable information

22  to Meta, is a question that should be resolved on a fuller factual record." *Fan,* 2024 WL 1297643

23  at *3, *see also Adams v. America's Test Kitchen*, 680 F.Supp.3d 31, 44 (D. Mass. 2023) (finding

24  dismissal of a VPPA claim based on consent inappropriate at the motion to dismiss stage because

25  the plaintiff alleged that the defendants did not obtain the required consent, creating "factual issues

26  to resolve").

27

28

### A.    Plaintiff Was Not On Notice Of Defendants' Privacy Policy

Next, Defendants' contention that "[t]he [] requirement for permissible disclosure under VPPA [and Cal. Civ. Code § 1799.3] is satisfied because Plaintiff Consented [sic] to Plex's Privacy Policy," MTD at 14, is wrong.  Plaintiff was not on notice of the Privacy Policy.  The Privacy Policy is hyperlinked in the same block of text where the Terms are located on the "Create Your Free Account" page discussed above.  As discussed above, the layout of the "Create Your Free Account" page does not provide adequate notice of the hyperlinks because the user can create an account without ever seeing the hyperlinks, which can only be reached by scrolling to the bottom of the page, among other deficiencies.  *See* Argument § I A-B, *supra*. As such, any reliance on disclosures in the Privacy Policy is inapposite.

### B.    Defendants' Privacy Policy Is Not Complaint With The VPPA

Even if Plaintiff had been on notice of the Privacy Policy (he wasn't), the Privacy Policy does not satisfy the VPPA's "separate and distinct" requirement.  To share Plaintiff's information, the VPPA requires Defendants to secure his "informed, written consent … in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," including privacy obligations.  18 U.S.C. § 2710(b)(2)(B)(i).  Defendants' 53-page Privacy Policy fails to do so.  Castro Decl. Ex. B.  Instead, the Privacy Policy provides a wide range of consumer privacy and data sharing notices that are not *solely* dedicated to informing consumers like Plaintiff that Defendants will be sharing their video viewing information with a third party.  Instead, it is full of "other legal or financial obligations," that Congress said does not suffice.  18 U.S.C. § 2710(b)(2)(B)(i).

For example, the policy gives permission for a user to use "the Plex Relay Service to connect or stream your Personal Content to another device."  Castro Decl. Ex. B, at 15.  It also informs the user about data collected for payment processing, *id.* at 23, and what happens to users' data in the event of Plex's bankruptcy.  *Id.* at 24.  None of these terms in the agreement relate to the VPPA.

As another court in this District explained in a similar case involving the disclosure of consumers' video purchase histories to Facebook (now Meta), "the plain language of the VPPA

1   does indeed require video tape service providers to (1) request consumers' consent to a privacy

2   disclosure that addresses only the use of personally identifiable information connected with video

3   purchases and **no other privacy topic**, and (2) obtain the act of consent **separately** from the

4   consumer's agreement to the retailer's … **general privacy policy**[.]" *Cappello*, 2019 WL

5   11687705, at *2 (emphasis added).  In fact, the *Cappello* court rejected the defendant's consent

6   defense as it could not show it "provided consumers with a consent form dedicated **_solely_** to

7   informing consumers of [Defendants'] intent to share their personally identifiable information with

8   Facebook." *Id*. at *2 (emphasis in original).  The same is true here.  Defendants cannot point to a

9   single form which *solely* informs consumers they will be sharing their video viewing information

10  with Meta.  Other companies have implemented such a district and separate form.  *See, e.g*.,

11  https://www.nbc.com/general/pages/vppa.  As *Capello* recognized, it is not "burdensome to design

12  a website whereby consumers must click a box confirming their consent to disclosures involving

13  video purchases and click a separate box confirming their consent to all other applicable policies

14  and terms." 2019 WL 11687705, at *2.

15      Defendants fail to cite a single case in the VPPA context that says Defendants' terms and

16  policies are sufficient.  To the contrary, *Cappello* explicitly says general terms and policies are not.

17  2019 WL 11687705, at *2.  Other courts agree. *see e.g., Feldman v. Star Tribune Media Co. LLC*,

18  659 F. Supp. 3d 1006, 1023 (D. Minn. 2023) ("Assuming the Privacy Policy may be considered

19  appropriately at this stage, it does not show that the VPPA's consent safe harbor bars Mr.

20  Feldman's claim.  Recall that the VPPA says that the consent must be 'in a form distinct and

21  separate from any form setting forth other legal or financial obligations of the consumer.'");

22  *Adams*, 680 F. Supp. 3d 31 ("Even if the Court did consider the Privacy Policy, Adams alleges that

23  'Defendants never obtained … informed, written consent in a form distinct and separate' … This

24  allegation undermines Defendants' claim."); *c.f. Stark v. Patreon, Inc*., 656 F. Supp. 3d 1018, 1026

25  (N.D. Cal. 2023) (while "a service provider may share" PII under the VPPA "if it obtains written

26  consent from the consumer, such consent must meet strict requirements").

27      Further, the portion of the Privacy Policy cited by Defendants as evidence of consent says

28  the opposite.  MTD at 14.  Specifically, the cited Privacy Policy section says users video viewing

information will be collected by Plex so that Defendants can run and improve their services, advertise to that consumer, or so anonymous data can be shared with third parties. *Id.* None of these accurately describe Defendants' violations of the VPPA as alleged by Plaintiff. The FAC alleges that Meta, a third party, receives individualized video viewing information in the form of the video title and individual user's Facebook ID and email address. FAC ¶¶ 28-49. Meta then adds the users to audiences based on their video viewing habits, which it uses for advertising services to all of its clients, not just Defendants. *Id.* ¶¶ 20-27. Thus, even on its own terms, Defendants' argument fails.

Defendants' reliance on the language in the "Continue With Facebook" pop-up screen is even less persuasive. That screen contains only a paragraph saying that "by continuing, Plex will receive ongoing access to the information you share and Facebook will record when Plex accesses it." MTD at 15. This discloses nothing. First, "the information you share" likely refers to sharing information on Facebook, not plex.tv. Second, Plaintiff did not "share" his video viewing information, it was intercepted while he was streaming videos on Defendants' website. FAC ¶ 66. Finally, this language does not satisfy the VPPA's requirements because it refers generally to "information you share," not video viewing information specially, and provides no way to opt out. 18 U.S.C. § 2710(b)(2)(B). As such, Defendants have not complied with their obligations under either statute.

## IV.   DEFENDANTS' ATTEMPT TO STRIKE CLASS ALLEGATIONS ARE PREMATURE

Defendants ask the Court to "strike class allegations pursuant to Rule 12(f) because the proposed class definitions are too broad." MTD at 18. Defendants' request is better suited for the fact intensive analysis that occurs at the class certification stage.

"The [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But "such motions are disfavored and 'apply a very strict standard: only if the court is convinced that any questions or law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken.'" *Law v. City of Berkeley*, 2016 WL 4191645, at *3 (N.D.

1   Cal. Aug. 9, 2016) (quoting *Roy v. Wells Fargo Bank, N.A.*, 2015 WL 1408919, at *2 (N.D. Cal.

2   Mar. 27, 2015)).  "Reflecting the disfavored nature of a motion to strike, a movant's burden [to

3   show an element is met] has been described as a 'substantial' burden." *Ringgold v. Burgett, Inc.*,

4   2023 WL 34437, at *4 (E.D. Cal. Jan. 4, 2023).  And "[w]ith a motion to strike, just as with

5   a motion to dismiss, the court should view the pleading in the light most favorable to

6   the nonmoving party." *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1216

7   (N.D. Cal. 2019) (internal quotation and citation omitted).

8       Regardless, Defendants argue that striking the class is appropriate because "Plaintiff is

9   unable to certify a class because Plaintiff's proposed class definitions are too broad and Plaintiff

10  does not have standing to bring claims on behalf of the proposed class members."  MTD at 19.  But

11  neither position helps Defendants as *Slovin v. Sunrun, Inc.* 2016 WL 5930631, at *1 (N.D. Cal.

12  Oct. 12, 2016), illustrates.

13      In *Slovin,* the defendant argued, like Defendants here, "that the class allegations should be

14  stricken because the proposed classes do not satisfy the requirements to certify a class under Rule

15  23" since "the proposed contain members without standing and the classes are not ascertainable[.]"

16  2016 WL 5930631, at *1.  There, the court rejected this argument by explaining that "Defendants

17  essentially seek to litigate Rule 23 class certification prematurely."  *Id.*  And, although the court

18  noted that "defendants' arguments may eventually prove to be convincing," *id*, this argument was

19  nonetheless "premature given that discovery is still ongoing and no motion for class certification

20  has been filed."  *Id.*

21      Here, too, no class certification motion has been filed and worse, discovery has not even

22  begun as the Parties agreed to stay discovery until after a decision on Defendants' motion.  *See*

23  ECF No. 15 at 3; *See also In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609,

24  615 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely

25  and that the better course is to deny such a motion because the shape and form of a class action

26  evolves only through the process of discovery.") (cleaned up); *Azad v. Tokio Marine HCC—Med.

27  Ins. Servs. LLC*, 2017 WL 3007040, at *9 (N.D. Cal. July 14, 2017) ("Given that plaintiffs have not

28  been afforded discovery … the court denies HHC's motion to strike.  The propriety of class

adjudication can be addressed later in the usual fashion, on a fully-briefed motion for class certification.").

Likewise, Defendants' argument that Plaintiff's class allegations should be stricken because he "cannot certify a class under Fed. R. Civ. P. 23(b)(1)(B) because this action does not include a fund" and because "each class member will need to provide evidence of each visit to the Plex Solution to prove alleged damages, which drastically varies per class member," MTD at 20, are clearly questions going to class certification, none of which touch on any of the grounds permissible for striking the class under Rule 12(f).  Such arguments have been rejected when brought under Rule 12(f) because they simply ignore the burden required under 12(f).  *See, e.g.,* *Milan v. Cliff Bar & Co.*, 2019 WL 3934918, at *3 (N.D. Cal. Aug. 20, 2019) ("Cliff further argues that the express warranty claims are 'improper for class treatment' because they 'involve elements that are individual to each putative class member[.] … These are not proper arguments under Rule 12(f), which permits the Court to strike material from a pleading only if it is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. … Clif's arguments here are not even directed towards any of those five permissible bases.").

Just like in *Milan*, Defendants do not bother to address any of the five permissible bases for striking the class under Rule 12, instead leaning entirely on Rule 23.  MTD at 18.  This is to be expected because "the limited categories of information that may be struck pursuant to Rule 12(f) do[es] not map neatly onto a class allegation [since] [s]uch an allegation is not a defense, is not redundant, is not impertinent, and is not scandalous.  At most, it might be said that a facially deficient class allegation is 'immaterial,' but even that is something of a stretch." *Abboud v. Circle K Stores Inc.*, 2024 WL 1765659, at *9 (D. Ariz. Apr. 24, 2024).  Accordingly, courts have explained that "Rule 12(f) is improper 'where the issues raised in the motion to strike are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b).'" *Id.* (quoting *Rahman v. Smith & Wollensky Restaurant Grp., Inc.*, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008); *See also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F. 3d 970, 974 (9th Cir. 2010) ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading … we would be creating

redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose.").

Defendants cite *Pearl v. Coinbase Global, Inc.*, 2024 WL 3416505, at *2 (N.D. Cal. July 15, 2024) for the proposition that "[d]istrict courts have authority to strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified." MTD at 19. But even there the court did not strike class allegations. *See Pearl*, 2024 WL 3416505 at *9. Likewise, Defendants' reliance on *Baton v. Ledger SAS*, 2024 WL 3447511, at *15 (N.D. Cal. July 16, 2024) is distinguishable. There, the court struck a class that included individuals who made a purchase *after* the injury-causing incidents and "were thus [presumably] *aware* of the alleged 'inadequate' security practices," *id.* (emphasis in original), and so was not facially typical of the named plaintiff's claim. Aside from that case being outside the norm of courts in this district, here, the class is defined to include all those who "have a Facebook account and created a Plex account … and viewed videos on the same browser they use to access their Facebook account," FAC ¶ 70, thereby guaranteeing that all members were subject to the same unlawful disclosure. Although Defendants take issue with the sign-up procedures and corresponding contract formation issues, these remain fact questions (*see* Argument § II), so the Court cannot say, at this stage, that "the matter sought to be stricken *clearly* has no possible bearing on the subject matter of the litigation." *Baton*, 2024 WL 3447511, at *7 (emphasis added).

Finally, Defendants base their position, in part, on a belief that Plaintiff does not have standing to represent certain members of the classes as grounds to strike the *entire* class. MTD at 19. This too is premature. "If the named plaintiff has individual standing to bring a claim, the standing inquiry is concluded. [] Further inquiry into whether the named plaintiff may represent the interests of other class members is deferred to the class certification decision." *Forsher v. Boar's Head Provisions Co., Inc.*, 2018 WL 11436306, at *7 (N.D. Cal. Sept. 14, 2018) (relying on *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)).

Therefore, the Court should reject Defendants' request to strike the class allegations under 12(f) because it has not met its burden to show why any of the factors relevant to striking the class

are present.  Instead, Defendants attempt to get a jumpstart on an early class certification motion.  Class certification is the proper time to address Defendants' arguments.

## V.    THE ARBITRATION PROVISION AND CLASS ACTION WAIVER IN THE 2020 TERMS CANNOT BE ENFORCED HERE

### A.    The 2020 Terms Only Apply To Defendant Plex GmbH

Defendants argue that the Class Action Waiver, MTD at 21-22, and Arbitration Agreement, MTD at 22-25, contained in the 2020 Terms are applicable to both Defendants.  However, only Defendant Plex GmbH is a party to the 2020 terms.  Castro Decl., Ex. A.  Plex, Inc. does not appear anywhere in the 2020 terms and thus is not a signatory to the contract.  *See generally id*.  "Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions."  *Soltero v. Precise Distribution, Inc.*, 102 Cal. App. 5th 887, 892-93 (2024) (cleaned up).  Plex, Inc. has not argued that it is subject to any exception.

The Class Action Waiver and Arbitration Agreement confirm this.  The first page of the 2020 agreement explains that "Plex GmbH ('Plex') is willing to license and permit use of the Plex Solution subject at all times to agreement with this TOS."  Castro Decl. Ex. A, at 1-2.  Likewise, the Class Action Waiver, contained in the same document with the same definition, reads "You and **Plex** agree to only bring claims arising from this TOS on an individual basis…"  *Id*. (emphasis added).  Similarly, the Arbitration Agreement Reads "You agree that all disputes between you and **Plex** … will be resolved by binding, individual arbitration."  *Id*. at 50 (emphasis added).  Plex, Inc. cannot bind Plaintiff to a contract it is not a party to. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) ("[G]enerally only signatories to an arbitration agreement are obligated to submit to binding arbitration").  Moreover, Plex, Inc. "identifies no legal theory by which it is entitled to enforce the provisions" of the Terms.  *Guisinger v. Keystone RV Co.*, 2024 WL 3384211, at *1 (9th Cir. July 12, 2024).  Because it is Plex, Inc.'s burden to prove it is entitled to invoke the Terms, this is fatal to Defendants' Motion as to Plex, Inc.  *Jackson.*, 65 F. 4th at 1099.  Further, by failing to make these arguments in their motion, Defendants have waived any such arguments on reply.  *See, e.g., Lien v. City of San Diego*, 2021 WL 2072385, at *7 (S.D. Cal.

May 24, 2021) ("The Court declines to consider this argument raised for the first time in the reply brief") (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)).  Accordingly, Plex GmbH is the only party to the Terms.

> **B.    This Action is Outside The Scope Of The Class Action Waiver and Arbitration Agreement**

The 2020 Terms encompasses "claims arising from this TOS."  Castro Decl. Ex. A, at 50. Similarly, the Arbitration Agreement encompasses "disputes related to this TOS, your use of the Plex Solution, and/or rights of privacy and/or publicity."  *Id.* at 52.  Defendants are mistaken when it argues these definitions encompass Plaintiff's VPPA claims.  MTD at 24.

This is because Plaintiff's VPPA claim exists independently of and is "not dependent on [and therefore, does not relate to] the terms of the contract."  *Jackson*, 65 F.4th at 1102; *see also Howard v. Goldbloom*, 30 Cal. App. 5th 659, 670 (2018) (finding claim was not arbitrable because "Defendants' fiduciary duties to minority shareholders and alleged wrongs exist independently of any employment relationship between Howard and Kaggle").  Further, to the extent there is ambiguity in the contract concerning whether Plaintiff's claim fall within the scope of the arbitration clause, "ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation."  *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248 (2016).

The Ninth Circuit's decision in *Jackson* is both instructive and binding.  In that case, Amazon's arbitration clause encompassed "any dispute or claim arising out of or relating in any way to this Agreement, including participation in the program or performance of services."  *Jackson*, 65 F.4th at 1095 (cleaned up).  Despite this purportedly broad language, the Ninth Circuit found that plaintiff's claims, which were based on Amazon's surveillance of outside Facebook groups solely made up of Amazon Flex drivers, were not arbitrable because "Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision."  *Id.* at 1104  Specifically, the Ninth Circuit rejected a but-for causation argument for relation that "because Amazon would not have conducted its spying operations if Jackson had not been a Flex driver, the dispute must be arbitrable."  *Id.* at 1103.  Instead, the Ninth

Circuit held the claims "existed independently" because "even if Jackson had no contract with Amazon but had been permitted to join the groups for some other reason, he would be able to bring the same claims for invasion of privacy." *Id.* at 1103-04.

   *Jackson* also follows a long line of holdings from the Second, Fifth, Ninth, and Eleventh Circuits that rejected application of a broad arbitration clause to claims, like those here, that were independent of any contract. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183-84 (2d Cir. 2021); *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009); *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011). As these Circuits have explained, the claims in each of these cases were not arbitrable because "the defendant could have engaged in the same conduct even in the absence of any contractual … relationship with the plaintiff, and a third party could have brought the same claims [] based on virtually the same alleged facts." *Welch*, 871 F.3d at 799 (cleaned up). Instead, claims must have "some direct relationship" or "direct connection" with even the broad language of a clause; "otherwise, the term would stretch to the horizon and beyond" or "be meaningless." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218-19 (11th Cir. 2011).

   Those decisions apply here. Here, Plaintiff's VPPA claim involves Defendants' sharing of his personally identifiable information with a third party. FAC ¶ 5. It has no direct relationship to the 2020 Terms. Indeed, Plaintiff would still have a claim regardless of whether or not the Terms existed, as they do not govern Defendants' sharing of personal information with third parties.

## VI.    CONCLUSION

   For the foregoing reasons, Defendants' Motion should be dismissed in its entirety. However, if the Court grants Defendants' motion, the Court should give Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("This policy is to be applied with extreme liberality.").

1     Dated: September 3, 2024       **BURSOR & FISHER, P.A**.

2

                       By:     */s/ Joshua B. Glatt*

3                                  Joshua B. Glatt

4                      Neal J. Deckant (State Bar No. 322946)

                     Joshua R. Wilner (State Bar No. 353949)

5                      Joshua B. Glatt (State Bar No. 354064)

6                      1990 North California Blvd., 9th Floor

                     Walnut Creek, CA 94596

7                      Telephone: (925) 300-4455

                     Facsimile: (925) 407-2700

8                      E-mail: ndeckant@bursor.com

                                   jwilner@bursor.com

9                                    jglatt@bursor.com

10                      *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28